No. 12-1213
_____
**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**
_____

UNITED STATES,

Appellee,

v.

STEPHEN L. VOISINE,

Appellant.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**
_____

**CORRECTED BRIEF OF APPELLANT**

_____

**VIRGINIA G. VILLA, # 124070**
**Assistant Federal Defender**
**Attorney for a**

**Federal Defender Office–Bangor Branch**
**District of Maine**
**Key Plaza–Second Floor**
**23 Water Street**
**Bangor, ME 04401**
**207-992-4111**
**FAX: 207-992-9190**
Virginia_Villa@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD. . . . . . . . . . . v

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENTS

I.      TITLE 18, UNITED STATES CODE, SECTION 922(G)(9) SHOULD
        EXCLUDE NON-VIOLENT OFFENSIVE PHYSICAL CONTACT
        MISDEMEANOR CONVICTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      The decision in *Booker* supports the conclusion that the purpose
                of § 922(g)(9) is to disarm violent offenders, and therefore non-
                violent misdemeanants should not be included in the scope of the
                statutory proscription. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      Section 922(g)(9) can, and should, be interpreted to reach only
                misdemeanor crimes involving violence. . . . . . . . . . . . . . . . . . . . . 11
                i.      The Supreme Court's decision in *Johnson v. United States*,
                        130 S.Ct. 1265 (2010) workes a limited overruling of an
                        important segment of this Court's opinion in *United States
                        v. Nason*, 269 F.3d 10 (1ˢᵗ Cir. 2001). . . . . . . . . . . . . . . . . . 12
                ii.     Pursuant to *Johnson*, the ordinary meaning of "physical
                        force" excludes offensive physical contact. . . . . . . . . . . . . . 13

      iii.     The statutory structure indicates that Congress did not intend to incorporate a "specialized meaning" of non-violent offensive physical contact into the statute........ 15

      iv.     The legislative history supports reading the term "physical force" contained in the definition of "misdemeanor crime of domestic violence" as having the ordinary meaning of violent force......................................... 21

   C.     Due Process considerations, including the "fair warning" doctrine and providing a forum to establish constitutionally necessary factual predicates, indicate that the Court should exclude non-violent offensive physical contact convictions from the scope of § 922(g)(9)..................................... 25

**II.**   **Title 18, United States Code, Section 922(g)(9), as applied to Mr. Voisine's prior non-violent offensive physical contact conviction, violates his Second Amendment rights in that the statute is being applied to prior non-violent conduct, which does not provide a sufficient nexus to a legitimate basis for deprivation of a core constitutional right.**......................................... 36

   A.     The *Heller* decision indicates that individuals possess the right to keep and bear arms, and that such right therefore enjoys the same protection as other constitutionally recognized rights. .... 37

   B.     The Government failed to present any nexus between depriving non-violent offenders of their firearm rights and reducing intimate partner homicides. .............................. 39

**CONCLUSION.** ............................................. 42

Certificate of Compliance
Certificate of Service
Addendum:     Judgment
                 Order denying Motion to Dismiss
                 *U.S. v. Bryant*, Order denying Motion to Dismiss

# TABLE OF AUTHORITIES

**CASES**

*Bell v. Burson*, 432 U.S. 535 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Bouie v. City of Columbia*, 378 U.S. 347 (1964). . . . . . . . . . . . . . . . . . . . . . . . 28

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985). . . . . . . . 40

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). . . . . . . . . . . . . 19, 37, 38, 42

*Edenfield v. Fane*, 507 U.S. 761 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003). . . . . . . . . . . . . . . . . . . . . 16, 29

*Hanover Insurance Co. v. Hayward*, 464 A.2d 156 (Me. 1983). . . . . . . . . . . . . 34

*Johnson v. United States*, 130 S.Ct. 1265 (2010). . . . . . . . . . . . . . . . . . . . . . *passim*

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951). . . . . . . 32

*Leocal v. Ashcroft*, 543 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McBoyle v. United States*, 283 U.S. 25 (1931). . . . . . . . . . . . . . . . . . . . 26, 27, 28

*McNally v. United States*, 483 U.S. 350 (1987). . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pattershall v. Jenness*, 485 A.2d 980 (Me. 1984). . . . . . . . . . . . . . . . . . . . . 34, 35

*Plyler v. Doe*, 457 U.S. 202 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1996). . . . . . . . . . . . . . . . . . . . 40, 41

*Scheidler v. N.O.W., Inc.*, 537 U.S. 393 (2003). . . . . . . . . . . . . . . . . . . . . . . . . 25

*State v. Carmichael*, 405 A.2d 732 (Me. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . 29

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011). . . . . . . . . . . . . . . . . . *passim*

*United States v. Cadieux*, 500 F.3d 37 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . 31

*United States v. Hays*, 526 F.3d 674 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Lanier*, 520 U.S. 259 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Nason*, 269 F.3d 10 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . *passim*

*United States v. Rodriquez*, 527 F.3d 221 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . 12

*United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . 12

*United States v. Shepard*, 544 U.S. 13 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 29

*United States v. White*, 606 F.3d 144 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . 28, 29

**CONSTITUTIONS, STATUTES and RULES**

United States Constitution, amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

17-A M.R.S.A. § 207(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17-A M.R.S.A. § 207-A(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19 M.R.S.A. § 4002(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 668(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 921(a)(33). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 921(a)(33)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29

18 U.S.C. § 921(a)(33)(A)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

18 U.S.C. § 922(g)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

18 U.S.C. § 922(g)(8)(C)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

18 U.S.C. § 922(g)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 924(e)(2)(B)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

Maine Rule of Criminal Procedure 11(b). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 33

## MISCELLANEOUS

American Heritage Dictionary of the English Language (4th ed. 2000). . . . . . . . . 14

Armed Career Criminal Act *codified at* 18 U.S.C. 924(2). . . . . . . . . . . . . . . *passim*

Black's Law Dictionary (7th ed. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Black's Law Dictionary 717 (9th ed. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

142 Cong. Rec. S8831–06, S8832 (daily ed. July 25, 1996) (statement of Sen.
   Lautenberg). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

142 Cong. Rec. S11872–03, 11877 (statement by Sen. Lautenberg). . . . . . . . . . . 23

### REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Mr. Voisine's case presents important issues involving the interaction of statutory construction and constitutional analysis about which the Court may wish to further question the parties.

# STATEMENT OF JURISDICTION

This is a direct appeal in a criminal case from a final judgment entered by the United States District Court for the District of Maine. Sentence was imposed February 13, 2012, and judgment entered on February 14, 2012. A Notice of Appeal was filed on February 15, 2012. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, 18 U.S.C. § 3742 and Rule 4(b) of the Federal Rules of Appellate Procedure.

# ISSUES PRESENTED FOR REVIEW

This appeal presents two issues for resolution. The first is whether an a conviction for simple assault based on offensive physical contact qualifies as a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9). The second question is whether, if § 922(g)(9) is construed to apply to non-violent offensive physical contact misdemeanor convictions, the statute is unconstitutional as applied.

# STATEMENT OF THE CASE

Stephen Voisine waived indictment and entered a not guilty plea to an Information charging him with two criminal counts on March 11, 2011. Count One charged a felony, namely, a violation of 18 U.S.C. § 922(g)(9), possession of a firearm after having been previously convicted of a misdemeanor crime of domestic violence. Count Two charged a misdemeanor, namely, killing a bald eagle in

violation of 18 U.S.C. § 668(a).  *See* Information, Joint Appendix [JA] 10.  He was ordered released on these charges on that date.  *See* Minute Entry, Docket No. 5, JA 2.

On March 15, 2011 he filed a motion to dismiss Count One of the Information on the basis that his prior simple assault conviction did not qualify as a misdemeanor crime of violence as it was  not a violent act that involved the "use of force," and that if the statute were to be construed to reach non-violent offensive physical contacts, that the statute would then be unconstitutional as the basis for depriving persons of firearm rights related to prior violence, and depriving those who have not engaged in prior violence is not sufficiently related to the identified government interest to justify depriving an individual of a constitutionally protected right to keep and bear arms. *See* Motion to Dismiss, Joint Appendix [JA] 12.  The Government filed a Memorandum in Opposition on April 5, 2011.  *See* JA 34.  The Court filed an Order denying the Motion on April 14, 2012.  *See* Addendum.

Mr. Voisine entered a conditional guilty plea to the felony in Count One and entered a straight plea to the misdemeanor in Count Two on June 13, 2011.  *See* Plea Transcript 20, JA 75; Conditional Guilty Plea, JA 51.  Mr. Voisine was continued on release at this time.

After a number of conference hearings regarding Mr. Voisine's mental and physical health issues, he came before the District Court for sentencing on February 13, 2012. At that time, he was sentenced to a year and a day imprisonment on Count One, and nine months imprisonment on Count Two, as well as two years supervised release on Count One and one year supervised release on Count Two, all to be served concurrently. A special assessment of $100 on Count One and $25 on Count Two also was imposed. *See* Judgment, Addendum.

Mr. Voisine filed a timely notice of appeal on February 15, 2012. He voluntarily reported for service of his sentence on April 16, 2012. This appeal follows.

## STATEMENT OF FACTS

Stephen Voisine came to the attention of federal law enforcement officials sometime in the fall of 2009 due to an investigation initiated by the Maine Warden Service into the anonymous report that Stephen Voisine had shot and killed a juvenile bald eagle. A game warden found the dead bald eagle a short distance from a logging road in Kingman, Maine. A veterinarian later examined the eagle and found a wing and leg fracture and wounds containing lead fragments consistent with trauma from a high velocity rifle bullet. Wardens interviewed Mr. Voisine, who turned over a

Remington, Model 7400, .30-06 caliber rifle. He said it was his rifle but said he had not shot an eagle. *See* Govt Amend Version of Offense, JA 53.

On December 12, 2009, state and federal law enforcement officers executed a search warrant at Mr. Voisine's home. Mr. Voisine agreed to speak with the investigating officers and admitted he had shot a big bird on October 18, 2009, but thought that it was a large hawk. Due to the time and area he described, agents determined that the "big hawk" was, in fact, the juvenile eagle. *See id.*

The federal government determined that it would charge Mr. Voisine with a misdemeanor charge of killing a bald eagle. As part of its investigation, agents obtained his criminal history and determined that he had a 2003 misdemeanor assault conviction against Tina Farwell, with whom Mr. Voisine was living at the time and with whom he had a domestic relationship. *See* Govt Amended Version of Offense at 2, JA 2; Information, JA 10.

The circumstances underlying the 2003 conviction are somewhat opaque. The Complaint filed in that case simply charged that "On or about April 12, 2003, in Wytopitlock, Aroostook County, Maine, **STEPHEN L. VOISINE,** did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Tina M. Farwell. The crime involved domestic violence." Motion to Dismiss, Attachment 2, JA 33. In Maine,

1.      A person is guilty of domestic violence assault if:

    A.    The person violates section 207 and the victim is a family or household member as defined in Title 19-A, section 4002, subsection 4. Violation of this paragraph is a Class D crime... .

17-A M.R.S.A. §207-A(1)(A). Section 207, in turn, provides:

1.      A person is guilty of assault if:

    A.    The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person. Violation of this paragraph is a Class D crime ... .

17-A M.R.S.A. § 207(1)(A). "[I]ndividuals presently or formerly living together as spouses" are "family or household members" pursuant to the definition provided by 19-A M.R.S.A. § 4002(4).

The state court plea colloquy exists of a single page in which Mr. Voisine's lawyer informs the court that the matter will result in a plea pursuant to a negotiated settlement of a two hundred dollar fine, and that Mr. Voisine understands this is the negotiated settlement. *See* Motion to Dismiss, Attachment 1, JA 30. In opposing the motion, the Government submitted a police report underlying the incident and detailing the investigation leading to the charge. At about 5:45 in the morning of April 12, 2003, Trooper Daniel Deschaine received a call at his residence form the barracks saying that there had been a 911 hang-up call from Tina Farwell. The 911

operator called back and the woman on the line refused to say why she called. Trooper Deschaine arrived at the Voisine/Farwell residence at about 7:20 in the morning and was invited inside. Mr. Voisine was seated at a table next to the door. The trooper asked to speak with Ms. Farwell, who was present in the house with her daughter. The trooper also asked Mr. Voisine if there were any firearms in the house and he pointed to the end of the living room, where there were some rifles in a rack. The trooper invited Ms. Farwell outside and asked her what happened. At that point in time, Ms. Farwell said that Mr. Voisine had slapped her in the face across the right cheek. The trooper saw no marks or bruising on Ms. Farwell's face. Ms. Farwell admitted that she had been drinking and therefore could not leave because she could not drive and her daughter did not have a license. Ms. Farwell's daughter stated that she did not see the incident but heard a slap and went into the kitchen from her bedroom and saw Ms. Farwell on the floor. Later, after Mr. Voisine was removed from the residence, Ms. Farwell instructed her daughter not to say anything to the trooper and claimed that she could not remember anything herself. *See* Govt Memo in Opp., Attachment 1, JA 43-44; PSR ¶ 30, Sealed Joint Appendix (SJA) 7.

Mr. Voisine was convicted of a separate domestic assault occurring on June 19, 2005. Again, the named victim of the assault was Tina Farwell. What is known of the underlying facts in this case is that Mr. Voisine called the State Police to report

that Ms. Farwell had slapped him in the face and drove off. She had been drinking. The trooper located Ms. Farwell and she said that she had been on the phone, that Mr. Voisine kept interrupting her and that he threw the phone at her. Again, there is no indication in the report that Ms. Farwell was hit with the phone or that she had any visible marks on her. Although the trooper determined that both parties were intoxicated, he arrested Mr. Voisine. This time, a $400 was imposed by the state court. Ms. Farwell lived with Mr. Voisine for sixteen years until she died suddenly of natural causes in May, 2011. *See* PSR at ¶ 36, SJA 9. Ms. Farwell was never required to make any statement under oath and therefore it is impossible to know whether she slapped Mr. Voisine in 2005, and whether she also did so in 2003.

Although Mr. Voisine has a conviction for possession of an unregistered deer and having shot and killed the eagle, he has no prior convictions or any other type of documented behavior involving the use firearms against a person. The only indication of any prior violence is a misdemeanor assault conviction from 1991, for which Mr. Voisine received a sentence of 30 days in jail. *See* PSR at ¶ 21, SJA 5. There is no indication that this misdemeanor assault was domestic in nature.

## SUMMARY OF ARGUMENTS

Stephen Voisine may have engaged in offensive physical contact with the woman with whom he lived as husband and wife. By pleading guilty to a

misdemeanor battery offense, he lost significant constitutional rights. There are two major problems with this result.

First, the language and history of the misdemeanor violence prohibition indicates that Congress never intended the proscription to apply to non-violent battery convictions. Battery, at common law, has always encompassed non-violent offensive physical contact. There is nothing in either the language of the statute or its legislative history indicating that Congress sought to include non-violent misdemeanors within the firearm prohibition.

Using such non-violent misdemeanors violates the notion that statutes should give fair warning as to the conduct proscribed. The ordinary usage of "physical force" means "violent force." Mr. Voisine was never informed that pleading guilty to a misdemeanor offense would forever bar him from possessing a firearm, nor does the ordinary usage of the statutory language provide such notice. Pursuant to the Maine Rule of Criminal Procedure 11(b), which normally governs the procedure for accepting a guilty plea, including the portion requiring a factual basis, such procedures do not apply in misdemeanor cases. Maine courts recognize that misdemeanor proceedings may result in convictions unsupported by sufficient facts, and therefore precludes the use of misdemeanor convictions as competent proof of disputed facts in civil proceedings. Using a non-violent misdemeanor to act as a

proscriptive prior conviction violates fundamental notions of fairness and therefore the statute should not be read to include such misdemeanors.

Second, applying the firearm prohibition to a non-violent misdemeanor offense renders the statute unconstitutional as applied. If the basis for disarming misdemeanants is due to their violent behavior against domestic partners, it makes no reasoned sense to apply the statute to non-violent offensive physical contact convictions. If the relevant misdemeanor conviction is not based on violent behavior, the statute cannot survive even intermediate scrutiny, as the basis for the proscription is not closely enough tailored to the identified governmental interest to justify the deprivation of core constitutional rights.

## STANDARDS OF REVIEW

As both issues presented involve questions of law, the standard of review is *de novo*. *See United States v. Booker*, 644 F.3d 12, 17, 22 (1ˢᵗ Cir. 2011).

## ARGUMENTS

## I.

## TITLE 18, UNITED STATES CODE, SECTION 922(G)(9) SHOULD EXCLUDE NON-VIOLENT OFFENSIVE PHYSICAL CONTACT MISDEMEANOR CONVICTIONS

Mr. Voisine moved to dismiss the Indictment on the basis that he was convicted of a non-violent battery, and the proscription contained in 18 U.S.C. §

922(g)(9) does not apply to that prong of the Maine simple assault statute (incorporated by reference in the Maine Domestic Violence statute) that may be violated by committing a common-law battery. He alternatively asserted that, should the statute be applied to a non-violent common law battery conviction, the statute would be rendered unconstitutional. The District Court denied the motion to dismiss based on this Court's opinion in *Booker*. *See* Order, Addendum.[1] Mr. Voisine first presents the argument that § 922(g)(9) excludes non-violent misdemeanor offenses.

**A.** **The decision in *Booker* supports the conclusion that the purpose of § 922(g)(9) is to disarm violent offenders, and therefore non-violent misdemeanants should not be included in the scope of the statutory proscription**

Mr. Voisine's assertion that § 922(g)(9) does not apply to non-violent physical contact convictions stems from this Court's observation that "Section 922(g)(9) finds its animating interest in keeping guns away from people who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship." *Booker*, 644 F.3d at 25. Due to the constitutional rights at issue in a § 922(g)(9) proscription, it stands to reason that the converse is also true: § 922(g)(9) finds no interest in keeping guns away from people who have not been

---

[1] As the Order references a separate Order, the Order in that separate case is also included in the Addendum.

proven to engage in violence with those with whom they share a domestically intimate or familial relationship.

Mr. Voisine's case presents a situation in which he was never proven, either in federal or state court, of having engaged in violence toward a domestic partner. The Government neither charged nor proved that Mr. Voisine committed a violent offense which could have been charged as anything but a misdemeanor, either during his federal proceeding or in the underlying assault proceeding. Consistent with congressional intent, the language of the statute does not mandate extending a firearm prohibition to non-violent offensive physical contact cases. The legislative history indicates Congress never intended the firearm prohibition to apply to non-violent offenses that could not be charged as felonies. Because there is no reliable evidence of record that Mr. Voisine engaged in the type of conduct Congress meant to reach in creating a firearm proscription, his conviction is due to be reversed as beyond the scope of 18 U.S.C. § 922(g)(9).

**B.     Section 922(g)(9) can, and should, be interpreted to reach only misdemeanor crimes involving violence**

Recognizing that one panel cannot normally overrule a prior panel's decision without having the case proceed to an en banc consideration, Mr. Voisine raises the issue as to whether *Nason* is still good law, as the decision in *Johnson*, while not

constituting a direct reversal of the decision in that case, does partially reverse the reasoning used in *Nason*. Once that partial reversal is considered, the panel may have the authority to revisit whether non-violent offensive physical contact convictions come within the scope of § 922(g)(9). *See United States v. Rehlander*, 666 F.3d 45, 47 (1st Cir. 2012)("Ordinarily, panel decisions ... are binding on subsequent panels but not where intervening Supreme Court precedent requires reconsideration. *United States v. Rodríguez*, 527 F.3d 221, 224–25 (1st Cir.2008)).

> ### i. The Supreme Court's decision in *Johnson v. United States*, 130 S.Ct. 1265 (2010) works a limited overruling of an important segment of this Court's opinion in *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001):

Mr. Voisine recognizes that this Court has previously interpreted 18 U.S.C. § 922(g)(9) to apply to the offensive physical contact component of the Maine simple statute. *See United States v. Nason*, 269 F.3d 10, 16, 20-21 (1st Cir. 2001). It did so by reading the "plain and unambiguous meaning" of the phrase "physical force" to be "power, violence, or pressure directed against another person's body," which this Court found broad enough to encompass the "offensive physical contact" variant of Maine's assault statute. *See id.* at 16, 20-21. In *United States v. Booker*, *supra*, this Court found that "an offense with a *mens rea* of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)." *Id.*, 644 F.3d at 21.

12

It did not revisit the meaning of "physical force" as determined by *Nason*. The Supreme Court's decision, and interpretation of "physical force" in *Johnson v. United States*, 130 S.Ct. 1265 (2010) overrules this Court's finding that the "plain and unambiguous meaning" of "physical force" includes minimal force.

ii.   **Pursuant to *Johnson*, the ordinary meaning of "physical force" excludes offensive physical contact:**

There are two steps to deriving the meaning of a statutory term that is otherwise undefined by statute. "Physical force" is such a term. These two steps are to determine the "ordinary meaning" of the phrase, and then to determine whether Congress imbued the term with a "special meaning." The first is an exercise in dictionary definitions, the second an exercise in placement within a statutory framework and legislative intent.

As in the Violence Against Women Act, the Armed Career Criminal Act does not define the phrase "physical force." Concurrent with canons of statutory construction, the Supreme Court indicated that it first needed to determine the phrase's "ordinary meaning." *Johnson*, 130 S.Ct. at 1270. Thus, the Court looked to the adjective "physical," and found it unenlightening in that the word simply referred to "force exerted by and through concrete bodies–distinguishing physical force from, for example, intellectual force or emotional force." *Id.* Similarly, this

Court in *Nason* engaged in a similar analysis, finding that "physical" force is differentiated from force relating to "the mind or spirit." *Nason*, 269 F.3d at 16, *citing* American Heritage Dict. of the Eng. Language (4th ed.2000).

Despite the agreement as to process and dictionary definitions, the two cases diverge in analysis when it comes to construing the term "force." This Court considered the legal definition of "force" through reference to Black's Law Dictionary, which provides: "The word 'force' means '[p]ower, violence, or pressure directed against a person or thing.'" *Nason*, 269 F.3d at 16, *citing* Black's Law Dict. (7th ed.1999). The *Johnson* Court similarly referenced this same definition. *See Johnson*, 130 S.Ct. at 1270 ("Black's Law Dictionary 717 (9th ed. 2009) ... defines 'force' as '[p]ower, violence, compulsion, or constraint exerted upon a person'"). The Supreme Court's analysis diverges from that utilized by this Court in that it concluded that all of the various available definitions of "force" "suggest a degree of power that would not be satisfied by the merest touching." *Id.*

This is diametrically opposite to the conclusion arrived at by this Court. In *Nason*, this Court concluded that "physical force may be characterized as power, violence, or pressure directed against another person's body." *Id.*, 269 F.3d at 16. It did not matter whether such force was violent force, but as long as *any* degree of touching was involved, then the crime qualified as a "misdemeanor crime of domestic

violence." *Id.* The analysis in *Johnson* means that this Court's dictionary approach was correct, but simply came to the wrong conclusion. In other words, the ordinary usage of the term "physical force" does *not* include offensive physical contact, but contact that involves a greater degree of power. *See Johnson*, 130 S.Ct. at 1270. If any contact would have met the ordinary definition of this term, then the Supreme Court would not have had to further analyze whether the *specialized* meaning of "force" as used in the misdemeanor crime of battery could also be sufficient to satisfy the definition used in the ACCA.

      iii.    **The statutory structure indicates that Congress did not intend to incorporate a "specialized meaning" of non-violent offensive physical contact into the statute:**

The question which arises, both under the ACCA and § 921(a)(33), as to whether Congress intended to use the term "force" not in the ordinary sense of the word, but rather in the specialized sense that the term bears in the common-law definition of "battery." This is where the construction provided by the Supreme Court for purposes of the ACCA may not coincide with the definition provided for purposes of § 922(g)(9). In determining that this "specialized" meaning of force does not apply in the context of the ACCA, it refrained from the assumption that "a statutory word is used as a term of art where that meaning does not fit." *Johnson*, 130 S.Ct. at 1270. It found that the "specialized" meaning of "force" did not fit within the

definition of "violent felony" in that the very term itself "'suggests a category of violent, active crimes... .'" *Johnson*, 130 S.Ct. at 1271, *quoting Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).

In the context of defining "violent felony" the Court found that "physical force" means "*violent* force–that is, force capable of causing physical pain or injury to another person." *Johnson*, 130 S.Ct. at 1271 (italics in original), *citing Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003).[2] Thus, in the context of defining a violent felony, it did not make sense to incorporate the common-law specialized definition of "force," which includes non-violent offensive physical contact.

Although *Johnson* cited to *Flores* in determining that offensive physical contact should not fall within the definition of "physical force" for purposes of the ACCA, the Supreme Court specifically refrained from deciding the definition for purposes of § 922(g)(9). "The Government contends that interpreting 18 U.S.C. § 924(e)(2)(B)(I) to require violent force will undermine its ability to enforce the firearm disability in § 922(g)(9) for persons who previously have been convicted of a 'misdemeanor crime of domestic violence,' which is defined to include certain misdemeanor offenses that have, 'as an element, the use or attempted use of physical

---

[2]*Flores* involved whether an offensive physical contact conviction formed a "crime of domestic violence" for purposes of immigration law. The Seventh Circuit held that it did not.

force ... .," § 921(a)(33)(A)(ii). The prediction is unfounded. We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony.' We do not decide that the phrase has the same meaning in the context of defining a *misdemeanor* crime of domestic violence." *Johnson*, 130 S.Ct. at 1273. The prediction may appear to be unfounded, not due to the actions by the Supreme Court, but rather by the actions of the majority of federal appellate courts, which have excluded from the term "physical force" prior convictions for non-violent offensive physical contacts.

The question presented by this appeal is whether, in the context of the prohibition contained in § 922(g)(9), the term "physical force" should include the *specialized* meaning of offensive physical contact contained in the common-law misdemeanor offense of battery. Although not determinative, the opinion in *Johnson* supports finding that Congress did not intend to include the specialized meaning.

The *Johnson* Court construed "physical force" as words contained in the Armed Career Criminal Act [ACCA], *codified at* 18 U.S.C. § 924(e). This statute provides a definition of "violent felony" for purposes of an increase of the statutory maximum for certain repeat offenders. "Violent felonies" include crimes that have, as an element, the "use, attempted use, or threatened use of physical force ... ." 18

U.S.C. § 924(e)(2)(B)(I). The definition of a "misdemeanor crime of domestic violence" includes offenses that have, as an element, the "use or attempted use of physical force, or the threatened use of a deadly weapon ... ." 18 U.S.C. § 921(a)(33)(A)(ii). Thus, although not containing precisely the same language, the scope of the definition for purposes of § 922(g)(9) appears to be more restrictive than that for purposes of the ACCA, as not any threatened use of physical force will suffice, but only those threats that involve the use of a deadly weapon. Thus, if anything, the definition of a "misdemeanor crime of domestic violence" is narrower than that of a "violent felony." What they both have as an operative term, however, is the idea that both must involve "violence."

It is the idea of "violence" that the Supreme Court found determinative in construing "physical force" in the ACCA. Regarding the "use or attempted use" portion of the statutory language, which is the same under both provisions, the Supreme Court found that the term was, at best, subject to a variety of different interpretations. First, it noted that the underlying conviction could be accomplished by the use of *any* degree of force, "no matter how slight." *Johnson*, 130 S.Ct. at 1270. Similarly, this Court has found that offensive physical contact assaults under Maine law may be accomplished by any degree of force, no matter how slight, as long as the touching would also be seen as offensive to a reasonable person. *See Nason*,

269 F.3d at 19, *citing State v. Carmichael*, 405 A.2d 732, 735 (Me.1979).  However, the fact that state law defined the term broadly did not end the Supreme Court's analysis.

In *Nason*, this Court did not rely solely on the ordinary meaning of the term "physical force," but also considered "two additional facts that confirm the absence of any congressional intent either to engraft a bodily injury requirement onto section 921(a)(33)(A) or otherwise to inspire a grudging construction of the words 'physical force' as used in that statute." *Nason*, 269 F.3d at 16.  *Nason*, of course, was decided before the Second Amendment was recognized as an individual constitutional right, and therefore there was no reason to believe a "grudging construction" may be necessary.  Since the decision in *Dist of Columbia v. Heller*, 128 S.Ct. 2783 (2008), close and "grudging" analysis of the statutory structure of the proscription is required.

One of the considerations the Court should take into account is the language of other parts of correlating proscriptions.   For example, "[t]he subsection immediately preceding 18 U.S.C. § 922(g)(9) precludes the 'use, attempted use, or threatened use of physical force ... that would reasonably be expected to cause bodily injury.' 18 U.S.C. § 922(g)(8)(C)(ii). This qualifying clause limits the reach of section 922(g)(8) to a specific subset of physical force: physical force that is reasonably expected to generate physical injury." *Nason*, 269 F.3d at 16.  The Supreme Court

addressed the "bodily injury" provision in § 922(g)(8) in determining whether "physical force" should be given a specialized meaning in the context of the ACCA. "The Government also asks us to draw a negative inference from the presence of the 'bodily injury' specification added to the phrase 'physical force' in § 922(g)(8)(C)(ii). ... The absence of such language in § 924(e)(2)(B)(I), the Government contends, proves that the merest touch suffices. Even as a matter of logic that does not follow." *Johnson*, 130 S.Ct. at 1272.

Mr. Voisine urges this Court to look to the language and purpose of the two subsections and find that "as a matter of logic," the absence of the physical injury requirement in § 922(g)(9) does not alter the ordinary meaning of "physical force" in that section. What is important to note is that the language of the two subsections sections is not identical in relation to the nature of the act, or threat, that creates the firearm proscription. In § 921(a)(33)(A)(ii), any threat will not create a prohibition, only those threats to use a deadly weapon. In § 922(g)(8), the proscription does not apply to any completed act, but to an order restraining future acts, including "threatened use of physical force ... that would reasonably be expected to cause bodily injury." Thus, both sections appear to proscribe firearm possession by those who present a real danger of engaging in violent force, rather than engaging in offensive physical contact. The fact that bodily injury is mentioned in one and not the other

does not logically indicate that the merest offensive touch would be sufficient to satisfy the statutory definition.  This is particularly true because § 922(g)(8) creates a temporary proscription, whereas § 922(g)(9) creates a permanent bar to exercising a constitutionally protected right.  Given that violence is the driving motivation behind creating the permanent prohibition, it makes logical sense that Congress intended to use "physical force" in its ordinary sense, rather than using the phrase to encompass a specialized, non-violent, meaning.

> iv.  **The legislative history supports reading the term "physical force" contained in the definition of "misdemeanor crime of domestic violence"  as having the ordinary meaning of violent force:**

The second source of enlightenment relied upon by the *Nason* court was the legislative history.  It cited a statement by Senator Lautenberg that indicated that the definition of a misdemeanor crime of domestic violence had expanded the definition with respect to attempts and threats.  *See Nason*, 269 F.3d at 17.  Here, we are dealing with a completed crime, not attempts or threats.  This statement, therefore, does not answer whether the definition of "misdemeanor crime of domestic violence" was intended to include non-violent offensive physical contacts.  Rather, other sections of the legislative history indicate that such offensive physical contacts, which traditionally have always been misdemeanors, were not intended to be included in the definition.

The importance of violent force in the history of the creation of § 922(g)(9) has been recognized by this Court. "Whereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, §922(g)(9) addresses an acute risk to an identifiable class of victims—those in a relationship with a perpetrator of domestic violence." *Booker*, 644 F.3d at 21. It is the nature of that "identifiable risk" pool that is important to remember: those who commit acts of violence, not those who commit acts that are offensive but not violent.

Senator Lautenberg emphasized the role of actual violence in the statutory proscription:

> By their nature, acts of domestic violence are especially dangerous and require special attention. These crimes involve people who have a history together and perhaps share a home or a child. These are not violent acts between strangers, and they don't arise from a chance meeting. Even after a separation, the individuals involved, often by necessity, have a continuing relationship of some sort, either custody of children or common property ownership.

142 Cong. Rec. S8831–06, S8832 (daily ed. July 25, 1996) (statement of Sen. Lautenberg). Notably, Senator Lautenberg did not reference acts of domestic discord, irreconcilable differences, mental suffering, offensive words, or other lesser form of interpersonal strife. He referenced "violence" and "violent acts."

Senator Lautenberg's intention that the statute be applied to crimes involving violent force is reinforced by other statements he made in reference to this legislation.

In a speech on the Senate Floor, Senator Lautenberg explained:

> Under current Federal law, it is illegal for persons convicted of felonies to possess firearms. Yet many people who engage in serious spousal or child abuse ultimately are not charged with or convicted with felonies. At the end of the day, due to outdated thinking, or perhaps after a plea bargain, they are--at most--convicted of a misdemeanor. In fact ... most of those who commit family violence are never even prosecuted. When they are, one-third of the cases that would be considered felonies if committed by strangers are, instead, filed as misdemeanors. The fact is, in many places today, domestic violence is not taken as seriously as other forms of criminal behavior. Often, acts of serious spouse abuse are not even considered felonies.

142 Cong. Rec. S8831-06 (1996). Later in that speech, Senator Lautenberg stated:

> 2,000 American children are killed each year from abuse inflicted by a parent or a caretaker. Yet, as I said before, many of these abusers and batterers are prosecuted only for misdemeanors, and under Federal law they are still free to possess firearms. This amendment closes this dangerous loophole and keeps guns away from violent individuals who threaten their own families, people who show they cannot control themselves and are prone to fits of violent rage, directed, unbelievably enough, against their own loved ones.

*Id.* (emphasis added); *see also* 142 Cong. Rec. S11872-03, 11877 (giving the example of a man who "beat his wife brutally and was prosecuted, but like most wife beaters, he pleaded down to a misdemeanor and got away with a slap on the wrist").

Thus, the emphasis on felony-level harm indicates that the intention in creating a proscription for misdemeanor offenses was to reach those offenses that either

involved the actual use of violent force or the attempted use of violent force. It does not indicate that the use of minimal force necessary to commit an offensive physical contact, a crime that at common-law would only constitute a misdemeanor and not a felony, was intended to be part of the statutory definition.

What was part of the *Johnson* analysis, but was missing from this Court's analysis, is the fact that the term defined includes a reference to violence. Congress did not choose to impose a firearm ban on those who engage in non-violent conduct, but rather only intended to impose the restriction on those who engaged in violence. *See Booker*, 644 F.3d at 25.

Stephen Voisine did not engage in any proven acts of intentional violence with respect to Tina Farwell. He may have slapped her or she may have slapped him. He may have tried to prevent her from slapping him and touched her in the process. She may not have appreciated his actions and took offense. The facts underlying the conviction are understandably unclear, given the lack of facts presented to the Maine court during Mr. Voisine's 2003 guilty plea. From what is known, he was guilty of having committed an offensive physical contact assault. This is not the type of prior conduct for which Congress created a firearm proscription. Because it is not, Mr. Voisine's prior conviction for simple assault, even under Maine's domestic assault statute, should not have deprived him of his right to keep and bear arms.

**C.** **Due Process considerations, including the "fair warning" doctrine and providing a forum to establish constitutionally necessary factual predicates, indicate that the Court should exclude non-violent offensive physical contact convictions from the scope of § 922(g)(9):**

Mr. Voisine urges the Court to determine that the language and structure of the statute support finding that offensive physical contact offenses do not fall within § 922(g)(9). To the extent that the language can be read both ways, it is ambiguous. Where a statute is ambiguous, the rule of lenity indicates that the statute should be read narrowly. "[W]hen there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 U.S. 350, 350-60 (1987). *See also Scheidler v. N.O.W., Inc.*, 537 U.S. 393, 408-09 (2003)(applying rule of lenity to Hobbs Act prosecution in reversing conviction).

It is the invocation of *Johnson* at the District Court level that sets this case apart from that in *Booker*. In that case, the Court rejected a lenity argument, stating " As we have held here and in *Nason*, we find no ambiguity in the phrase 'use ... of physical force' when read in light of the 'text, structure, history, and purpose' of § 922( g)( 9), and thus the appellants' appeal to the doctrine of lenity is misplaced." *Booker*, 644 F.3d at 21. Notably, the appellants in *Booker* did not raise many of the

issues created by the Supreme Court's opinion in *Johnson*, and therefore these were not addressed by the *Booker* Court.

The *Booker* Court did not address the underlying precepts of Due Process that require courts to apply the doctrine of lenity. This doctrine forms part of a cluster of concepts that find their basis in the Due Process Clause. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). Part of this cluster is the doctrine of "fair warning." It is the decision of the Supreme Court that the "ordinary meaning" of "physical force" means "violent force" and not the "minimal force" involved in offensive contact that requires the Court to consider the doctrine of "fair warning."

The fact that the Supreme Court decided that the "ordinary meaning" of "physical force" is "violent force" is important to the idea of "fair warning." One of the first cases that applied the "fair warning" doctrine was *McBoyle v. United States*, 283 U.S. 25 (1931), in which the Supreme Court used the notion of "fair warning" to reverse a conviction for interstate transportation of an airplane under the National Motor Vehicle Theft Act, then codified at 18 U.S.C. § 408. The statute proscribed transporting in interstate commerce a motor vehicle known to have been stolen. In reversing the conviction, the Supreme Court noted that, "in everyday speech 'vehicle' calls up the picture of a thing moving on land." *McBoyle*, 283 U.S. at 26. The question presented was whether an airplane could properly be considered a "vehicle"

within the meaning of the statute. In answering this question, the Supreme Court noted that "the phrase under discussion calls up the popular picture. For after including automobile truck, automobile wagon and motor cycle, the words 'any other self-propelled vehicle not designed for running on rails' still indicate that a vehicle in the popular sense, that is a vehicle running on land is the theme. It is a vehicle that runs, not something, not commonly called a vehicle, that flies. Airplanes were well known in 1919 when this statute was passed, but it is admitted that they were not mentioned in the reports or in the debates in Congress." *Id.*

Similarly, the term "physical force" ordinarily calls up the vision of "violent force." Indeed, it is "violent force" that was repeatedly referenced in the legislative history of § 922(g)(9). Offensive physical contact, or force, no matter how slight, is not anywhere present. Thus, the statutory use of the term "physical force" does not give "fair warning" that *any* degree of force, no matter how slight, will result in the deprivation of the constitutional right to keep and bear arms. "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle*, 283 U.S. at 27. The line drawn by § 922(g)(9) is clear when applied to

violent conduct, but it is not clear under ordinary usage when applied to non-violent offensive physical contact.

The doctrine of "fair warning" proscribes courts from enlarging the scope of a statute, even where such construction would seem to further policy concerns. "When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *McBoyle*, 382 U.S. at 27. This is particularly inappropriate when the ordinary meaning of words in a statute would appear to be narrow and precise. "When a statute on its face is narrow and precise, ... it lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). Although ignorance of the law is no defense, when courts cannot agree on the scope and intent of the statutory language, the invocation of doctrine of fair notice is appropriate.

Section 922(g)(9) has been construed by most federal circuit courts of appeal not to apply to offensive physical contact convictions. In *United States v. White*, 606

F.3d 144 (4th Cir. 2010), the Court noted that the "Seventh, Ninth and Tenth Circuits have concluded the 'touching' element of common law battery is not 'physical force' as contemplated in § 921(a)(33)(A) or similar statutes. *See United States v. Hays,* 526 F.3d 674 (10th Cir. 2008); *United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003); *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003). In *Flores*, the Seventh Circuit examined whether a 'crime of domestic violence' under the Immigration and Nationality Act included the Indiana battery statute which defined an offense as 'any touching in a rude, insolent, or angry manner.' 350 F.3d at 669." *White*, 606 F.3d at 150. It concluded that it did not. The Seventh Circuit reaffirmed its conclusion that non-violent offensive physical contact misdemeanor crimes do not fall within § 922(g)(9) in reviewing the constitutionality of this statute. *See United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010)(en banc), *citing inter alia Johnson v. United States*, 130 S.Ct. 1265 (2010). To require a person of ordinary intelligence to understand that "physical force" extends farther than the ordinary meaning of violent force, when any number of federal judges of extraordinary intelligence have found that it does not, engenders a heavier burden than due process can bear.

Due Process presents more than one consideration in using undifferentiated misdemeanor assault convictions to create a permanent bar to firearm possession. This Court found that "Section 922(g)(9) finds its animating interest in keeping guns

away from people who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship, or who live with them or the like." *Booker*, 644 F.3d at 25. In the instant case, Mr. Voisine was not "proven" to have engaged in any violence against anyone with whom he shares, or shared, a domestic or familial relationship. The statute does not require the Government to "prove" violence, but rather only requires that the Government "prove" that Mr. Voisine has a prior conviction for simple assault. This prior conviction does not constitute "proof" of Mr. Voisine's having engaged in violence with any domestic partner at any time, as a conviction for offensive physical contact does not require "proof" of violence. Section 922(g)(9) may have an animating interest in keeping guns away from people who have engaged in violence, but the problem with extending the proscription to those with offensive contact convictions is that it deprives those individuals from having any forum in which "proof" of their ever having engaged in any violent conduct is offered or tested.

The absence of such a forum is illustrated by Mr. Voisine's case. He moved to dismiss the Indictment on the basis that " Domestic Violence Assault under Maine law  may be perpetrated through offensive contact, which would not satisfy the 'use of force' element of the federal statute." Motion to Dismiss at 1, JA 12. The District Court denied the motion, in essence, by determining that the *Johnson* decision had

no effect on § 922(g)(9). Order, Addendum. Mr. Voisine submitted the Criminal Complaint and Change of Plea colloquy underlying the single prior conviction contained in the Information. Neither document illustrates the acts underlying the conviction. The Government submitted the police report underlying the 2003 arrest, but the District Court correctly noted that this document could not be considered in ruling on the Motion to Dismiss. *See Bryant* Order at 4, n.5, Addendum ("The Government also attached a copy of the police report, which is revealing but may not be considered under [*United States v. Shepard*, 544 U.S. 13, 26 (2005)]; *United States v. Cadieux*, 500 F.3d 37, 43 (1st Cir. 2007) ('The Court, however, rejected the use of a police report as a basis for judicial fact-finding because permitting a sentencing judge considering an [Armed Career Criminal Act] enhancement to make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea raises Sixth and Fourteenth Amendment concerns') (internal punctuation omitted). In this case, therefore, the Court agrees with Mr. Bryant that the court-sanctioned documents do not clarify under which level of mens rea or degree of force Mr. Bryant acted when he committed the domestic assault"). The police report is the type of document that a District Court would be prohibited from considering in determining whether Mr. Voisine committed a misdemeanor involving bodily injury or offensive physical

contact. For purposes of the constitutional argument, the document does not provide

sufficient reliable facts (such as the trooper's being able to identify any physical sign

that Ms. Farwell had been slapped) to establish that Mr. Voisine engaged in violent

conduct. Having such "facts" litigated at a sentencing hearing cannot substitute for

a contested hearing leading to a conviction, which is why police reports and such are

excluded from the types of records a court may consider in determining the nature of

a prior conviction. As the District Court's ability to consider hearsay and other

information at a sentencing hearing is much broader than that allowed for obtaining

a conviction, it is appropriate that the record remains silent as to the factual basis for

conviction. It is particularly so where the approved document, a transcript of the plea

colloquy, is absolutely silent as to the underlying basis for conviction.

"It is not without significance that most of the provisions of the Bill of Rights

are procedural. It is procedure that spells much of the difference between rule by law

and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is

our main assurance that there will be equal justice under law." *Joint Anti-Fascist

Refugee Committee v. McGrath,* 341 U.S. 123, 179 (1951)(Douglas, J., concurring).

Without insisting that a conviction be based on violent conduct, there is no procedure

available to an individual to establish either that he or she has committed, or has

refrained from committing, the type of acts which justify abrogating a Second

Amendment right. "While many controversies have raged about ... the Due Process Clause, it is fundamental that except in emergency situations ... due process requires that when a State seeks to terminate an interest such as that here involved, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Bell v. Burson*, 432 U.S. 535, 542 (1971)(internal quotations and alterations omitted). If violence is the factual predicate upon which § 922(g)(9) derives its constitutional coherence, it stands to reason that the underlying conviction should be adequate to establish that violence occurred. Otherwise, the federal government is terminating a constitutionally protected interest without ever providing a forum to determine whether violence ever occurred.

The lack of procedure to determine whether the prior conviction derives from violent conduct or offensive physical contact is illustrated by Voisine's case. The presiding judge did not even have Mr. Voisine say that he was guilty, but simply that he agreed with the deal that had been worked out. That deal was for a fine and no prison term. At no time during this hearing did the Court ask what happened, nor did the prosecutor offer a version of events as to the basis for the conviction. The absence of a factual basis for the guilty plea is unsurprising, as Maine Rule of Criminal Procedure11(b),which requires obtaining a factual basis for a guilty plea, only applies to Class C crimes or higher. These are crimes that can be punished by

a term of imprisonment of one year or more.    As to Mr. Voisine's understanding of

the consequences of entering a guilty plea, he indicated that he had no idea that he

was prohibited from possessing firearms.  *See* PSR at ¶ 6, SJA 4.

In essence, the question is akin to that of collateral estoppel.  If a party has had

a full and fair opportunity to litigate a factual issue, and lost, then the fact that they

lost can be used in a subsequent proceeding.  This is the law in Maine.  "In 1983 in

*Hanover Insurance Co. v. Hayward*, 464 A.2d 156 (Me.1983), this Court ruled on the

weight to be given a final judgment of conviction in a later civil action. We held that

where issues were actually litigated and finally adjudicated in a criminal proceeding,

the conviction 'conclusively establishes all facts essential to the final judgment of

conviction.' *See id.* at 160. We limited the reach of our holding to those cases in

which 'the defendant had both the incentive and the opportunity to fully and fairly

litigate the issues in the criminal proceedings.'"  *Pattershall v. Jenness*, 485 A.2d

980, 983 (Me. 1984).

It is whether a misdemeanor offense provides a sufficient venue in which to

fairly and fully litigate a factual question  In *Pattershall*, the question arose as to

whether a misdemeanor assault conviction could be used in a subsequent civil trial

to establish that the defendant had, in fact, assaulted the plaintiff.  In determining that

the conviction could not come in, the Maine Supreme Judicial Court stated that

"There is a correlation between the seriousness of the offense and the incentive to fully and vigorously litigate. The maximum fines for misdemeanor convictions are low in comparison with the potential damages that could be awarded in a civil action. The fine actually imposed may be even lower. Although misdemeanor convictions may involve a potential sentence of imprisonment, the risk of incarceration varies widely with the facts of the individual case." *Id.* at 983-984.

As in *Pattershall*, Mr. Voisine was faced with apparently minor consequences: a fine of $200. He paid that fine. *See* PSR at ¶ 30, SJA 7. Pursuant to Maine precedent, this conviction could not be used in any subsequent court proceeding to establish that Mr. Voisine engaged in violent conduct, since there was no incentive or opportunity to fully and fairly litigate this issue in the underlying proceeding. Therefore, the Government obtained Mr. Voisine's conviction without having to establish that he ever engaged in any violent act toward Ms. Farwell. This is despite the fact that the only reason to deprive him of his right to possess firearms is based on the presumption that he has engaged in such violent conduct. Federal felony convictions should not be obtained on such "bait and switch" tactics.

If Mr. Voisine believed that the common usage of the term "physical force" did not encompass the acts forming the basis of his conviction, he would have been in good company. Because he could have been convicted based solely on the premise

that he engaged in offensive physical contact, his conviction does not establish the necessary factual predicate that he engaged in violent conduct. Because it does not, his conviction pursuant to § 922(g)(9) should be reversed.

## II.

### TITLE 18, UNITED STATES CODE, SECTION 922(G)(9), AS APPLIED TO MR. VOISINE'S PRIOR NON-VIOLENT OFFENSIVE PHYSICAL CONTACT CONVICTION, VIOLATES HIS SECOND AMENDMENT RIGHTS AS NON-VIOLENT CONDUCT DOES NOT PROVIDE A SUFFICIENT NEXUS TO A LEGITIMATE GOVERNMENT INTEREST

The District Court denied Mr. Voisine's motion to dismiss the Indictment as infringing on his Second Amendment rights based on the notion that Congress can proscribe misdemeanants from possessing firearms in order to address domestic violence. Order, Addendum. The *Booker* decision engaged in an analysis of the facial constitutionality of the statute. *See id*., 644 F.3d at 22 ("because it is facial in nature, the appellants' challenge to the constitutionality of § 922(g)(9) must fail if we determine that the statute 'has a plainly legitimate sweep'"). That "legitimate sweep" is to deprive those who engage in violent acts against family members from possessing firearms. If the statute is limited to only those who have committed violent acts, the Court's reasoning rests on solid ground. However, Mr. Voisine challenges the statutory sweep as it reaches those cases in which the conviction rests

on offensive physical contact. He raises the constitutional issue as an alternative to his statutory argument. This appeal raises the question whether 18 U.S.C. § 922(g)(9), as applied to non-violent offensive physical contact convictions, is constitutional. As the Court must conclude that Mr. Voisine was convicted of an offensive contact as the Government introduced no reliable facts to the contrary, he may appropriately invoke an as-applied challenge to this statute.

A. **The *Heller* decision indicates that individuals possess the right to keep and bear arms, and that such right therefore enjoys the same protection as other constitutionally recognized rights:**

The Second Amendment to the United States Constitution reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008), the Supreme Court divorced the purpose of maintaining a militia from an individual's right to possess and use firearms. *See id.* at 2801. In coming to this conclusion, the Supreme Court comprehensively reviewed the text of the Second Amendment in light of the history of the right to bear arms. It did so because "constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope is too broad." *Id.* at 2821.

The Court found that, historically, the right to keep and bear arms was considered a "natural right," that is, "not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence." *Heller*, 128 S.Ct. at 2797-98. Because the Founders considered the right to own firearms to pre-date the Constitution, "the Second Amendment declares that it shall not be infringed ... ." *id*. The "prefatory clause," which refers to the need for a "well regulated Militia" was not meant to limit the scope of the right, but rather to describe the motivating purpose for the codification of the natural right. *See id.* at 2801. In so doing, the majority explicitly rejected Justice Breyer's assertion in dissent that "individual self-defense is merely a 'subsidiary interest' of the right to bear arms." *Id.* at 2801 (internal citations omitted). Rather, the Court held that it is "entirely sensible that the Second Amendment prefatory clause announces the purpose for which the right was codified: to prevent elimination of the militia," *id.*, and then announced that "[t]he prefatory clause does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting." *Id.*

The Government has never established that Mr. Voisine engaged in any act of violence. If violence is the basis for authorizing the limitation on the exercise of a Second Amendment right, and the Government need never prove in any forum that

a defendant has ever engaged in violent conduct, then the statute fails to establish a nexus between the recognized governmental interest to keep firearms out of the hands of those who engage in violent conduct and therefore is unconstitutional.

**B.     The Government  failed to present any nexus between depriving non-violent offenders of their firearm rights and reducing intimate partner homicides**

Regardless of the level of scrutiny applied, the Government has failed to establish nexus between reducing intimate partner homicide and disarming non-violent offenders.  Such a nexus is required if the statute is to be found to be constitutional.  For instance, under an intermediate level of scrutiny, a stated goal must have a sufficient nexus to the proscription to comply with an area that is constitutionally sensitive.  For instance, in *Plyler v. Doe*, 457 U.S. 202 (1982), the Supreme Court invalidated a Texas law that favored the denial of a free public education to school-age children who were not citizens and who did not have proper immigration documents.  The Court analyzed the law's constitutionality under intermediate scrutiny because undocumented aliens are not a "suspect class," nor is education a fundamental right.  *See id.* 457 U.S. at 210.  However, the Court found intermediate scrutiny appropriate because the case involved an "area of constitutional sensitivity," *id.* at 227, and struck down the law because the State presented insufficient justification for depriving undocumented alien children of an education.

The lack of a connection between the regulation in question and its stated goal also played into the decision to strike down the regulations relating to the placement of group homes for mentally impaired adults in *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985)("the State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational"). This Court has recognized that the prohibition contained in § 922(g)(9) derives its legitimacy based on a prior finding of violent conduct. That legitimacy is lacking if a prior conviction does not involve violent conduct. Mr. Voisine was never proven to have engaged in violent conduct toward Ms. Farwell or other family member. Therefore, the statute is unconstitutional as applied to his case.

In the realm of First Amendment cases, intermediate scrutiny has been applied in cases where the nature of speech was a step removed from that targeted by the First Amendment, namely, commercial speech as opposed to political speech. In *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1996), the Court evaluated the constitutionality of a provision of the Federal Alcohol Administration Act that prohibited beer labels from displaying alcohol content. According to the Court, the analysis of the provision's constitutionality must focus on "the substantiality of the interest" in question, *id.* at 483, and whether the provision advanced that interest "in a direct and material way." *Id.* at 491. In order to meet its burden, the government was required

to provide "proof that its means will alleviate the real harms to a material degree." *Id.* at 487, *citing Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993). The government failed to meet this "critical" requirement and the provision was struck down by the Court. *See Rubin*, 514 U.S. at 487.

In determining that § 922(g)(9) is constitutional in a general sense, this Court stated that "in covering only those with a record of violent crime, § 922(g)(9) is arguably more consistent with the historical regulation of firearms than § 922(g)(1), which extends to violent and nonviolent offenders alike." *Booker*, 644 F.3d at 24-25. Mr. Voisine is challenging the fact that his conviction is not based on applying § 922(g)(9) to "only those with a record of violent crime." The Government has never submitted any proof, in any forum, that Mr. Voisine engaged in violent conduct toward Ms. Farwell or any family member. This is contrary to this Court's admonition that "a categorical ban on gun ownership by a class of individuals must be supported by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective." *Booker*, 644 F.3d at 25. The Government has presented no evidence of the relationship between gun violence and those convicted of non-violent offensive physical contacts, or other forms of non-violent crime. Although it may be true that "removing guns from the home will materially alleviate the danger of intimate

homicide by convicted abusers," *id.* at 26, it is not as clear that removing guns from the home will materially alleviate the danger of intimate homicide by those convicted of offensive contact. Removing firearms from the home would reduce the danger of self-inflicted injury with a firearm, but that rationale is insufficient to remove firearms from homes in general. *See Heller, supra.* Therefore, if physical abuse is that type of abuse that rises to bodily injury, which includes pain, then those convicted of inflicting bodily injury can be deprived of the right to keep and bear arms. But if there is no bodily injury, no attempt to cause bodily injury, and no threat to use a dangerous weapon, then there is no basis to deprive a person of his right to keep and bear arms. Because Mr. Voisine was convicted under § 922(g)(9) without ever having been proven to have engaged in the type of conduct that forms the animating force behind the prohibition, the statute is rendered unconstitutional as applied.

## CONCLUSION AND RELIEF SOUGHT

Mr. Voisine has no prior conviction based upon having caused bodily injury, as defined by Maine law, to an intimate partner. He has been convicted of having caused offensive physical contact. Either the offensive physical contact portion of the Maine assault statute is not a "misdemeanor crime of domestic violence," in that it does not require any violent conduct, or § 922(g)(9) unconstitutionally deprives Mr. Voisine of a core constitutional right without just cause. As such, his conviction on

Count One is due to be reversed and the sentence on that count is due to be vacated.

Date: June 18, 2012                    Respectfully submitted


                                    _/s/ Virginia G. Villa_____
                                    VIRGINIA G. VILLA, #124070
                                    Assistant Federal Defender
                                    Attorney for Stephen L. Voisine, Appellant
                                    Federal Defender Office
                                    District of Maine, Bangor Branch
                                    23 Water Street, Suite 206
                                    Bangor, ME 04401
                                    (207) 992-4111

# CERTIFICATE OF COMPLIANCE WITH RULE 32(A)


RE: ***United States v. Stephen L. Voisine***

 **No. 12-1213**


**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**:


1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:


☒  this brief contains *10,277* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:


☒  this brief has been prepared in a proportionally spaced typeface using WordPerfect X3, TimesNewRoman font, 14 point.


DATED: June 18, 2012            /s/ *Virginia G. Villa*
                                               **Virginia G. Villa,**
                                               Attorney for Appellant Stephen L. Voisine
                                               Assistant Federal Defender
                                               First Circuit Bar Number 124070

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2012, I electronically filed Appellant's Brief with the Clerk of Court using the CM/ECF system with will send notification of such filing to **Renee Bunker**, Assistant United States Attorney, Office of the United States Attorney, 100 Middle St., East Tower, 6th Floor, Portland, ME 04101.

/s/ *Virginia G. Villa*
VIRGINIA G. VILLA
Assistant Federal Defender
Federal Defenders of Maine

# ADDENDUM

Judgment in a Criminal Case (Document 43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Order on Motion to Dismiss (Document 14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Order on Motion to Dismiss (Document 26) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AO 245B   (Rev. 09-08) Judgment in a Criminal Case
Sheet 1

# United States District Court
## District of Maine

U.S. DISTRICT COURT
RECEIVED AND FILED

2012 FEB 14  P 2: 21

UNITED STATES OF AMERICA

V.

STEPHEN L. VOISINE

## JUDGMENT IN A CRIMINAL CASE

DEPUTY CLERK

Case Number: 1-11-CR-000017-001
USM Number: 06973-036

Virginia G. Villa, AFD
_____
Defendant's Attorney

## THE DEFENDANT:

☒ pleaded guilty to count(s) 1 and 2 of an Information.
☐ pleaded nolo contendere to count(s) _____which was accepted by the court.
☐ was found guilty on count(s) _____after a plea of not guilty.

### The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 922(g)(9) and 924(a)(2) | Possession of a Firearm by a Person Convicted of a Misdemeanor Crime of Domestic Violence | 10/18/2009 | 1 |
| 16 U.S.C. § 668(a) | Killing a Bald Eagle | 10/18/2009 | 2 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____.
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of material changes in economic circumstances.

February 13, 2012
_____
Date of Imposition of Judgment

_____
Signature of Judge

John A. Woodcock, Jr., Chief U.S. District Judge
Name and Title of Judge

February 14, 2012
_____
Date Signed

-1-

AO 245B   (Rev. 09-08) Judgment in a Criminal Case
   Sheet 2 – Imprisonment

DEFENDANT:        STEPHEN L. VOISINE
CASE NUMBER:      1-11-CR-000017-001

Judgment—Page    2    of    6

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>12 months and 1 day on Count1 and 9 months on Count 2, to be served concurrently.</u>

☐   The court makes the following recommendations to the Bureau of Prisons:


☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:
   ☐      at _____ ☐ a.m. ☐ p.m. on _____.
   ☐      as notified by the United States Marshal.

☒   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons.
   ☒      before 2 p.m. on <u>Friday, March 30, 2012.</u>
   ☐      as notified by the United States Marshal.
   ☐      as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

      Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.


_____

UNITED STATES MARSHAL


By _____

DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 09-08) Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:        STEPHEN L. VOISINE

CASE NUMBER:    1-11-CR-000017-001

Judgment—Page   3   of   6

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 2 years on Count 1 and 1 year on Count 2, to be served concurrently.

The Defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two additional drug tests during the term of supervision, but not more than 120 drug tests per year thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician. This provision does not permit the use of marijuana even with a prescription, without further permission of the Court or probation officer.

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   (Rev. 09-08) Judgment in a Criminal Case
      Sheet 3C – Supervised Release

DEFENDANT:      STEPHEN L. VOISINE
CASE NUMBER:   1-11-CR-000017-001

## SPECIAL CONDITIONS OF SUPERVISION

1. Defendant shall participate in mental health treatment, as directed by the supervising officer, until released from the program by the supervising officer. Defendant shall pay/co-pay for services during such treatment, to the supervising officer's satisfaction;

2. Defendant shall not use or possess any controlled substance, alcohol or other intoxicant; and shall participate in a program of drug and alcohol abuse therapy to the supervising officer's satisfaction. This shall include testing to determine if Defendant has used drugs or intoxicants. Defendant shall submit to one test within 15 days of release from prison and at least two, but not more than 120, tests per calendar year thereafter, as directed by the supervising officer. Defendant shall pay/co-pay for services during such treatment to the supervising officer's satisfaction. Defendant shall not obstruct or tamper, or try to obstruct or tamper, in any way, with any tests;

3. Defendant shall not associate with individuals consuming alcoholic beverages, shall not frequent business establishments whose primary product is alcoholic beverages, and shall not use any medication containing alcohol without permission from the supervising officer or a prescription from a licensed physician; and

4. Defendant shall not own or possess any firearm or other dangerous weapon, or knowingly be at any time in the company of anyone known by him to possess a firearm or other dangerous weapon.

Case 1:11-cr-00017-JAW   Document 43   Filed 02/14/12   Page 5 of 6   PageID #: 83
AO 245B   (Rev. 09-08) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

Judgment—Page   5   of   6

DEFENDANT:        STEPHEN L. VOISINE
CASE NUMBER:      1-11-CR-000017-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|          | Count | Assessment | Fine   | Restitution |
|----------|-------|------------|--------|-------------|
|          | 1     | $ 100.00   | $ 0.00 | $ 0.00      |
|          | 2     | $ 25.00    | $ 0.00 | $ 0.00      |
| **Totals:** |       | $ 125.00   | $ 0.00 | $ 0.00      |

☐ The determination of restitution is deferred until         . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|------------------|-------------------------|----------------------------|
| **TOTALS**        | $                | $                       |                            |

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 United State Code, for offenses committed on or after September 13, 1994, but before April 23, 1996

AO 245B  (Rev. 09-08) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

DEFENDANT:       STEPHEN L. VOISINE
CASE NUMBER:     1-11-CR-000017-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   ☒  Lump sum payment of $125.00 due immediately, balance due
    ☒  Any amount that the defendant is unable to pay now is due and payable during the term of incarceration. Upon release from incarceration, any remaining balance shall be paid in monthly installments, to be initially determined in amount by the supervising officer. Said payments are to be made during the period of supervised release, subject always to review by the sentencing judge on request, by either the defendant or the government.
       ☐ not later than                               , or
       ☐ in accordance with     ☐  C,    ☐  D, or    ☐      E, or ☐ F below; or

B   ☐  Payment to begin immediately (may be combined with     ☐  C,     ☐  D, or    ☐  F below); or

C   ☐  Payment in equal           *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
                                  *(e.g., months or years)*, to commence          *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐  Payment in equal           *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
                                  *(e.g., months or years)*, to commence          *(e.g., 30 or 60 days)* after release from imprisonment to a
       term of supervision; or

E   ☐  Payment during the term of supervised release will commence within      *(e.g., 30 or 60 days)* after release from
       imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:11-cr-00017-JAW |
| | ) |
| STEPHEN L. VOISINE | ) |

## ORDER ON MOTION TO DISMISS

On March 11, 2011, Stephen L. Voisine pleaded guilty to both counts of a two count information. Count I charged him with possession of a firearm after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9) and Count II charged him with shooting and killing a bald eagle in violation of 16 U.S.C. § 668(a). *Information* (Docket # 2). On March 15, 2011, Mr. Voisine moved to dismiss Count I of the information. *Mot. to Dismiss Count I of the Information* (Docket # 10). The Government responded on April 5, 2011, and Mr. Voisine replied to the response on April 11, 2011. *Gov't's Resp. to Def.'s Mot. to Dismiss* (Docket # 12); *Def.'s Reply to Gov't's Resp. to Mot. to Dismiss* (Docket # 13).

Mr Voisine first claims that the charge infringes his Second Amendment right to bear arms. He next contends that the information fails to state a federal offense because the First Circuit's decision in *United States v. Nason*,[1] which concluded that a conviction under Maine's assault statute constitutes a "misdemeanor crime of domestic violence" under federal law, is no longer binding on this Court. Instead, he asserts that in interpreting the term, "physical force," as it appears in the firearms possession statute, the Court must apply the construction

---

[1] 269 F.3d 10 (2001).

the United States Supreme Court in *Johnson v. United States*[2] and the First Circuit in *United States v. Holloway*[3] gave the same term for purposes of the Armed Career Criminal Act (ACCA), and if it does so, Count I must be dismissed because the Defendant has not committed a predicate crime.

The Court considered these exact issues in denying a motion to dismiss the indictment in *United States v. Bryant*, 1:11-cr-00021-JAW.   In fact, the legal arguments presented by both Mr. Voisine and the Government in this motion are precisely the same as those presented in *Bryant*.   Moreover, there are no factual differences distinguishing this case from *Bryant*.   Accordingly, the Court incorporates its reasoning in *Bryant* and DENIES Mr. Voisine's Motion to Dismiss Count I of the Information (Docket # 10).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of April, 2011

---

[2] 130 S. Ct. 1265 (2010).
[3] 630 F.3d 252 (1st Cir. 2011).

2

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00021-JAW |
| | ) | |
| TROY BRYANT | ) | |

### ORDER ON MOTION TO DISMISS

Troy Bryant moves to dismiss the indictment charging him with possession of ammunition after having been convicted of a misdemeanor crime of domestic violence. He first claims that the charge infringes his Second Amendment right to bear arms. He next contends that the indictment fails to state a federal offense because the First Circuit's decision in *United States v. Nason*,[1] which concluded that a conviction under Maine's assault statute constitutes a "misdemeanor crime of domestic violence" under federal law, is no longer binding on this Court. Instead, he asserts that in interpreting the term, "physical force," as it appears in the firearms possession statute, the Court must apply the construction the United States Supreme Court in *Johnson v. United States*[2] and the First Circuit in *United States v. Holloway*[3] gave the same term for purposes of the Armed Career Criminal Act (ACCA), and if it does so, the indictment must be dismissed because the Defendant has not committed a predicate crime. The Court has previously considered and rejected most of these arguments and does so again. As regards *Johnson* and *Holloway*, the Court does not consider judicial interpretations of the ACCA to be

---

[1] 269 F.3d 10 (2001).
[2] 130 S. Ct. 1265 (2010).
[3] 630 F.3d 252 (1st Cir. 2011).

-9-

sufficiently persuasive to disturb the binding power of First Circuit precedent on the question of the definition of "physical force" for purposes of federal firearms possession prohibitions. The Court denies the Defendant's motion.

## I. BACKGROUND

### A. Procedural Background

On February 24, 2011, a federal grand jury indicted Troy Bryant for possessing ammunition after having been convicted of a misdemeanor crime of domestic violence in violation of 18 U.S.C. § 922(g)(9).[4] *Indictment* (Docket # 13). On March 11, 2011, Mr. Bryant moved to dismiss the indictment. *Mot. to Dismiss Indictment* (Docket # 20) (*Def.'s Mot.*). On April 1, 2011, the Government responded, and on April 4, 2011, Mr. Bryant replied. *Gov't's Resp. to Def.'s Mot. to Dismiss* (Docket # 24) (*Gov't's Resp.*); *Def.'s Reply to Gov't's Resp. to Mot. to Dismiss* (Docket # 25) (*Def.'s Reply*).

## II. DISCUSSION

### A. Motion to Dismiss Indictment

A Court should exercise its authority to dismiss cautiously since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" *United States v. Pettengill*, 682 F. Supp. 2d 49, 51 (D. Me. 2010) (quoting *United States v. Thomas*, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007)). The power is "appropriately reserved, . . . for extremely limited circumstances. *Whitehouse v.*

---

[4] 18 U.S.C. § 922(g)(9) makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any . . . ammunition." According to the indictment, Mr. Bryant was convicted in 2005 of a misdemeanor crime of domestic violence in violation of 17-A M.R.S. § 207. *Indictment* at 1.

2

*United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995). "Unless the Government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Pettengill*, 682 F. Supp. 2d at 51 (quoting *United States v. Alfonso*, 143 F.3d 772, 776-77 (2nd Cir. 1998)).

## B.   The Second Amendment

Mr. Bryant first argues that 18 U.S.C. § 922(g)(9) violates the Second Amendment. *Def.'s Mot.* at 2-8. He acknowledges that the Court "previously considered, and rejected, this basis to dismiss an Indictment charged pursuant to . . . §922(g)(9) by way of the order entered in *United States v. Booker*, 570 F. Supp. 2d 161 (D. Me. 2008); *United States v. Wyman*, 667 F. Supp. 2d 151 (D. Me. 2009); and *United States v. Pettengill*, 682 F. Supp. 2d 49 (D. Me. 2010)." *Def.'s Mot.* at 5. He nevertheless challenges those rulings on two grounds: (1) the rulings employed improper levels of scrutiny; and (2) they were based on a flawed construction of § 922(g)(9). The Court stands by its constitutional analyses in those cases. As to the latter challenge, until the First Circuit directs otherwise, the Court concludes that its construction of § 922(g)(9) in *Booker*, *Wyman*, and *Pettengill* remains good law in this District.

## C.   Failure to State a Federal Offense

Mr. Bryant argues that the indictment fails to state a federal offense by failing to allege a predicate crime under § 922(g)(9). To be convicted of violating §

3

-11-

922(g)(9), the defendant must have been previously convicted of a misdemeanor crime of domestic violence. The indictment alleges that Mr. Bryant had been previously convicted of such a crime, specifically a violation of Maine's assault statute, 17-A M.R.S. § 207. However, Mr. Bryant argues that a conviction under Maine's assault statute, without more, does not necessarily meet the federal definition of a misdemeanor crime of domestic violence because it does not require the same *mens rea* or level of physical force.[5]

Section 921(a)(33)(A) defines "misdemeanor crime of domestic violence" for purposes of §922(g)(9) as:

. . . an offense that—

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent,

---

[5] Mr. Bryant argues that consistent with *Taylor v. United States*, 495 U.S. 575, 595 (1990) and *Shepard v. United States*, 544 U.S. 12, 26 (2005), the Court must employ the First Circuit's two-tiered categorical approach in determining whether his prior conviction meets the definition of "use or attempted use of physical force." *Def.'s Mot.* at 8-9. The two-tiered approach turns first to the statutory language to determine whether the statute "sweeps more broadly" than the qualifying definition, and if so, turns next to whether the record of conviction establishes the factual basis for the conviction. *United States v. Miller*, 478 F.3d 48, 50 (1st Cir. 2007). In *Booker*, this Court agreed that the *Taylor/Shepard* approach, as refined by the First Circuit, would apply "with equal force to determine if a person has been convicted of a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 921(a)(33)." *Booker*, 555 F. Supp. 2d at 223. Here, the Government attached to its response the court documents for Mr. Bryant's assault conviction. *Gov't's Resp.* Attach. 1-3. But they are unrevealing. The Government also attached a copy of the police report, which is revealing but may not be considered under *Shepard*. 544 U.S. at 26; *United States v. Cadieux*, 500 F.3d 37, 43 (1st Cir. 2007) ("The Court, however, rejected the use of a police report as a basis for judicial fact-finding because permitting a sentencing judge considering an [Armed Career Criminal Act] enhancement to make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea raises Sixth and Fourteenth Amendment concerns") (internal punctuation omitted). In this case, therefore, the Court agrees with Mr. Bryant that the court-sanctioned documents do not clarify under which level of *mens rea* or degree of force Mr. Bryant acted when he committed the domestic assault.

4

> or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

17-A M.R.S. § 207 states in part:

> 1.  A person is guilty of assault if:
>
> A.  The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person.

Mr. Bryant contends that intentionality must be an element of the predicate crime for the crime to fit the definition of "misdemeanor crime of domestic violence" and observes that "recklessness" satisfies the *mens rea* requirement for conviction under § 207. *Id.* at 8. He further notes that one can be convicted of violating § 207 for merely offensive contact, which he argues does not necessarily rise to the level of "use or attempted use of physical force" within the meaning of a "misdemeanor crime of domestic violence."[6] *Id.* at 8-10 (citing 18 U.S.C. § 921(a)(33)(A)(ii)); *Def.'s*

---

[6] Mr. Bryant discusses *State v. Patterson*, 2004 ME 79, 851 A.2d 521, to demonstrate how minimal the "offensive physical contact" may be under the Maine assault statute. In *Patterson*, a boyfriend arrived home to find a spot in newly-installed carpet. *Id.* 2004 ME 79, ¶ 3, 851 A.2d at 522. He became irritated and commented as he attempted to clean the spot. *Id.* The comments provoked the girlfriend and she took a piece of pizza and rubbed it into the carpet. *Id.* In response, the boyfriend picked up his girlfriend, carried her outside, and left her there. *Id.* Although characterizing the crime as of "a minimal nature," the district judge found the boyfriend guilty of assault and sentenced him to "simply the conviction" and a small fine. *Id.* 2004 ME 79, ¶ 9, 851 A.2d at 523. Although Mr. Bryant does not mention it, the Maine Supreme Judicial Court vacated the conviction and remanded the case based on the District Court's erroneous interpretation of 17-A M.R.S. § 105, which allows a person to use nondeadly force to the extent he reasonably believed it necessary to prevent what reasonably appeared to be an unlawful taking of his property or criminal mischief. *Id.* 2004 ME 79, ¶ 14-15, 851 A.2d at 524-25.

Mr. Bryant also does not mention that after *Patterson* was remanded, the case returned to the Maine Supreme Judicial Court. *State v. Patterson*, 2005 ME 55, 881 A.2d 649 (*Patterson II*). After the initial remand, the District Court had reinstated the conviction and Mr. Patterson appealed again. Again the Maine Supreme Judicial Court vacated. *Id.* In *Patterson II* , the Law Court noted that in the context of a section 105 defense, "[b]ecause recklessness is the minimum required mens rea requirement for assault pursuant to 17-A M.R.S. § 207(1)(A), the State was required to prove beyond a reasonable doubt that Patterson's beliefs that led to his actions 'when viewed in light of the nature and purpose of [his] conduct and the circumstances known to [him], [were] grossly deviant from what a reasonable and prudent person would believe in the same situation.'" *Patterson II*, 2005 ME 55, ¶ 8, 881 A.2d at 651 (quoting 17-A M.R.S. § 105).

5

*Reply* at 1 (clarifying that his challenge to using a § 207 conviction as a predicate misdemeanor to a § 922(g)(9) charge was based not only on the *mens rea* issue, but also the contention that "offensive contact" does not necessarily amount to "physical force"). This Court has previously addressed these issues and no intervening case law changes the outcome.

### 1.   The First Circuit's Holding in *Nason*

In *United States v. Nason*, the First Circuit rejected the same *mens rea* and level of force arguments Mr. Bryant raises here. 269 F.3d 10 (2001). The *Nason* Court considered whether conduct violating the "offensive physical contact" prong of § 207 "necessarily involves the use or attempted use of physical force" such that convictions under that prong may qualify as predicate offenses under §922(g)(9). *Id.* at 11-12. It held that "all convictions under [17-A M.R.S. § 207] qualify as misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9)." *Id.* at 21. The *Nason* Court explained that "Congress intended section 922(g)(9) to encompass crimes characterized by the application of *any* physical force." *Id.* at 18.

Mr. Bryant argues that *Nason* "does not address the intent issue presented by Congress's selection of the term 'use of force.'" *Def.'s Mot.* at 11. The Court disagrees. In *Nason*, the First Circuit reviewed the decisions of the Maine Supreme Judicial Court, which addressed "offensive physical contact" under § 207, and concluded that the phrase involves "something less than bodily injury" but more

---

Although Mr. Bryant's point is well taken about the minimal nature of the offensive physical contact that may sustain an assault conviction, the *Patterson* cases also reflect that a conviction for minimal offensive physical contact may be more difficult under Maine law than Mr. Bryant allowed.

6

than "mere touching." *Nason* 269 F.3d at 19 (quoting *State v. Pozzouli*, A.2d 745 (Me. 1997)). The First Circuit cited § 207's "mens rea requirement" as one of the distinctions between offensive physical contact and mere touching. *Id.* In other words, the *Nason* Court considered § 207's *mens rea* requirement as a factor harmonizing its elements with the definition of misdemeanor crime of domestic violence. Moreover, although Mr. Bryant emphasizes the word "use" preceding the phrase "physical force," suggesting it supplies an intentionality element to the definition of misdemeanor crime of domestic violence, *see Def.'s Mot.* at 9, the *Nason* Court found that "offensive physical contacts with another person's body categorically involve the use of physical force." 269 F.3d at 20. Because knowing and reckless are expressly sufficient *mentes reae* for offensive physical contact under § 207, the First Circuit implicitly rejected the idea that intentionality is an essential element of "use of physical force."

Finally, Mr. Bryant cites no First Circuit case law for the assertion that intentionality is a required element of misdemeanor crimes of domestic violence. Although he points to the case law of other circuits, which have focused on the level of force necessary to constitute "physical force," *see Def.'s Mot.* at 9-11 (citing *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008) and *United States v. Belless*, 338 F.3d 1063 (9th Cir. 2003)), Mr. Bryant has not directed the Court to any circuit discussion of intentionality. *Id.* In short, the Court remains bound by First Circuit precedent and is unconvinced that the decisions of other circuits presage a change in First Circuit law sufficient to "loosen the iron grip of *stare decisis.*" *United States*

7

*v. Reveron Martinez*, 836 F.3d 684, 687 n.2 (1st Cir. 1988). In fact, in *United States v. Duval*, 496 F.3d 64, 84-85 (1st Cir. 2007), addressing the meaning of "violent felony" under the ACCA, a three-judge panel of the First Circuit itself observed that "[u]ntil such time as we revisit *Nason en banc*, we are bound to apply its holding that even 'offensive contact' constitutes a violent felony under Maine's assault and battery statute." (internal citation omitted).

## 2. Developments in the Law Since *Nason*

Mr. Bryant argues that intervening case law has overruled *Nason*. His argument highlights the term "physical force", which appears in the ACCA and in the definition of misdemeanor crime of domestic violence. The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is a burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis supplied). As noted earlier, the statutory definition of misdemeanor crime of domestic violence contains the same term: "an offense that . . . has, as an element, the use or attempted use of physical force . . . ." 18 U.S.C. § 921(a)(33)(A) (emphasis supplied). Mr. Bryant says that the Court must apply judicial interpretations of "physical force" under the ACCA to "physical force" under the definition of misdemeanor crime of domestic violence and that when the

8

same interpretation is applied, Mr. Bryant's state conviction cannot serve as a predicate crime for a conviction under 18 U.S.C. § 922(g)(9).

Mr. Bryant's argument is premised on his assertion that in *Johnson v. United States*, 130 S. Ct. 1265 (2010), the Supreme Court effectively overruled *Nason*. In *Johnson*, the Court held that a defendant's prior battery conviction under Florida law was not a "violent felony" under the ACCA. *Id.* at 1265. The *Johnson* Court stated that, "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1272 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). The *Johnson* Court held that such force was not a prerequisite for conviction under Florida's battery statute, which could be "satisfied by *any* intentional physical contact, 'no matter how slight.'" *Id.* at 1269-1270 (quoting *State v. Hearns* 961 So. 2d 211, 218 (Fla. 2007)).

For support, Mr. Bryant points to some stray judicial comments anticipating that in interpreting the meaning of "violent felony" in the ACCA, the Supreme Court might illuminate the meaning of "misdemeanor crime of domestic violence." *See Def.'s Mot.* at 9-13; *see also Duval*, 496 F.3d at 85 (incorporating the First Circuit's reasoning in *Nason* to its review of a district court's determination "that a conviction in Maine for simple assault constitutes a crime of violence for the purposes of the ACCA"); *United States v. Pettengill*, 682 F. Supp. 2d 49, 57-58 (D. Me. 2010) (addressing defendant's request that the motion be held in abeyance pending the disposition of *Johnson*, the Court noted that "there is no guarantee that

9

-17-

when the Supreme Court issues its opinion in *Johnson*, it will resolve the issues before the Court"); *United States v. Wyman*, 667 F. Supp. 2d 151, 154 n.4 (D. Me. 2009) ("Though not precisely the same question presented here or in *Booker*, the Supreme Court's decision in *Johnson* could inform the First Circuit's position in *Nason*"). More specifically, Mr. Bryant argues that *Duval* established that "the ACCA must be read in the same manner as § 922(g)(9)." *Def.'s Mot.* at 13.

The Court disagrees. In *Duval*, the First Circuit reviewed a district court's determination that a defendant's conviction under § 207 constituted a violent crime for purposes of the ACCA.  496 F.3d at 84-85.  The *Duval* Court explained that it reviewed the district court's determination for "plain error." Under that standard, it was the defendant's burden to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *United States v. Bennett*, 469 F.3d 46, 51 (1st Cir. 2006)). Noting that *Nason* was the only case cited by either party for guidance on the interpretation of § 207, the *Duval* Court stated that it could not "distinguish it in any meaningful way from the circumstances of [the defendant]'s case," and concluded that it was "bound to apply its holding that even 'offensive contact' constituted a violent felony under Maine's assault and battery statute." *Id.* at 85. Moreover, the *Duval* Court concluded that *Nason* was still binding law in the First Circuit. *Id.* The Court does not read *Duval*, as Mr. Bryant suggests, as mandating a wholesale importation of its construction of the ACCA into the definition of

10

-18-

"misdemeanor crime of domestic violence." Rather, the *Duval* Court's decision was grounded on the twin doctrines of plain error and *stare decisis*. *Id.* at 84-85.

Nor would Mr. Bryant's argument find support in *Johnson*. The *Johnson* Court's construction of "physical force" in the ACCA context is narrower than the First Circuit's construction of "physical force" in the § 921(a)(33)(A) context, which includes "any physical force, regardless of whether that force resulted in bodily injury or risk of harm." *Nason*, 269 F.3d at 16-17. In *Johnson*, the Supreme Court strongly indicated that the respective statutes harbor distinct meanings of "physical force." The *Johnson* Court emphasized that its holding was limited to the definition of "physical force" in the context of the ACCA. 130 S. Ct. at 1271-1273. It expressly stated that "[w]e do not decide that the phrase has the same meaning in the context of defining a *misdemeanor* crime of domestic violence. The issue is not before us, so we do not decide it." *Id.* at 1273. The Supreme Court, therefore, expressly declined to endorse Mr. Bryant's view that the phrase "physical force" has the same meaning in both contexts.

Moreover, the *Johnson* Court's emphasis of the word "misdemeanor" highlights the distinction between two separate statutory meanings of physical force: (1) physical force as an element of a violent felony and (2) physical force as an element of a misdemeanor crime of domestic violence. The two meanings are elements of distinct categories of crimes assigned separate levels of criminality. It stands to reason that the degree of force Congress deemed necessary to constitute

11

an element of a violent felony is greater than that necessary to constitute a misdemeanor.

To the extent *Johnson* addressed the question, the Supreme Court suggested that the same phrase in the two statutes could have different meanings. The *Johnson* Court elaborated on the variant meanings of "physical force." It noted that an element of the common law crime of battery was "the intentional application of unlawful force against the person of another." *Id.* at 1270. The element could be "satisfied by even the slightest offensive touching." *Id.* The Supreme Court determined that the common law definition did not fit the ACCA context where the term "force" was accompanied by the modifiers "physical" and "violent." *Id.* at 1271. The Supreme Court also attributed significance to the term "felony" in the ACCA meaning. *Id.* It observed that "even today a simple battery—whether of the mere-touching or bodily-injury variety—generally is punishable as a misdemeanor," and concluded that "[i]t is unlikely that Congress would select as a term of art defining 'violent felony' a phrase that the common law gave peculiar meaning only in its definition of misdemeanor." *Id.* 1271-72. That "physical force" "normally connotes force strong enough to constitute 'power'" is "all the more so when it is contained in a definition of 'violent felony.'" *Id.* This reasoning indicates the Supreme Court's recognition that Congress assigns the term "force" different meaning in the felony context than in the misdemeanor context.

For the same reason, the First Circuit's holding in *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), does not disturb its holding in *Nason*. In *Holloway*,

12

the First Circuit considered "whether a federal court may conclude that a conviction under Massachusetts's simple assault and battery statute qualifies as a violent felony under the ACCA." *Id.* at 254. It is true, as Mr. Bryant contends, that following *Johnson*, the First Circuit overruled *United States v. Mangos*, 134 F.3d 460 (1st Cir. 1998), which had held that "did assault and beat" charging language "suffices to identify the harmful brand of battery for purposes of sentencing under either the ACCA or the career offender provision of the U.S. Sentencing Guidelines." *Holloway*, 630 F.3d at 257. The *Holloway* Court concluded that in view of *Johnson* and Massachusetts state interpretations of the scope of the assault and battery statute, "a sentencing court may not rely on the generic 'did assault and beat' charging language to identify which particular battery offense served as the offense of conviction." *Id.* at 260.

*Holloway* is no more than the First Circuit's declared allegiance to the Supreme Court's directive in *Johnson*. As the Government correctly observes, "[t]here was simply no discussion of § 922(g)(9) or any attempt to define misdemeanor crime of domestic violence." *Id.* After *Johnson*, the Court will not incorporate the construction of "physical force" under the definition of "violent felony" in the ACCA to its analysis of "physical force" under the definition of "misdemeanor crime of domestic violence" in the firearms possession prohibition.

In sum, the holding in *Nason* that "all convictions under [17-A M.R.S. § 207] qualify as misdemeanor crimes of domestic violence within the purview of 18 U.S.C. § 922(g)(9)," 269 F.3d at 21, remains the law in this Circuit and binding on this

13

-21-

Court.  *Holloway*, 630 F.3d at 258.  Therefore, the indictment states a federal offense because Mr. Bryant is alleged to have possessed ammunition after having been convicted of a recognized predicate offense.

## III.  CONCLUSION

The Court DENIES Mr. Bryant's Motion to Dismiss the Indictment (Docket # 20).

SO ORDERED

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2011

14