# No. 12-1213

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN L. VOISINE,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRIEF OF THE APPELLEE UNITED STATES OF AMERICA

THOMAS E. DELAHANTY II
United States Attorney

Renée M. Bunker
Assistant U.S. Attorney

District of Maine
100 Middle Street
East Tower, Sixth Floor
Portland, ME  04101
(207) 771-3258

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Case . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . 2

Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 3

District Court Order . . . . . . . . . . . . . . . . . . . . . . . . 6
    Guilty Pleas . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.   Voisine's Claim That the District Court Erred in Ruling
     That His Maine Assault Conviction Qualified as an 18 U.S.C.
     § 922(g)(9) Predicate Is Foreclosed by this Court's <u>Booker</u>
     Opinion.(Appellant's Argument I) . . . . . . . . . . . . . 16

    A.    Standard . . . . . . . . . . . . . . . . . . . . . . . . 17
    B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . 21
    C.    Voisine's Claims . . . . . . . . . . . . . . . . . . . . 29
         Statutory Interpretation . . . . . . . . . . . . . . . . 29
         Legislative History . . . . . . . . . . . . . . . . . . 33
         Due Process . . . . . . . . . . . . . . . . . . . . . . 35

II.  Voisine's Claim That the District Court Erred in Rejecting
     His Second amendment Challenge to 18 U.S.C. § 922(g)(9) Is
     Foreclosed by this Court's <u>Booker</u> Opinion. (Appellant's
     Argument II) . . . . . . . . . . . . . . . . . . . . . . . 42

    A.    Standard . . . . . . . . . . . . . . . . . . . . . . . . 42
    B.    Discussion . . . . . . . . . . . . . . . . . . . . . . . 42
    C.    Voisine's Claims . . . . . . . . . . . . . . . . . . . . 50

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abuelhawa v. United States, 129 S. Ct. 2101 (2009).............27

Deal v. United States, 508 U.S. 129 (1993)....................33

District of Columbia v. Heller, 554 U.S. 570 (2008).......passim

Environmental Defense v. Duke Energy Corp., 549 U.S. 561 (2007)32

Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003)..............38

Hightower v. City of Boston, 2012 WL 3734352 (1st Cir. Aug. 30, 2012)
.........................................................48

James v. United States, 550 U.S. 192 (2007)................31, 38

Johnson v. United States, 130 S. Ct. 1265 (2010)..........passim

Logan v. United States, 552 U.S. 23 (2007)....................38

National Association of Manufacturers v. Taylor, 549 F. Supp. 2d 33
    (D.D.C. 2008) ...........................................51

United States v. Arcadipane, 41 F.3d 1 (1st Cir.1994)..........37

United States v. Bayes, 210 F.3d 64 (1st Cir. 2000).......27, 33

United States v. Bell, 505 F.2d 539, 540 (7th Cir. 1974).......26

United States v. Belless, 338 F.3d 1063 (9th Cir. 2003)....31, 38

United States v. Booker, 570 F. Supp. 2d 161 (D.Me. 2008)........
    ................................................3, 4, 10

United States v. Booker, 644 F.3d 12 (1st Cir. 2011), cert. denied,
    132 S.Ct. 1538 (Feb. 21, 2012) .........................passim

United States v. Castleman, 2012 WL 4096234 (6th Cir. Sept. 19, 2012)
    .......................................................38

United States v. Chester, 628 F.3d 673 (4th Cir. 2010).........50

United States v. Chester, 847 F. Supp. 2d 902 (S.D.W.V. 2012)..43

United States v. Councilman, 418 F.3d 67 (1st Cir. 2005).......37

United States v. Dancy, 640 F.3d 455 (1st Cir. 2011)..........28

United States v. Delis, 558 F.3d 177 (2d Cir. 2009)...........26

United States v. Foley, 871 F.2d 235 (1st Cir. 1989)..........40

United States v. Frizzi, 491 F.2d 1231 (1st Cir. 1974)........33

United States v. Glover, 558 F.3d 71 (1st Cir. 2009)..........31

United States v. Greeno, 679 F.3d 510 (6th Cir. 2012).........51

United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006)..37, 38

United States v. Gruppee, 682 F.3d 143 (1st Cir. 2012)........28

United States v. Guilbert, 692 F.2d 1340 (11th Cir. 1982)......26

United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003).........18

United States v. Hayes, 555 U.S. 415 (2009)...................46

United States v. Hays, 526 F.3d 674 (10th Cir. 2008).......32, 38

United States v. Holloway, 630 F.3d 252 (1st Cir. 2011).........
........................................2, 4, 9, 10, 27

United States v. Hussein, 351 F.3d 9 (1st Cir. 2003)..........36

United States v. Jonas, 689 F.3d 83 (1st Cir. 2012)...........28

United States v. Kline, 2012 WL 3984670 (4th Cir. Sept. 12,
2012)(unpublished) ........................................51

United States v. Lanier, 520 U.S. 259 (1997)...............36, 37

United States v. Mahin, 668 F.3d 119 (4th Cir. 2012)..........49

United States v. Matos, 611 F.3d 31 (1st Cir. 2010)...........35

United States v. Moore, 666 F.3d 313 (4th Cir. 2012)..........49

United States v. Morales-de  Jesus, 372 F.3d 6 (1st Cir. 2004).51

United States v. Nason, 269 F.3d 10 (1st Cir. 2001)........passim

United States v. Pettengill, 682 F. Supp. 2d 49 (D.Me. 2010).....
.............................................3, 10, 43

United States v. Pires, 642 F.3d 1 (1st Cir. 2011).18, 19, 21, 28

United States v. Reese, 627 F.3d 792 (10th Cir. 2010).........52

United States v. Rehlander, 666 F.3d 45 (1st Cir. 2012)..........
.......................................20, 21, 39, 40, 41

United States v. Rene E., 583 F.3d 8 (1st Cir. 2009)...........42

United States v. Salley, 651 F.3d 159 (2011)...............20, 35

United States v. Shepard, 544 U.S. 13 (2005)...................51

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010)(en banc)...
..................................30, 45, 46, 47, 52, 53, 54

United States v. Smith, 171 F.3d 617 (8th Cir. 1999)...........37

United States v. Smoot, 2012 WL 3264387 (4th Cir. Aug. 13, 2012)
.......................................................51

United States v. Staten, 666 F.3d 154 (4th Cir. 2011)......46, 53

United States v. Sumrall, 690 F.3d 42 (1st Cir. 2012)..27, 28, 40

United States v. Torres-Rosario, 658 F.3d 110 (1st Cir. 2011)..52

United States v. Valero, 676 F.3d 237 (1st Cir. 2012).........20

United States v. Wells, 826 F. Supp. 2d 441 (N.D.N.Y. 2011)50, 52

United States v. Williams, 616 F.3d 685 (7th Cir. 2010).......51

United States v. Wyman, 667 F. Supp. 2d 151 (D.Me. 2009).........
.............................................3, 4, 10, 42

**STATE CASES & STATE STATUTES**

Pattershall v. Jenness, 485 A.2d 980 (Me.1984)(AOB.34-35)......41

State v. Bowden, 342 A.2d 281 (Me.1975).........................31

State v. Carmichael, 405 A.2d 732 (Me.1979)....................31

State v. Griffin, 459 A.2d 1086 (Me.1983)......................31

State v. Keegan, 296 A.2d 483 (Me. 1972)......................40

State v. Pozzuoli, 693 A.2d 745 (Me.1997)....................31

State v. Snow, 438 A.2d 485 (Me. 1981)......................40

State v. Thayer, 281 A.2d 315 (Me.1971)......................31

**FEDERAL STATUTES & OTHER FEDERAL AUTHORITIES**

16 U.S.C. § 668.............................................1, 2

18 U.S.C. § 113.......................................26, 27, 34

18 U.S.C. § 921.........................................passim

18 U.S.C. § 922.........................................passim

18 U.S.C. § 924...............................................8

18 U.S.C. § 3231.............................................1

21 U.S.C. § 1291.............................................1

142 Cong. Rec. S10379-01 (Sept. 12, 1996)(Sen. Feinstein)......34

Fed.R.App.P. 4..............................................1

First Circuit Rule 27.0.....................................12

U.S. Const. amend. II.................20, 29, 42, 43 48, 50, 51

USSG § 2K2.1................................................12

U.S.S.G. § 3E1.1............................................12

**MISCELLANEOUS**

Arthur L. Kellerman, et al., Gun Ownership as a Risk Factor for
    Homicide in the Home,
    329 New Eng. J. Med. 1084, 1087 (1993).................47, 54

Federal Bureau of Investigation, Law Enforcement Officers Killed and
    Assaulted 2009 (2010).....................................47

v

**STATE STATUTES**

Mass.Gen.Laws ch. 265, § 13A................................9, 13

Tit. 17-A, M.R.S.A. § 207................................passim

**DOCKETED CASES**

United States v. Bryant, 1:11-cr-00021-JAW......................6

**JURISDICTION**

The district court had jurisdiction under 18 U.S.C. § 3231 because Appellant was charged with violating 18 U.S.C. § 922(g)(9) and 16 U.S.C. § 668(a). Judgment entered in the district court on February 14, 2012. Timely notice of appeal was filed the following day. <u>See</u> Fed.R.App.P. 4(b)(1)(A)(i). This Court has jurisdiction under 21 U.S.C. § 1291.

**ISSUES PRESENTED**

I.  WHETHER VOISINE'S CLAIM THAT THE DISTRICT COURT ERRED IN RULING THAT HIS MAINE ASSAULT CONVICTION QUALIFIED AS AN 18 U.S.C. § 922(g)(9) PREDICATE IS FORECLOSED BY THIS COURT'S <u>BOOKER</u> OPINION.
     (Appellant's Argument I)

II. WHETHER VOISINE'S CLAIM THAT THE DISTRICT COURT ERRED IN REJECTING HIS SECOND AMENDMENT CHALLENGE TO 18 U.S.C. § 922(g)(9) IS FORECLOSED BY THIS COURT'S <u>BOOKER</u> OPINION.
     (Appellant's Argument II)

**STATEMENT OF CASE**

Stephen Voisine appeals from a judgment entered in the United States District Court for the District of Maine (D.Add.1-6).[1] Voisine was charged in a two-count Information with: possessing a firearm following a conviction for a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9)(Count 1); and shooting and killing a bald eagle, in

_____

[1]Citations herein are as follows: matters on the district court's docket as (Dkt.[#]); Defendant-Appellant's Addendum as (D.Add.[pg#]); the parties' Joint Appendix as (JA.[pg#]) and Joint Sealed Appendix as (JSA.[pg#]); and Appellant's opening brief as (AOB.[pg#]).

1

violation of 16 U.S.C. § 668(a)(Count 2)(JA.10-11).  The district
court denied Voisine's motion to dismiss Count 1 on alleged
grounds that: (1) Count 1 failed to state a federal offense
because this Court's <u>United States v. Nason</u>, 269 F.3d 10
(1st Cir. 2001), opinion was no longer binding following <u>Johnson
v. United States</u>, 130 S.Ct. 1265 (2010), and <u>United States v.
Holloway</u>, 630 F.3d 252 (1st Cir. 2011); and (2) Section 922(g)(9)
violates the Second Amendment (D.Add.7-22).  After Voisine
conditionally pleaded guilty, reserving his right to appeal those
adverse rulings, the court sentenced him to concurrent terms of
12 months and 1 day on Count 1 and 9 months on Count 2
(JA.51, 56-85, 107).  This appeal followed (JA.6).

### STATEMENT OF FACTS

Following a 2004 conviction for domestic assault, Voisine,
in 2009, used a rifle illegally to shoot and kill a bald eagle
(JSA.7, JA.103).  Voisine waived indictment and was charged by
Information with one count of possession of a firearm following a
conviction for a misdemeanor crime of domestic violence (MCDV)
and one count of killing a bald eagle (Dkt##1-2).  He moved to
dismiss Count 1 on various statutory and constitutional grounds,
all of which the district court rejected by incorporating another
order issued in a separate case raising identical issues (JA.12-
33, D.Add.7-22).  Voisine's conditional guilty plea preserved his

right to challenge those rulings, but not the due process claims
he has raised for the first time on appeal (JA.51).

## Motion to Dismiss

Voisine moved to dismiss Count 1 of the Information on two
grounds (JA.12-27).  He claimed that: (1) Count 1 failed to state
a federal offense because after _Johnson_, 130 S.Ct. 1265, and
other cited authority, Maine's assault statute did not qualify as
a MCDV because it encompassed a reckless _mens rea_ and offensive
physical contact; and (2) Section 922(g)(9) violated the Second
Amendment because of a lack of a nexus between § 922(g)(9)'s
firearm prohibition and domestic firearm violence (JA.12-27).
Defense counsel noted that she raised the same claims in the
district court to no avail in _United States v. Booker_, _United
States v. Wyman_, and _United States v. Pettengill_, and that those
cases were then pending on appeal (JA.16).

The state charging document in Voisine's assault case
alleged that, in violation of 17-A M.R.S.A. § 207(1)(A) (ASSAULT
CLASS D):

> On or about April 12, 2003,...VOISINE did
> intentionally, knowingly or recklessly cause bodily
> injury or offensive physical contact to Tina M.
> Farwell.  The crime involved domestic violence.
>         (JA.33).

A transcript of the February 2, 2004 hearing in the Maine
District Court before the Hon. Bernard O'Mara, revealed that
Voisine was present and represented by counsel (JA.29-31).

Defense counsel told the state court that they were there "for plea, Your Honor. We have a negotiated disposition on that, as well" (JA.30). Defense counsel added, it's "[a] plea of guilty" and the state's attorney explained that the "agreed disposition" was for a $200 fine (JA.30). Asked if that was his understanding, Voisine replied, "Yes" (JA.30). After Voisine and his attorney conferred about when he could pay the fine, the court ordered it to be paid on April 12, 2004 (JA.30). Voisine acknowledged as much, conferred with counsel and the hearing ended (JA.30-31).

The Government's objection to the dismissal motion urged the court to follow its decisions issued in <u>Booker</u>, 570 F.Supp.2d 161 (D.Me. 2008), and <u>Wyman</u>, 667 F.Supp.2d 151 (D.Me. 2009)(JA.34-35). The Government argued that <u>Johnson</u>, 130 S.Ct. 1265, had no relevance here because: (1) the Supreme Court did not in that opinion address *mens rea*; (2) the Court defined "violent" as coupled with "felony" and emphasized that it was not defining common-law battery; (3) Congress, in defining MCDV, was seeking to define "misdemeanor" batteries that would have included common-law battery; and (4) the Court in <u>Johnson</u> explicitly rejected concerns that its holding would extend to § 922(g)(9)(JA.34-39). This Court's <u>Holloway</u>, 630 F.3d 252, opinion also addressed violent felonies and said nothing about § 922(g)(9)(JA.39-40).

4

The Government also filed the police report for Voisine's offense to show that § 922(g)(9) was constitutional as applied to him (JA.35, 43). According to the report, on April 12, 2003, Trooper Daniel Deschaine responded to the Voisine/Farwell residence after Farwell called 9-1-1 and then hung up (JA.43). Voisine allowed Deschaine to enter the residence and confirmed that Farwell was there (JA.43). Asked if he had any firearms in the house, Voisine pointed to some rifles in a gun rack (JA.43).

Farwell and her minor daughter subsequently went outside to speak with Deschaine while Voisine remained inside (JA.43). Farwell said she called 9-1-1 because Voisine--her boyfriend and cohabitant for seven years--"slapped her in the face across the cheek" (JA.43). She said "he was drunk and...this was not the first time it happens" [sic] (JA.43). Farwell "did not want [Voisine] to go to jail but...she had enough" (JA.43). Although Farwell said she wanted to leave, she, too, had been drinking and her daughter did not have a license (JA.43).

Farwell's daughter "said...she did not see [Voisine] hit her [mother] but she heard the slap and went in the kitchen and saw her mother lying on the floor" (JA.43). Trooper Deschaine "did not observe any marks or bruises" on Farwell's face, but told her he was going to arrest Voisine for assault (JA.43). Farwell said she did not want him to arrest Voisine and explained "that he is

not usually like this except when he drinks" (JA.43).  She added

that "she was tired of it though" (JA.43).

After Voisine was arrested and removed from the scene,

Deschaine returned about an hour and one-half later to find

Voisine's sister and brother in the residence with Farwell and

her daughter (JA.44).  Deschaine began to interview the daughter,

who said, "this was not the first time an incident like this

happens" [sic] (JA.44).  Farwell then approached and told her

daughter "not to tell [Deschaine] anything" (JA.44).  Honoring

her mother's request, the daughter wrote "refuse to cooperate" on

the form Deschaine provided for her to write a statement (JA.44).

Deschaine tried to interview Farwell, but she said, "I can't

remember anything" and wrote "refused to cooperate" on the form

provided for her written statement (JA.44).  Trooper Deschaine

left Farwell with literature on domestic violence, protection

orders and victim's rights (JA.44).

## District Court Order

The district court denied Voisine's motion to dismiss

Count 1 for the reasons stated in its order issued in United

States v. Bryant, 1:11-cr-00021-JAW (Dkt#26)(D.Add.7-8).  In that

case, the same defense attorney raised the identical issues and

the court found no meaningful distinction between Bryant and

Voisine (D.Add.8).

In rejecting Voisine's claim that Count 1 failed to state a federal offense, the court first traced this Court's holding in Nason, 269 F.3d 10 (D.Add.14-15). Notwithstanding Voisine's claims to the contrary, the district court stated that, there, this Court "rejected the same *mens rea* and level of force arguments [Voisine] raises" (D.Add.14). The Nason Court "reviewed the decisions of the Maine Supreme Judicial Court, which addressed 'offensive physical contact' under § 207,[2] and concluded that the phrase involves 'something less than bodily injury' but more than 'mere touching'" (D.Add.14-15).

This Court had "cited § 207's 'mens rea requirement' as the distinctions between offensive physical contact and mere touching" and "found that 'offensive physical contacts with another person's body categorically involve the use of physical force'" (D.Add.15). "Because knowing and reckless are expressly sufficient *mentes reae* for offensive physical contact under § 207, the First Circuit implicitly rejected the idea that intentionality is an essential element of 'use of physical force'" (D.Add.15). Nor was the district court persuaded by opinions from other circuits addressing varying requisite levels of force required because they did not address Voisine's intentionality argument (D.Add.15).

_____

[2]See 17-A M.R.S.A. § 207(1).

The court also rejected Voisine's claim that judicial interpretations of the Armed Career Criminal Act (ACCA)'s reference to "physical force" applied in defining that phrase for misdemeanor crimes of domestic violence under § 922(g)(9) (D.Add.16-17). Voisine's argument was--as it is on appeal-- premised on his assertion that <u>Johnson</u>, 130 S.Ct. 1265, overruled <u>Nason</u>, but the district court disagreed (D.Add.17, 19-20).[3] The court explained, "The <u>Johnson</u> Court's construction of 'physical force' in the ACCA context is narrower than [this Court's] construction of 'physical force' in the § 921(a)(33)(A) context" for a MCDV (D.Add.19). "In <u>Johnson</u>, the Supreme Court strongly indicated that the respective statutes harbor distinct meanings of 'physical force'" (D.Add.19). The Supreme Court "emphasized that its holding was limited to the definition of 'physical force' in the context of the ACCA" (D.Add.19).

After quoting the High Court's statement that "[w]e do not decide that the phrase has the same meaning in the context of defining a <u>misdemeanor</u> crime of domestic violence," the district court concluded that "[t]he Supreme Court...expressly declined to

---

[3]In <u>Johnson</u>, 130 S.Ct. at 1269-74, the Supreme Court held that a conviction under Florida's battery statute, which encompassed "<u>any</u> intentional physical contact, 'no matter how slight,'" did not qualify categorically as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i)(the ACCA's use-of-force clause).

endorse [Voisine's] view that the phrase 'physical force' has the same meaning in both contexts" (D.Add.19).  The court added:

> Moreover, the <u>Johnson</u> Court's emphasis of the word "misdemeanor" highlights the distinction between two separate statutory meanings of physical force: (1) physical force as an element of a violent felony[;] and (2) physical force as an element of a misdemeanor crime of domestic violence.  The two meanings are elements of distinct categories of crimes assigned separate levels of criminality.  It stands to reason that the degree of force Congress deemed necessary to constitute an element of a violent felony is greater than that necessary to constitute a misdemeanor.
> (D.Add.19-20).

In addition, "[t]he <u>Johnson</u> Court had elaborated on the variant meanings of 'physical force'" and noted that an element of common-law battery was the intentional application of unlawful force that "could be 'satisfied by even the slightest offensive touching'" and was typically punished as a misdemeanor (D.Add.20).  That common-law definition did not fit the ACCA, which--as the Supreme Court emphasized--defined a violent felony, not a misdemeanor (D.Add.20).

The district court also rejected Voisine's claim that <u>Holloway</u>, 630 F.3d 252, disturbed the holding in <u>Nason</u> (D.Add.20).[4]  In <u>Holloway</u>, the Court addressed whether a

_____

[4]In <u>Holloway</u>, 630 F.3d at 257-60, the Court held that, in light of <u>Johnson</u>, 130 S.Ct. 1265, courts could no longer rely solely upon a charging document's allegation that the defendant "did assault and beat" the victim as sufficient to qualify as an ACCA violent felony a conviction under Massachusetts' assault and battery statute, Mass.Gen.Laws ch. 265, § 13A.  This was because pursuant to Massachusetts' law, that boilerplate quoted language was used to allege harmful, offensive and reckless battery--the

9

Massachusetts simple-assault conviction qualified as an ACCA predicate (D.Add.21). Thus, as the district court stated, "Holloway is no more than the First Circuit's...allegiance to the Supreme Court's directive in Johnson" (D.Add.21). The Holloway Court neither addressed § 922(g)(9) nor attempted to define MCDV (D.Add.21). Accordingly, Nason's holding that all convictions under Maine's assault statute (17-A M.R.S.A. § 207) qualify as misdemeanor crimes of domestic violence for § 922(g)(9) purposes "remains the law in this Circuit" (D.Add.21). Count 2, therefore, stated a federal offense (D.Add.22).

On Voisine's Second Amendment challenge to § 922(g)(9), the court stood by its constitutional analyses in Booker, 570 F.Supp.2d 161 (D.Me. 2008), Wyman, 667 F.Supp.2d 151 (D.Me. 2009), and Pettengill, 682 F.Supp.2d 49 (D.Me. 2010)(D.Add.11). The district court did so without the benefit of this Court's opinion in United States v. Booker, 644 F.3d 12 (1st Cir. 2011), cert. denied, 132 S.Ct. 1538 (Feb. 21, 2012), which affirmed the district court's denial of Booker's and Wyman's nearly identical dismissal motions of § 922(g)(9) offenses on statutory and Second Amendment grounds.[5]

---

latter of which the Court ruled would not qualify as an ACCA violent felony. Id. at 257-60.

[5]Booker, 644 F.3d at 13, was a consolidated opinion addressing Booker's and Wyman's identical claims. Pettengill's appeal, docketed in CA No. 10-2024, remains pending.

Voisine entered a conditional guilty plea on Count 1, preserving his right to appeal the court's above-described order, and an unconditional guilty plea on Count 2 (JA.51, 62). A prosecution version of the offense explained that, on November 23, 2008, an anonymous caller reported that Voisine had shot an eagle (JA.53). A Maine game warden found the dead eagle with wounds consistent with a high-velocity rifle bullet in an area where Voisine had been working (JA.53).

Wardens interviewed witnesses, met Voisine and recovered a .30-06 caliber rifle belonging to him (JA.53). Voisine initially denied having shot the eagle; but during a December 2009 interview, he "admitted...he...shot the eagle" but thought it "was a big hawk" (JA.53). In 2004, Voisine "was convicted...of a misdemeanor crime of domestic violence" pursuant to 17-A M.R.S.A. § 207 and "[t]he victim of that offense was a person with whom [Voisine] had cohabitated as a spouse" (JA.54). Voisine told the court the facts described in the prosecution version were true and he had no disagreement with them (JA.77). The court accepted Voisine's guilty pleas (JA.56-82).

## Sentencing

The Revised Presentence Investigation Report (PSI) recited the above-referenced facts regarding Voisine's shooting of a bald eagle, prior domestic-assault conviction and recovery of the

firearm (JSA.3). Counts 1 and 2 were grouped and the Sentencing Guideline calculations for Count 1 (§ 922(g)(9)) applied because they produced a higher offense level than those for Count 2 (JSA.4). The base offense level was 14 under USSG § 2K2.1(a)(6) and a 2-level § 3E1.1 reduction, with no others, produced total offense level (TOL) 12 (JSA.4-5).

Voisine's criminal history spanned 28 years and included 14 convictions (JSA.5-8). A 1982 theft conviction scored zero criminal history category (CHC) points, as did Voisine's 1991 assault conviction for which he was sentenced to 30 days jail and 6 months' probation (JSA.5). Voisine had two 1996 convictions for entering his ex-wife's home "despite a protection order prohibiting him from having contact with her" (JSA.6). Those convictions, and another in 1997 for violation of a protection order, scored zero points (JSA.6). Voisine's 1997 OUI conviction, 1998 convictions for harassment by telephone and criminal mischief and another 1999 conviction for violation of a protection order each, also, scored zero points (JSA.6-7). This 1999 violation of a protection order entailed Voisine's contact with his daughter after consuming alcohol (JSA.7).

Voisine's above-described 2003 domestic assault against Farwell scored one CHC point (JSA.7). In 2005, Voisine sustained another domestic-assault conviction that also scored one point (JSA.8). In that incident, police responded to a call from

12

Voisine, who said Farwell "slapped him in the face and...took off...driving while intoxicated" (JSA.8).  Asked by the trooper why Farwell allegedly struck him, "Voisine declined to provide details and was focusing on the allegation that Ms. Farwell was driving under the influence" (JSA.8).  When located, Farwell said "she was on the phone and [Voisine] kept interrupting her conversation" (JSA.8).  She reported that Voisine "then threw the phone at her" (JSA.8).  The trooper reported that Voisine and Farwell were intoxicated (JSA.8).  The PSI stated that Voisine was arrested at that time, but did not indicate whether Farwell was also arrested (JSA.8).  About four days after this incident, Voisine violated conditions of his release on bail by having contact with Farwell, which produced another conviction and an additional CHC point (JSA.8).

On January 15, 2008, Voisine was convicted of possessing an unregistered deer, sentenced to 3 days incarceration and a two-year suspension of his hunting license (JSA.8).  Although this conviction scored zero points, Voisine's shooting and killing of the bald eagle on November 23, 2009 occurred while his hunting license was suspended (JSA.3, 8).  With a total of three CHC points, Voisine was in CHC II (JSA.8).  At TOL 12, his Guidelines' sentencing range was 12 to 18 months (JSA.11).

On February 13, 2012, Voisine appeared with counsel for sentencing and told the court he had no objections to the PSI

(JA.86-90). The court noted Voisine's "surprisingly lengthy criminal history" that included 15 convictions--almost all of which "involve his relationships with women and...alcohol" (JA.101-02). Voisine also, the court found, "has had a very difficult time obeying protective orders," having violated them "five times -- three with his ex-wife, one with Ms. Farwell and one with his daughter" (JA.102). The court considered that: (1) Voisine had been prohibited from firearms possession at least since his February 2004 domestic-assault conviction[6]; (2) he was convicted again of domestic assault in 2005; (3) Voisine's January 2008 conviction for illegal deer possession led to a two-year suspension of his hunting license; and (4) Voisine then in November 2009 shot and killed a juvenile bald eagle (JA.102-03).

In the court's view, "it is bad enough to shoot our national bird out of the sky, but even if he mistook the eagle for a hawk, it's illegal to shoot a hawk in Maine" (JA.103). Thus,

> [Voisine] shot an eagle, which is illegal to shoot, thinking it was a hawk, which is illegal to shoot, with a rifle that's illegal for him to possess during a time it was illegal for him to hunt at all....[Voisine's] criminal history reveals a pattern...in which he has been a law unto himself.
> (JA.103).

The court added, "apparently the laws that apply to everyone else don't apply to Mr. Voisine" (JA.106). The court sentenced

---

[6]The court cited the year as 2009, but clearly meant 2004 (JA.103).

Voisine to concurrent terms of 12 months and 1 day on Count 1 and
9 months on Count 2 (JA.107).

## SUMMARY OF ARGUMENT

Voisine's claim that the district court erred in concluding
that his Maine assault conviction qualified as a misdemeanor
crime of violence and, therefore, a predicate under 18 U.S.C.
§ 922(g)(9) is foreclosed by this Court's consolidated opinion in
<u>United States v. Booker v. Wyman</u>.  There, the Court affirmed that
a conviction under Maine's assault statute for assaulting a
qualifying domestic partner qualifies categorically as a
misdemeanor crime of domestic violence under
18 U.S.C. §§ 922(g)(9) and 921(a)(33) regardless of whether
Voisine recklessly or intentionally assaulted his victim by
inflicting offensive physical contact against her.  Nothing in
the Supreme Court's <u>Johnson</u> opinion altered the correctness of
that holding, as this Court ruled in <u>Booker</u>.  Thus, as it had
done in four preceding cases (Booker's and Wyman's among them),
the district court properly denied Voisine's motion to dismiss
Count 1 on that statutory ground.

Voisine's claim that the district court erred in rejecting
his Second Amendment challenge to § 922(g)(9) is also foreclosed
by <u>Booker</u>.  His contention that application of § 922(g)(9) to him
violates his Second Amendment right lacks merit.  Voisine's
repeated convictions for assault and domestic assault, five

convictions for violating protection orders and illegal use of
the firearm at issue here to kill a bald eagle while prohibited
on multiple grounds from possessing a firearm render him
demonstrably non-law abiding and irresponsible.  His purported
Second Amendment right to possess the firearm at issue here is,
therefore, outside that Amendment's core protections.  In any
event, as this Court recently held, § 922(g)(9) substantially
promotes an important government interest in preventing domestic
gun violence.  The Court should, therefore, find that Voisine's
conviction under § 922(g)(9) readily passes constitutional
muster.  Accordingly, the Court should summarily affirm.

**ARGUMENT**

I. **VOISINE'S CLAIM THAT THE DISTRICT COURT ERRED IN RULING THAT
   HIS MAINE ASSAULT CONVICTION QUALIFIED AS AN 18 U.S.C.
   § 922(g)(9) PREDICATE IS FORECLOSED BY THIS COURT'S <u>BOOKER</u>
   OPINION.**
   (Appellant's Argument I)

The Court should reject Voisine's claim that his conviction
under Maine's assault statute does not categorically qualify as a
misdemeanor crime of domestic violence (MCDV) under
18 U.S.C. §§ 922(g)(9) and 921(a)(33) as squarely foreclosed by
<u>United States v. Booker</u>, 644 F.3d 12, 13-22 (1st Cir. 2011),
<u>cert.</u> <u>denied</u>, 312 S.Ct. 1538 (2012).  Regardless of whether
Voisine pleaded guilty to intentionally, knowingly or recklessly
assaulting the woman with whom he was cohabitating by inflicting
offensive physical contact against her, the district court

correctly ruled that Voisine's assault conviction qualified as a § 922(g)(9) predicate. Indeed, the court did so without the benefit of this Court's <u>Booker</u> opinion, which forecloses Voisine's claims. Accordingly, the Court should summarily affirm. Loc.R. 27.0(c).[7]

## A.  Standard

Title 18, U.S.C., § 922(g)(9) makes it "unlawful for any person * * * who has been convicted in any court of a misdemeanor crime of domestic violence, to...possess in or affecting commerce, any firearm or ammunition...."  The term "misdemeanor crime of domestic violence" is defined as an offense that:

> **(i)** is a misdemeanor under Federal, State, or Tribal law; and
> **(ii)** has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse,... or...by a person who is cohabiting with or has cohabited with the victim as a spouse...or by a person similarly situated to a spouse....
> 18 U.S.C. § 921(a)(33)(A)(i)-(ii).

Under Maine's assault statute:

> A person is guilty of assault if * * * [t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person.

---

[7] First Circuit Local Rule 27.0(c) ("Summary Disposition") states in relevant part that:

> At any time, on such notice as the court may order, on motion of appellee or sua sponte, the court may dismiss the appeal or other request for relief or affirm and enforce the judgment or order below...if it shall clearly appear that no substantial question is presented.

Tit. 17-A, M.R.S.A. § 207.[8]

Interpreting the statutes at issue presents legal questions engendering *de novo* review. <u>United States v. Nason</u>, 269 F.3d 10, 15 (1st Cir. 2001). Statutory interpretation starts with the statute's language. <u>United States v. Hartsock</u>, 347 F.3d 1, 5-6 (1st Cir. 2003). The question whether Voisine's conviction under Maine's statute constitutes a MCDV under § 922(g)(9) is one of federal law. <u>Johnson v. United States</u>, 130 S.Ct. 1265, 1269 (2010). This Court is, however, bound by the Maine Law Court's interpretation and application of state law. <u>Id.</u>

Newly constituted panels typically "are bound by prior panel decisions closely on point." <u>United States v. Pires</u>, 642 F.3d 1, 9 (1st Cir. 2011). This doctrine "is subject to only a few narrowly cabined exceptions." <u>Id.</u> (citation and internal quotation marks omitted). The Court has explained that:

> [D]eparture from circuit precedent is warranted only where the previous holding is contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling), or in those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in

---

[8]Voisine's state charging document alleged in the disjunctive that he did intentionally, knowingly, or recklessly cause bodily injury or offensive physical contact to the victim (JA.33). <u>See also</u> <u>Booker</u>, 644 F.3d at 14-15.

light of fresh developments, would change its
collective mind.
     Id. (citations and internal quotation marks
     omitted).

     Voisine, as explained more fully below, offers no serious
claim that any of these exceptions to this *stare decisis* doctrine
apply here.  This Court's Booker opinion has not been
contradicted by any controlling authority.  There is no Supreme
Court opinion directly on point.  Nor has any legislative action
remotely suggested that Booker was wrongly decided or in need of
revisiting.  The purported intervening opinions upon which
Voisine relied in the district court and again in his opening
brief (AOB.10-11, 36-38) are Johnson, 130 S.Ct. 1265, and Heller,
554 U.S. 570.  Both of those opinions issued before Booker.
Neither one, therefore, triggers "the isthmian exceptions to the
law of the circuit rule." Pires, 642 F.3d at 10.

     Indeed, as explained below, appellants in Booker (and
Wyman), represented by Voisine's counsel as well, presented to
the Supreme Court many of the same Johnson- and Heller-based
arguments raised here in a petition for a writ of certiorari.
Had the Supreme Court been inclined to extend its logic in
Johnson beyond the Armed Career Criminal Act and into the
§ 922(g)(9) misdemeanor analysis as applied to Maine's assault
statute, the High Court would have granted Booker's and Wyman's
petition for review.  Absent what the Government maintains would
be unwarranted en banc review of Booker,  Voisine's statutory

and Second Amendment claims discussed below are, therefore, foreclosed by sound Circuit precedent.

The only opinion Voisine cites as having issued after Booker is United States v. Rehlander, 666 F.3d 45 (1st Cir. 2012)(AOB.12). There, the Court, id. at 47-51, reversed Circuit precedent and held that in light of Heller, an emergency involuntary commitment under Maine's *ex parte* hospitalization procedures no longer qualified as a commitment for purposes of 18 U.S.C. § 922(g)(4)'s firearm prohibition. That opinion was grounded solely in preserved due process claims. Rehlander, 642 F.3d at 47-51. Nothing in Rehlander offers any sound reason for overruling Booker and Nason, or for reaching a different result in Voisine's case. This is so for five reasons.

First, Voisine never raised due process claims in the district court; rather, he repeated claims that were raised in the district court's Booker, Wyman and related cases. Thus, Voisine waived the due process claims he now raises for the first time on appeal. See United States v. Valero, 676 F.3d 237, 246 n.2 (1st Cir. 2012); United States v. Salley, 651 F.3d 159, 161 n.2 (2011). Second, even if merely forfeited, Voisine cannot show plain error--nor has he argued as much. Third, nor does Voisine even cite Rehlander as a reason for overruling Booker on due process grounds. Fourth, the correctness of Nason and proper interpretation of Heller and Johnson in the context of

§ 922(g)(9) and Maine's assault statute were already decided post-<u>Heller</u> and post-<u>Johnson</u> in <u>Booker</u>.  Fifth, as explained in the due process section below, the Fifth Amendment constitutional concerns at issue in <u>Rehlander</u> are clearly not present in this case given congressionally-enacted procedures that must be satisfied for a misdemeanor conviction to qualify as a § 922(g)(9) predicate.  Voisine's conviction, therefore, categorically qualifies as a § 922(g)(9) predicate pursuant to <u>Nason</u> and <u>Booker</u>; and that should end the matter. <u>See</u> <u>Pires</u>, 642 F.3d at 10.  The Government will, however, discuss the substantive issues presented to highlight the correct rulings issued below in light of this Court's sound opinions in <u>Nason</u> and <u>Booker</u>.

**B.  Discussion**

The district court, consistent with its reasoning and rulings in four earlier decisions, but without the benefit of this Court's opinion affirming the lower court's decisions in <u>Booker</u> and <u>Wyman</u>, correctly ruled that any conviction under Maine's assault statute--regardless of whether the offensive physical conduct was intentional, knowing or reckless--qualifies categorically as a misdemeanor crime of domestic violence under 18 U.S.C. §§ 922(g)(9) and 921(a)(33).  This Court should hold that Voisine's contrary claims on appeal are clearly foreclosed by <u>Booker</u>, 644 F.3d 12.

21

In rejecting Voisine's claim that Count 1 failed to state a federal offense, the district court--without the benefit of Booker--properly started with this Circuit's then-to-date binding precedent: Nason, 269 F.3d 10. There, as the district court found, this Court "rejected the same *mens rea* and level of force arguments [Voisine] raises." See Booker, 644 F.3d at 17. As the district court explained, the Nason Court "reviewed the decisions of the Maine Supreme Judicial Court, which addressed 'offensive physical contact' under § 207, and concluded that the phrase involves 'something less than bodily injury' but more than 'mere touching.'" See Booker, 644 F.3d at 17 (discussing ruling in Nason as interpreting the plain text of § 922(g)(9) as being "broad enough to encompass the 'offensive physical contact' variant of Maine's assault statute").

This Court, the lower court noted, had in Nason "cited § 207's 'mens rea requirement' as one of the distinctions between offensive physical contact and mere touching" and "found that 'offensive physical contacts with another person's body categorically involve the use of physical force.'" See Nason, 269 F.3d at 19; Booker, 644 F.3d at 19 ("appellants argument for reconsidering Nason is...without merit").

In Nason, 269 F.3d at 16, the Court aptly explained that,

> Physical force is an elementary concept, readily understood. And from a policy perspective, proscribing gun possession by individuals convicted of misdemeanor crimes characterized by the application of physical

> force advances Congress's evident purpose--curbing the
> escalating societal problems associated with domestic
> violence.
> Id.

Considering the statute's plain language, as bolstered by other

statutory provisions and legislative history, the Nason Court

concluded that both the bodily-injury and offensive-physical-

contact variants of Maine's assault statute "necessarily involve

the use of physical force." Id. at 21.  As the Court explained,

this is so because, "'Violence' is essentially a subset of

physical force involving injury or risk of harm." Id. at 17.

Authority from Maine's Law Court narrowed the scope of

offensive physical contacts to include, "Knowingly intending body

contact," but to exclude "a mere touching of another." Id. at 19

(citations and alterations omitted).  Thus, under Maine law,

offensive physical contacts involving use of force were not

merely a subset of the universe of offensive physical contacts.

Id.  To the contrary, under Maine law, all offensive physical

contacts necessarily required use of physical force and,

therefore, "all convictions under [Maine's § 207] for assaults

upon persons in the requisite relationship status qualify as

misdemeanor crimes of domestic violence" under § 922(g)(9). Id.

at 21.  The Court recently, and correctly, affirmed as much in

Booker, 644 F.3d at 18-21.

While properly guided by Nason, the district court also was

correctly not persuaded by opinions from other circuits

addressing varying requisite levels of force because they did not

address Voisine's intentionality argument. That, too, was

consistent with this Court's analysis in Booker, 644 F.3d at 18-

21. The court also correctly rejected Voisine's claim that

judicial interpretations of the Armed Career Criminal Act

(ACCA)'s reference to "physical force" applied in defining that

phrase for misdemeanor crimes of domestic violence under

§ 922(g)(9). See Booker, 644 F.3d at 20-21. Voisine's argument

is, as the district court correctly noted, premised on his

misunderstanding that Johnson, 130 S.Ct. 1265, overruled Nason.

This Court explicitly rejected that claim in Booker, 644 F.3d

at 17-18. Appellants in Booker lodged the same argument in this

Court and in the Supreme Court to no avail. See Booker, 644 F.3d

at 17-18; Booker and Wyman v. United States, S.Ct. No. 11-6765,

10/03/2011 Pet. at pp.7-11; 01/12/2012 petitioners' reply at 2-3;

02/21/2012 order denying petitioners' petition for a writ of

certiorari, 132 S.Ct. 1538 (2012).

As the district court correctly explained, "The Johnson

Court's construction of 'physical force' in the ACCA context is

narrower than [this Court's] construction of 'physical force' in

the § 921(a)(33)(A) context" for MCDV. See Booker, 644 F.3d

at 17-18. In Johnson, 130 S.Ct. at 1273, as the district court

explained, the Supreme Court strongly indicated that the

respective statutes harbor distinct meanings of 'physical

force.'" <u>See</u> <u>Booker</u>, 644 F.3d at 18. The district court correctly explained that the Supreme Court "emphasized that its holding was limited to the definition of 'physical force' in the context of the ACCA." <u>See</u> <u>Johnson</u>, 130 S.Ct. at 1273; <u>Booker</u>, 644 F.3d at 18.

After quoting the <u>Johnson</u> Court's statement that "[w]e do not decide that the phrase has the same meaning in the context of defining a <u>misdemeanor</u> crime of domestic violence," 130 S.Ct. at 1273, the district court correctly concluded that "[t]he Supreme Court...expressly declined to endorse [Voisine's] view that the phrase 'physical force' has the same meaning in both contexts." Thus, as in <u>Booker</u>, 644 F.3d at 18, this Court should conclude that Voisine's argument for reconsidering <u>Nason</u>--let alone <u>Booker</u>--"is...without merit."

The district court aptly added that:

> Moreover, the <u>Johnson</u> court's emphasis of the word
> "misdemeanor" highlights the distinction between two
> separate statutory meanings of physical force:
> (1) physical force as an element of a violent felony[;]
> and (2) physical force as an element of a misdemeanor
> crime of domestic violence. The two meanings are
> elements of distinct categories of crimes assigned
> separate levels of criminality. It stands to reason
> that the degree of force Congress deemed necessary to
> constitute an element of a violent felony is greater
> than that necessary to constitute a misdemeanor.

This was consistent with the Court's <u>Booker</u> analysis, 644 F.3d at 20-21, in aptly distinguishing the ACCA (governing armed

career criminals) and § 922(g)(9)(governing misdemeanant domestic abusers).

In addition, as the district court stated, "[t]he <u>Johnson</u> Court elaborated on the variant meanings of 'physical force'" and noted that an element of common-law battery "was 'the intentional application of unlawful force'" that "could be 'satisfied by even the slightest offensive touching'" and was typically punished as a misdemeanor. <u>See</u> <u>Johnson</u>, 130 S.Ct. at 1271-72. That common-law definition did not fit the ACCA, which--as the Supreme Court emphasized--defined a violent felony, not a misdemeanor. <u>See</u> <u>id.</u>

In the § 922(g)(9) misdemeanor context, however, Congress's intent to encompass common-law batteries is evidenced by § 921(a)(33)'s inclusion of federal misdemeanor batteries in defining misdemeanor crime of domestic violence. Section 921(a)(33) includes domestic-violence crimes that are a "misdemeanor under Federal...law." Federal misdemeanor assault and battery, 18 U.S.C. § 113(a)(5), has long been understood to apply the common-law definition of battery. <u>See, e.g.</u>, <u>United States v. Delis</u>, 558 F.3d 177, 178 (2d Cir. 2009); <u>United States v. Guilbert</u>, 692 F.2d 1340, 1343 (11th Cir. 1982)(citing <u>United States v. Bell</u>, 505 F.2d 539, 540 (7th Cir. 1974)). Section 113(a)(5) is a generic assault statute with no *mens rea*. Congress could not have intended to exclude from § 921(a)(33)

this most relevant federal misdemeanor assault statute.
See Abuelhawa v. United States, 129 S.Ct. 2101, 2106 (2009).

Nor did Congress intend to exclude common-law batteries or state statutes including higher *mens rea* requirements such as intentional, knowing or reckless assaults. This Court has rejected an appellant's claim that his conviction under § 113(a)(5) could not stand absent proof of specific intent to assault. United States v. Bayes, 210 F.3d 64, 69 (1st Cir. 2000). The Court, id., looked to the common law and ruled that it was sufficient to show that the defendant "deliberately touched another in a patently offensive manner without justification."

Finally, the district court also correctly rejected Voisine's claim that Holloway, 630 F.3d 252, undermined Nason. In Holloway, the Court addressed whether a Massachusetts simple-assault conviction qualified as an ACCA predicate. Thus, as the district court explained, "Holloway is no more than the First Circuit's...allegiance to...Johnson." The Holloway Court neither addressed § 922(g)(9) nor attempted to define MCDV. That opinion, therefore, "does not inform [the] analysis here." See Booker, 644 F.3d at 20 n.10. Moreover, subsequent to Holloway, this Court has ruled that even some reckless simple assaults qualify categorically as ACCA violent felonies. See, e.g., United States v. Sumrall, 690 F.3d 42, 43 (1st Cir. 2012)(assault and battery of police officer (ABPO) under

Mass.Gen.Laws ch. 265, § 13D qualifies categorically as crime of violence under career-offender sentencing guideline's residual clause regardless of whether conviction was incurred under harmful, offensive or reckless branch of state statute); United States v. Jonas, 689 F.3d 83, 87-89 (1st Cir. 2012)(same ruling under similar statute for assault and battery of a correctional officer); United States v. Gruppee, 682 F.3d 143, 148-49 (1st Cir. 2012)(same as Sumrall and rejecting appellant's argument that panel could revisit Dancy); United States v. Dancy, 640 F.3d 455, 468-70 (1st Cir. 2011)(ABPO committed with reckless conduct qualifies as ACCA predicate).

In any event, here, the district court correctly ruled that Nason's holding that all convictions under Maine's assault statute (17-A M.R.S.A. § 207) qualify as misdemeanor crimes of domestic violence for § 922(g)(9) purposes "remains the law in this Circuit." This Court subsequently so held in Booker, 644 F.3d at 18, 21. The Supreme Court, after full briefing on a petition for a writ of certiorari, apparently found no reason to revisit this Court's sound holding and reasoning in Booker. See Booker and Wyman, S.Ct. No. 11-6765, cert. denied, 132 S.Ct. 1538. Nor has Voisine demonstrated any reason to do so here. See Pires, 642 F.3d at 10. Count 2, therefore, stated a federal offense and Voisine's dismissal motion was properly denied.

**C.   Voisine's Claims**

**Statutory Interpretation**

Voisine claims that the district court based its decision on Booker, 644 F.3d 12 (AOB.10).  The lower court's decision in Bryant (D.Add.7-22) and denial of Voisine's dismissal motion pre-dated Booker.  Those district court decisions were, however, entirely consistent with Booker, 644 F.3d 12, which forecloses Voisine's claims on appeal.

Seizing on one sentence in the Booker, 644 F.3d at 25, opinion's discussion of appellants' Second Amendment claim, Voisine contends that 18 U.S.C. § 922(g)(9) can only be applied to those "who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship" (AOB.10-11).  That quote is from this Court's prefatory statement to its discussion of the continuing constitutionality of § 922(g)(9) in the wake of District of Columbia v. Heller, 554 U.S. 570 (2008).  The Court stated, "Section 922(g)(9) finds its animating interest in keeping guns away from people who have been proven to engage in violence...." Booker, 644 F.3d at 25.

Voisine ignores that the Court in its earlier discussion also recognized that Heller informs courts that certain statutory categorical firearm prohibitions are permissible without "requiring that restrictions on the [Second Amendment] right be

imposed only on an individualized, case-by-case basis." Booker,
644 F.3d at 23 (citing United States v. Skoien, 614 F.3d 638, 640
(7th Cir. 2010)(en banc)).  Voisine's twist on the Court's use of
the word "proven" is misplaced.  Contrary to Voisine's suggestion
(AOB.11, 29-31, 35-36), the fact of a "conviction" for a
misdemeanor crime of domestic violence is sufficient "proof" to
bring a defendant--Voisine included--within the animating
interests of § 922(g)(9).  This Court explained shortly after its
prefatory use of the word "proven" that, "Not surprisingly,
research has found that the presence of a gun in the home of a
convicted domestic abuser is strongly and independently
associated with an increased risk of homicide." Booker, 644 F.3d
at 26.

Voisine argues at length that Johnson, 130 S.Ct. 1265,
overruled Nason, 269 F.3d 10 (AOB.11-24).  For all of the reasons
stated above, this claim clearly lacks merit. See Booker,
644 F.3d at 18. Contrary to Voisine's claim (AOB.12-15), this
Court did revisit Nason in light of Johnson; it affirmed the
former and found that Johnson's opinion regarding armed career
criminals and the ACCA infused no ambiguity in the meaning of
"misdemeanor crime of domestic violence" for purposes of
§ 922(g)(9). See Booker, 644 F.3d at 18, 21-22.

Moreover, notwithstanding Voisine's emphasis on "the merest
touching," "no matter how slight" that the Court in Johnson found

insufficient to qualify as a violent felony for ACCA purposes (AOB.14-15, 18-21, 27), the Maine assault statute as interpreted by Maine's highest court does not encompass slight touchings. The Maine Legislature removed the "however small" or slight common-law language in 1975 and the statute is more narrowly applied. <u>See, e.g.</u>, <u>State v. Thayer</u>, 281 A.2d 315, 316-17 & n.1 (Me.1971); <u>State v. Bowden</u>, 342 A.2d 281, 286 (Me.1975); <u>State v. Carmichael</u>, 405 A.2d 732, 735 (Me.1979); compare tit. 17 M.R.S.A. § 207, with 17-A M.R.S.A. § 207(1).  As <u>Nason</u>, 269 F.3d at 19, and even the <u>United States v. Belless</u>, 338 F.3d 1063, 1068 (9th Cir. 2003), opinion upon which Voisine relies (AOB.29), recognized, Maine's statute is not so broadly applied.  It not only contains a minimum reckless *mens rea*, but "offensive physical contact" has been repeatedly defined to require "knowingly intending bodily contact or unlawful touching." <u>State v. Pozzuoli</u>, 693 A.2d 745, 747 (Me.1997); <u>State v. Griffin</u>, 459 A.2d 1086, 1091 (Me.1983).  Its application is also limited by a reasonable-person standard. <u>Nason</u>, 269 F.3d at 19.  Thus, Voisine's attempt to use "exotic exemplars," <u>id.</u> at 20 & n.5, and "legal imagination," <u>James v. United States</u>, 550 U.S. 192, 208 (2007), rather than "the ordinary case," to render his conviction invalid is misplaced. <u>See</u> <u>id.</u>; <u>United States v. Glover</u>, 558 F.3d 71, 82 (1st Cir. 2009).

Voisine contends that using "the _specialized_ meaning of

'force'" that defines misdemeanor battery to define the use of

force required by § 922(g)(9) is erroneous after _Johnson_ (AOB.15-

20). Not so, as explained above. The _Johnson_ Court stated that,

for the ACCA:

> It is unlikely that Congress would select as a term of
> art defining "violent felony" a phrase that the common
> law gave peculiar meaning only in its definition of a
> misdemeanor.
>      _Johnson_, 130 S.Ct. at 1271-72.

In enacting §§ 922(g)(9) and 921(a)(33), however, Congress was

seeking to define the crime of domestic battery--specifically and

exclusively "misdemeanor" batteries.[9] Thus, it makes sense that

Congress would have given "physical force" in the context of

defining only misdemeanor crimes of domestic violence its common-

law, or "specialized," meaning. _United States v. Hays_,

526 F.3d 674, 683 (10th Cir. 2008)(Ebel, J., dissenting).

This Court has already held in _Booker_,644 F.3d at 17-18,

consistent with the teachings of _Johnson_, 130 S.Ct. at 1271-73,

that the definition applied to violent or aggravated felonies in

one statute does not govern the definition of misdemeanor crimes

of domestic violence in a § 922(g)(9) prosecution.

_Cf_. _Environmental Defense v. Duke Energy Corp._, 549 U.S. 561, 574

_____

[9]There was no need to distinguish between violent felonious
conduct and misdemeanor crimes of violence because all convicted
felons were already prohibited from firearm possession pursuant
to 18 U.S.C. § 922(g)(1).

(2007); <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993).

Accordingly, it is entirely appropriate for this Court to

consider common law to discern congressional intent when terms

such as "violent" or "use of force," as coupled with

"misdemeanor," are not otherwise defined. <u>See, e.g.</u>, <u>United</u>

<u>States v. Bayes</u>, 210 F.3d 64, 68-69 (1st Cir. 2000); <u>United</u>

<u>States v. Frizzi</u>, 491 F.2d 1231, 1231-32 (1st Cir. 1974). Thus,

here, unlike in <u>Johnson</u>, 130 S.Ct. at 1274, there is no "comical

misfit" with the defined term MCDV and Congress's importation of

a broader, common-law-oriented definition of physical force as

applied to <u>misdemeanor</u> assaults or batteries. This Court in

<u>Booker</u>, 644 F.3d at 18, so ruled.

**Legislative History**

Nor does the legislative history support Voisine's claims

(AOB.11, 21-24). As this Court recently repeated, § 922(g)(9)

(commonly known as "The Lautenberg Amendment") was enacted in

1996 as part of the Omnibus Consolidated Appropriations Act

of 1997. <u>Booker</u>, 644 F.3d at 15. In enacting that amendment to

the Gun Control Act of 1968:

> Congress recognized a problem of significant national
> concern in the combination of domestic violence and
> guns, and saw the existing law as insufficiently
> protective of its victims. Previously, federal law
> prohibited possession of firearms only for individuals
> who had been convicted of a felony. Congress concluded
> that the focus on felony convictions left guns in the
> hands of a large number of domestic abusers who were
> convicted of lesser crimes, often due to some
> combination of plea bargaining, outdated or ineffective

laws that treat domestic violence as a lesser offense,
and lack of cooperation from victims.  Through the
Lautenberg Amendment, Congress sought to close this
dangerous loophole, and establish a policy of zero
tolerance when it comes to guns and domestic violence.
    Id. at 16 (internal citations, quotation marks and
    alterations omitted). See also id. at 24 n.16.

Legislative history shows that Congress adopted a statute to

narrow the definition of MCDV to exclude, i.e., cutting up credit

cards, but to include all other misdemeanor assaults or batteries

that included use of force. See Nason, 269 F.3d at 17.  As one

senator explained:

    Every year, an estimated 2 million women are victimized
    by domestic violence.  Of these..., nearly 6,000 die.
    And 70 percent of the time, the perpetrators of the
    deadly violence use a gun. * * * This amendment looks
    to the type of crime, rather than the classification of
    the conviction.  Anyone convicted of a domestic
    violence offense would be prohibited from possessing a
    firearm.
        142 Cong.Rec. S10379-01 (Sept. 12, 1996)(Sen.
        Feinstein)(emphasis added).

Contrary to Voisine's suggestions (AOB.11, 23-24), if

Congress intended to require the Government to prove the

defendant's underlying conduct was akin to felony

assault--something bordering on the impossible in a strict

categorical, elemental analysis of predicates where courts are

precluded from considering actual conduct--Congress could have

enacted such a limitation.  To the contrary, Congress included

federal misdemeanor assault, which incorporated

18 U.S.C. § 113(a)(5)'s simple assault that had long been

interpreted as constituting a common-law battery entailing less than felonious conduct.

Voisine's speculation that he "may have slapped" Farwell or "she may have slapped him" (AOB.24) ignores that he pleaded guilty and was convicted of assaulting Farwell and it is that conviction that renders him prohibited from firearms possession under § 922(g)(9) as properly interpreted by this Court in <u>Booker</u> and <u>Nason</u>.  Whether he intentionally slapped Ms. Farwell so hard that he caused her to fall to the floor--as the police report indicated--or did so by reckless offensive physical contact, he is properly charged and convicted under § 922(g)(9) pursuant to <u>Booker</u>.

**Due Process**

Voisine's final complaints are lodged as due process violations (AOB.25-35).  As discussed above, Voisine did not raise any due process claims in the district court.  He, therefore, has waived these claims.  <u>See</u> <u>Salley</u>, 651 F.3d at 161 n.2.  Even if not waived and merely forfeited, review would be for plain error only.  To prevail, Voisine "bears the heavy burden of showing (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Matos</u>, 611 F.3d 31, 35

(1st Cir. 2010). He cannot satisfy this burden because there was no error, plain or otherwise, in the district court's rulings.

Voisine's claim of error under the fair-warning doctrine (AOB.26-29) is misplaced. "[F]air warning" is assessed as of "the time of the charged conduct." See United States v. Lanier, 520 U.S. 259, 267 (1997). This Court's Nason opinion issued in 2001 and made it abundantly clear that a conviction under Maine's simple assault statute for an offense involving offensive physical contact categorically qualified as a § 922(g)(9) predicate. See Lanier, 520 U.S. at 269 (Supreme Court has "referred to decisions of the Courts of Appeals when enquiring whether a right was clearly established")(citation and internal quotation marks omitted); United States v. Hussein, 351 F.3d 9, 12 (1st Cir. 2003).

Voisine sustained his Maine conviction for an assault that was--as his complaint alleged--"a crime [that] involved domestic violence" in 2004. Cf. Hussein, 351 F.3d at 13. His illegal possession of the rifle he used to shoot and kill a bald eagle, which led to this case, occurred in October 2009. Voisine's reliance on the Supreme Court's March 2010 Johnson opinion, therefore, misses the mark. In any event, Johnson, 130 S.Ct. at 1273, made clear that its ruling regarding the degree of force required for an ACCA violent felony had no bearing on what degree of force suffices for a "misdemeanor crime of domestic violence."

Sections 922(g)(9) and 921(a)(33) are not ambiguous.

See <u>Nason</u>, 269 F.3d at 16; <u>Booker</u>, 644 F.3d at 21-22. Any person "of common intelligence" would know--here by the plain language of Voisine's charging document identifying the crime as one "involv[ing] domestic violence"--that by pleading guilty to a misdemeanor assault against a woman with whom he had been cohabitating as a spouse, he was pleading to a misdemeanor crime of domestic violence. This Court's opinion in <u>Nason</u> and the plain text of §§ 922(g)(9) and 921(a)(33) "made it reasonably clear at the...time [of Voisine's firearm possession] that [his] conduct was criminal." <u>See, e.g.</u>, <u>Lanier</u> 520 U.S. at 267; <u>United States v. Councilman</u>, 418 F.3d 67, 83-84 (1st Cir. 2005); <u>United States v. Arcadipane</u>, 41 F.3d 1, 5 (1st Cir.1994).

This Court should reject Voisine's suggestion that <u>Booker</u>, 644 F.3d 12, and <u>Nason</u>, 269 F.3d 10, are outliers contrary to opinions "by most federal circuit courts" (AOB.24-29). As the <u>Nason</u> Court, 269 F.3d at 21, explained, its reasoning and holding were supported by the Eighth Circuit's opinion in <u>United States v. Smith</u>, 171 F.3d 617, 620-21 & n.2 (8th Cir. 1999). <u>See</u> <u>also</u> <u>United States v. Griffith</u>, 455 F.3d 1339, 1341-43 (11th Cir. 2006). Voisine's statutory interpretation requires writing into § 921(a)(33) not only "violent," but also "intentionally violent" and a degree of violence used to define conduct for felonies rendering persons armed career criminals. This Court is "not

licensed to practice statutory remodeling," <u>Griffith</u>,
455 F.3d at 1345; <u>Logan v. United States</u>, 552 U.S. 23, 37 (2007),
and properly refused to do so in <u>Booker</u>, 644 F.3d at 18-22.[10]

Voisine repeats, in support of his due process claim, his
emphasis on this Court's statement that § 922(g)(9)'s "animating
interest" was "keeping guns away from people who have been <u>proven</u>
to engage in violence," to argue that he does not fit within that
population because neither the state nor federal governments
"proved" his offense entailed actual "violence" (AOB.29-34).
This due process claim fails for at least three reasons.

First, neither § 922(g)(9) nor his cited authority require
proof that a defendant's "actual" underlying conduct involved
violence.  Indeed, even establishing that an ACCA predicate
qualifies as a violent felony does not require judicial
proceedings to prove the defendant's actual conduct involved
violence. See <u>James</u>, 550 U.S. at 208.  Here, as <u>Nason</u>, 269 F.3d
at 19-21, explained, Voisine's conviction under Maine law

---

[10]Voisine is misplaced in his reliance on <u>United States v.
Hays</u>, 526 F.3d 674 (10th Cir. 2008); <u>United States v. Belless</u>,
338 F.3d 1063 (9th Cir. 2003; and <u>Flores v. Ashcroft</u>, 350 F.3d
666 (7th Cir. 2003).  These cases address statutes substantially
different from the statute at issue here. <u>See, e.g.</u>, <u>Belless</u>,
330 F.3d at 1060 (noting that the Wyoming statute being construed
sweeps more broadly than Maine's § 207); <u>Hays</u>, 526 F.3d at 679
(construing Wyoming statute); <u>Flores</u>, 350 F.3d at 669 (construing
a simple-battery statute that, unlike Maine's § 207, includes
"any contact, however slight"). <u>See also</u> <u>United States v.
Castleman</u>, 2012 WL 4096234, at *2 (6th Cir. Sept. 19,
2012)(construing statute that would permit conviction for an
assault "not involving physical contact").

necessarily involved use of physical force.  Violence is a subset

of such use of force.  Id. at 17.  The degree of violence for a

misdemeanor crime of domestic abuse may logically be

substantially less than that required to establish that an armed

career criminal's violent felony qualifies under the ACCA.  It

does not follow, however, that this lower threshold of violence

does not encompass a sufficient degree of use of physical force

so as to qualify as a § 922(g)(9) predicate a solid conviction

under Maine law.

Second, Voisine ignores that, unlike for, i.e., involuntary

commitments at issue in Rehlander, 666 F.3d 45, Congress

explicitly addressed due process concerns regarding what type of

predicate misdemeanor proceedings shall qualify as a MCDV for

purposes of § 922(g)(9).  Congress enacted those due process

protections in 18 U.S.C. § 921(a)(33).  Persons are not

"convicted" of a misdemeanor crime of domestic violence unless

they were "represented by counsel in the case, or knowingly and

intelligently waived the right to counsel...." 18 U.S.C.

§ 921(a)(33)(B)(i)(I).  Persons are also not "convicted" of a

MCDV unless: (1) their misdemeanor case was prosecuted in a

jurisdiction in which the person was entitled to a jury trial for

that offense; and (2) either the case was tried before a jury, or

the person "knowingly and intelligently waived the right to a

trial by jury, by guilty plea or otherwise." Id. at

§ 921(a)(33)(B)(i)(II).  Voisine has never claimed--nor can he--
that he was not afforded all of these congressionally prescribed
due process protections in sustaining his Maine assault
conviction.

Voisine's assault conviction--indeed assault convictions--
were full-scale convictions.  He was represented by counsel.  <u>Cf.</u>
<u>Rehlander</u>, 666 F.3d at 48.  Assuming the unchallenged regularity
of state court proceedings, <u>see</u> <u>United States v. Foley</u>, 871 F.2d
235, 240 (1st Cir. 1989), Voisine had opportunities to testify,
cross-examine witnesses and present his case in an adjudicatory
hearing.  <u>Cf.</u> <u>Rehlander</u>, 666 F.3d at 48.  Voisine's conviction by
necessity rested upon an independent judicial finding that he was
guilty of assaulting his domestic partner.  <u>Cf.</u> <u>id.</u>; <u>see</u> <u>Sumrall</u>,
690 F.3d at 44.  He was convicted by proof beyond a reasonable
doubt.  <u>See</u> <u>State v. Snow</u>, 438 A.2d 485, 486-88 (Me. 1981).
Voisine, thus, no less than convicted felons, fits easily among
those whom the <u>Heller</u> Court recognized as properly disqualified
from firearms possession because he received all of the "ordinary
due process" the Supreme "Court has adopted." <u>Cf.</u> <u>Rehlander</u>,
666 F.3d at 48.

Moreover, persons "convicted" of misdemeanor assault have
additional judicial process to challenge the factual and legal
bases for their convictions by appealing to higher courts.  <u>See,</u>
<u>e.g.</u>, <u>State v. Keegan</u>, 296 A.2d 483, 485-86 (Me. 1972)(describing

multi-tiered appeal process for misdemeanor crimes). Thus, the
risk of a "mistaken" conviction qualifying as a "conviction"
under § 922(g)(9) is substantially minimized. Cf. Rehlander,
666 F.3d at 50. Voisine's suggestion (AOB.33-34) that, because
he pleaded guilty rather than proceeded to a contested trial, his
conviction does not qualify as a § 922(g)(9) predicate would
render those convicted of violent felonies outside the scope of
18 U.S.C. § 922(g)(1) and the ACCA if they merely pleaded guilty.
Neither due process nor governing authority require such absurd
results.

Voisine's references to collateral estoppel and Pattershall
v. Jenness, 485 A.2d 980 (Me.1984)(AOB.34-35), are also
misplaced. Whether Maine courts allow collateral use of prior
convictions for various purposes is immaterial here. See Johnson,
130 S.Ct. at 1269. Moreover, Pattershall, id. at 982-83,
highlights that persons convicted of misdemeanor assault in Maine
have a right to counsel and rights to multiple trials and
appellate review--consistent with Congress's prescribed due
process in defining "misdemeanor crime of domestic violence" in
18 U.S.C. § 921(a)(33)(B)(i). Congress, as Booker, 644 F.3d 12,
correctly ruled, can rely upon a procedurally-valid, state,
domestic-assault conviction to prohibit firearms possession.
There was, therefore, no error in the district court's denial of

Voisine's dismissal motion, which this Court should summarily affirm.

## II. VOISINE'S CLAIM THAT THE DISTRICT COURT ERRED IN REJECTING HIS SECOND AMENDMENT CHALLENGE TO 18 U.S.C. § 922(g)(9) IS FORECLOSED BY THIS COURT'S <u>BOOKER</u> OPINION.
(Appellant's Argument II)

Contrary to Voisine's claims, prohibiting firearm possession by non-law abiding persons––particularly those convicted of violent crimes––fits among the longstanding gun-possession prohibitions that, consistent with <u>Heller</u>, remain valid.  As this Court recently concluded, "it is plain that § 922(g)(9) substantially promotes an important government interest in preventing domestic gun violence." <u>Booker</u>, 644 F.3d at 26. Accordingly, the district court properly denied Voisine's motion to dismiss on Second Amendment grounds as well; and this Court should affirm summarily.

## A.    Standard

The Second Amendment provides that, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, Shall not be infringed." U.S. Const. amend. II.  Constitutional challenges to a statute are reviewed de novo. <u>United States v. Rene E.</u>, 583 F.3d 8, 11 (1st Cir. 2009).

## B.    Discussion

The district court appropriately stood by its sound constitutional analyses in Booker, 570 F.Supp.2d 161 (D.Me. 2008), United States v. Wyman, 667 F.Supp.2d 151 (D.Me. 2009), and United States v. Pettengill, 682 F.Supp.2d 49 (D.Me. 2010), in rejecting Voisine's Second Amendment challenge to 18 U.S.C. § 922(g)(9). This Court's subsequent Booker, 644 F.3d 12, opinion affirmed the district court's denial of Booker's and Wyman's very similar Second Amendment-based motions to dismiss § 922(g)(9) charges based on domestic-assault convictions under the same Maine statute at issue here.[11]

In Booker, the Court stated that, "because it is facial in nature, appellants' challenge to the constitutionality of § 922(g)(9) must fail if we determine that the statute "has a plainly legitimate sweep." 644 F.3d at 22 (citation and internal quotation marks omitted). The Court discussed the Heller Court's announcement of "a significant new understanding of the Second Amendment" and the "narrowly crafted...actual holding" of Heller

_____

[11]Notwithstanding Voisine's attempt to distinguish the nature of Booker's and Wyman's constitutional challenge as facial, rather than as applied, they are similar in substance. Compare Booker 04/12/2010 opening brief at p.41 and 10/27/2010 reply brief at 13-14, 17, 22-23 (CA No. 09-1810); Wyman 04/12/2010 opening brief at pp.39-40 and reply brief at pp.13-14, 20-22 (CA No. 09-2302); Voisine AOB.36-41. See also United States v. Chester, 847 F.Supp.2d 902 (S.D.W.V. 2012). Indeed, in the district court, Voisine characterized his claims as identical to those raised in Booker and Wyman. Accordingly, notwithstanding nomenclature, Voisine's claims are foreclosed by Booker, 644 F.3d at 22-27.

43

that addressed the District of Columbia's ban on hand-gun possession in the home. See Booker, 644 F.3d at 22.

As the Supreme Court had stated:

> Like most rights, the right secured by the Second Amendment is not unlimited....[T]he right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose....Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on long-standing prohibitions on the possession of firearms by felons and the mentally ill,....
> Booker, 644 F.3d at 22-23 (quoting Heller, 554 U.S. at 626-27).

These "presumptively lawful regulatory measures" were "only examples," not an exhaustive list. Id. at 23 (quoting Heller, 554 U.S. at 627 n.26).

Although this quoted portion of Heller did not answer the question whether § 922(g)(9) is constitutional, this Court agreed with the Seventh Circuit that some "important points can be gleaned from this passage." Id. The first was that "it tells us that statutory prohibitions on the possession of weapons by some persons are proper." Id. (citation and internal quotation marks omitted). "That is, the Second Amendment permits categorical regulation of gun possession by classes of persons--e.g., felons and the mentally ill--rather than requiring that restrictions on the right be imposed only on an individualized, case-by-case basis." Id. (internal citations omitted).

The second point gleaned was "that the legislative role did not end in 1791" because, as the Court explained, the statutory firearm prohibition for felons "is firmly rooted in the twentieth century and bears little resemblance to laws in effect at the time the Second Amendment was ratified." Id. at 24 & n.13. Thus, regulatory firearm "exclusions need not mirror limits that were on the books in 1791." Id. at 24.

The Court aptly explained that:

> Indeed, § 922(g)(9) fits comfortably among the categories of regulations that Heller suggested would be "presumptively lawful." Section 922(g)(9) is, historically and practically, a corollary outgrowth of the federal felon disqualification statute. Moreover, in covering only those with a record of violent crime, § 922(g)(9) is arguably more consistent with the historical regulation of firearms than § 922(g)(1), which extends to violent and nonviolent offenders alike.
> Id. at 24-25 (external and internal citations omitted).

Thus, it was "'difficult to condemn § 922(g)(9)....'" Id. (quoting Skoien, 614 F.3d at 641).

The Court added that, "While the categorical regulation of gun possession by domestic violence misdemeanants thus appears consistent with Heller's reference to certain presumptively lawful regulatory measures," "a categorical ban on gun ownership...must be supported by some form of strong showing, necessitating a substantial relationship between the restriction and an important governmental objective." Id. at 25 (citation and internal quotation marks omitted). Moving to means-end scrutiny,

45

the Court explained that § 922(g)(9)'s "animating interest [was] in keeping guns away from people who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship...." Id. The Court found that "[t]his interest, which appears plainly on the face of the statute and is borne out by its legislative history, is undeniably important." Id. (internal citations omitted). The statute's text and legislative history made that "undeniably important" interest readily clear. Id.; see also United States v. Staten, 666 F.3d 154, 161 (4th Cir. 2011); United States v. Hayes, 555 U.S. 415, 427 (2009) ("Firearms and domestic strife are a potentially deadly combination nationwide.")

As the Court found:

> Nor can there be any question that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home. Statistics bear out the Supreme Court's observation that firearms and domestic strife are a potentially deadly combination nationwide.
> Booker, 644 F.3d at 25 (citation and internal quotation marks and alterations omitted). See also Staten, 666 F.3d at 161.

Statistics the Court cited revealed that:

> [N]early 52,000 individuals were murdered by a domestic intimate between 1976 and 1996, and the perpetrator used a firearm in roughly 65% of the murders (33,500). The risk of fatality from an assault involving a firearm is far greater than that associated with other weapons. See Skoien, 614 F.3d at 642-43 (discussing studies finding that an assault with a gun is five times more deadly than an assault with a knife, and that domestic assaults with guns are twelve times as

46

likely to result in fatality than assaults with knives
or fists).

> Booker, 644 F.3d at 25-26. See also Staten, 666 F.3d
> at 163-64.

The Court, therefore, found it not surprising that "research has found that 'the presence of a gun in the home of a convicted domestic abuser is strongly and independently associated with an increased risk of homicide.'" Booker, 644 F.3d at 26 (citing Skoien, 614 F.3d at 643-44 (quoting Arthur L. Kellerman, et al., Gun Ownership as a Risk Factor for Homicide in the Home, 329 New Eng. J. Med. 1084, 1087 (1993))). Therefore, "It follows that removing guns from the home will materially alleviate the danger of intimate homicide by convicted abusers." Booker, 644 F.3d at 26.

The Court also noted, as the Seventh Circuit had, that "the fact that the recidivism rate for domestic violence is high suggests that there are 'substantial benefits in keeping the most deadly weapons out of the hands of domestic abusers.'" Id. (quoting Skoien, 614 F.3d at 644, which had surveyed studies estimating that the overall domestic violence recidivism rate was between 35% and 80%). Another study highlighted that "the risk of homicide extends beyond those in an intimate relationship with the abuser." Id. at 26 n.18. "Between 2000 and 2009, close to 8% of non-accidental law enforcement officer fatalities in the line of duty were related to domestic disturbance calls." Id. (citing

Federal Bureau of Investigation, <u>Law Enforcement Officers Killed and Assaulted</u> 2009 Table 19 (2010)).

After consideration of all of those factors, the Court concluded that "it is plain that § 922(g)(9) substantially promotes an important government interest in preventing domestic gun violence." <u>Booker</u>, 644 F.3d at 26.  Accordingly, the law is clearly not facially invalid nor was it unconstitutionally applied to Voisine, who possessed the gun at issue after multiple assault convictions and used it illegally to shoot and kill a bald eagle outside his home.

In <u>Booker</u>, 644 F.3d at 25 n.17, the Court declined to address the so-called scope question--meaning whether appellants fell within the "'core' Second Amendment right vindicated in <u>Heller</u>...."  The Court noted, however, "that <u>Heller</u> stated that the Second Amendment 'elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" <u>Booker</u>, 644 F.3d at 25 n.17 (quoting <u>Heller</u>, 554 U.S. at 635). <u>See also</u> <u>Hightower v. City of Boston</u>, 2012 WL 3734352, at *7-*9 (1st Cir. Aug. 30, 2012)(collecting cases and ruling that Hightower's as-applied Second Amendment challenge failed because carrying a concealed weapon, even for self-defense, outside the home was beyond the Amendment's core).

Voisine was not, at the time of his gun possession, law-abiding.  By then, his 14 criminal convictions spanned 28 years

and included three assaults and five violations of protection orders. As the district court stated, most of Voisine's convictions "involve his relationships with women" and he also "has...a very difficult time obeying protective orders." That criminal record and associated inherent risk factors put Voisine squarely within the interests that motivated enactment of § 922(g)(9) and renders application of the firearm prohibition to him entirely constitutional. See United States v. Mahin, 668 F.3d 119, 126 (4th Cir. 2012).

Nor was Voisine responsible. After the state put him in jail for three days and suspended his hunting license for two years in 2008, in November 2009, outside of hunting season, without a hunting license and following a domestic-violence conviction, Voisine used the firearm at issue here to shoot and kill a bald eagle. See id. at 127. Although he claimed he thought it was a hawk, as the district court stated, "it's [also] illegal to shoot a hawk" in Maine. Voisine does not satisfy "the 'law-abiding responsible citizen' requirement" so as to prevail on an as-applied constitutional claim. See United States v. Moore, 666 F.3d 313, 319-20 (4th Cir. 2012). There is not a shred of record evidence that Voisine was using the gun to protect either hearth or home, nor was he using it in self-defense or to hunt lawfully (AOB.38). See Mahin, 668 F.3d at 124. Accordingly, and contrary to Voisine's claim (AOB.42), the

"'core' Second Amendment right vindicated in <u>Heller</u>," <u>see</u> <u>Booker</u>, 644 F.3d at 25 n.17, is simply not implicated in this case. <u>See</u> <u>also</u> <u>United States v. Chester</u>, 628 F.3d 673, 682-83 (4th Cir. 2010).

## C.  **Voisine's Claims**

Voisine's Second Amendment argument is grounded entirely on his erroneous premise that a domestic-violence conviction under the offensive-physical-contact prong of Maine's assault statute does not constitute a misdemeanor crime of domestic <u>violence</u> under federal law and, thereby, animate the multiple substantial governmental interests rendering § 922(g)(9) constitutionally applicable to him (AOB.36-42).  Notwithstanding his attempt to insert "non-violent" into Maine's assault statute (AOB.37, 41), Voisine was not convicted of "non-violent" conduct.

Voisine was convicted of a misdemeanor crime of domestic violence as defined by federal law, relevant state law and binding Circuit precedent as entailing the use of force.  Indeed, even Voisine's charging document alleging the crime to which he pleaded guilty identified his assault as one that "involved domestic <u>violence</u>" (emphasis added). <u>See</u> <u>United States v. Wells</u>, 826 F.Supp.2d 441, 445 (N.D.N.Y. 2011).  Section 922(g)(9), therefore, properly and constitutionally applies to Voisine-- based on his conviction and demonstrated history of recidivism as evidenced by multiple assault convictions and five convictions

for violating protection orders.  Voisine is, thus, not in the class of persons the Second Amendment protects at its core and Congress's manifest interest in keeping guns out of his and other domestic abusers' hands passes Second Amendment scrutiny.

Voisine next contends--in similar fashion as he did regarding his statutory claim--that § 922(g)(9) is unconstitutional as applied to him because "[t]he Government...never established that [he] engaged in any violence" (AOB.38-40).  This claim assumes, without citation to authority, that in defending an as-applied constitutional challenge--rather than merely establishing the fact of a prior conviction--the Government's permissible evidence includes only <u>Shepard</u>-approved judicial records.[12]  Voisine cites no authority for that proposition.  Multiple courts have considered underlying actual facts in assessing the validity of a defendant's as-applied, <u>Heller</u>-related constitutional challenge. <u>See, e.g.</u>, <u>United States v. Kline</u>, 2012 WL 3984670, at *1 (4th Cir. Sept. 12, 2012)(unpublished); <u>United States v. Smoot</u>, 2012 WL 3264387, at *4 (4th Cir. Aug. 13, 2012); <u>United States v. Greeno</u>, 679 F.3d 510, 520-21 (6th Cir. 2012); <u>United States v. Williams</u>, 616 F.3d 685, 693 (7th Cir. 2010).

An as-applied constitutional challenge in other contexts necessarily requires consideration of the claimant's underlying

---

[12]<u>See</u> <u>United States v. Shepard</u>, 544 U.S. 13 (2005).

specific conduct. See, e.g., National Ass'n of Mfrs. v. Taylor, 549 F.Supp.2d 33, 62 (D.D.C. 2008); United States v. Morales-de Jesus, 372 F.3d 6, 17-18 (1st Cir. 2004). The record revealed that Voisine had three assault convictions--two of them domestic, five convictions for violating protection orders and that he illegally possessed and used the gun giving rise to his § 922(g)(9) offense while engaging in separately non-law abiding and irresponsible conduct. His as-applied challenge should, therefore, fail. See Skoien, 614 F.3d at 645.

To the extent such defendant- and offense-specific factual inquiries may be misplaced here, see United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011); United States v. Reese, 627 F.3d 792, 805 (10th Cir. 2010), Voisine's unchallenged conviction for a misdemeanor crime of violence readily placed him with § 922(g)(9)'s constitutional boundaries. See Reese, 627 F.3d at 805; Wells, 826 F.Supp.2d at 445. Voisine's complaints about the lack of judicial findings regarding the underlying facts that gave rise to his domestic-violence conviction (AOB.41) should have been raised in the state court. See Reese, 627 F.3d at 805; Wells, 826 F.Supp.2d at 445.

Voisine's final claim is that his conviction must be reversed because "[t]he Government failed to present any nexus between depriving non-violent offenders of their firearm rights and reducing intimate partner homicides" fails for three reasons

(AOB.39-40). First, as explained above, Voisine is not a "non-violent offender." Second, Voisine provides no support for his contention that the Government must prove with such statistical certainty even a relationship between convictions under Maine's assault statute and subsequent acts of violence--let alone homicide in particular. Cf. Staten, 666 F.3d at 162. As the Staten, id. at 167, court recognized, "the net cast by § 922(g)(9) may be somewhat over-inclusive, given that every domestic violence misdemeanant would not necessarily misuse a firearm against a spouse" or other qualifying person. That observation, however, "merely suggests that the fit is not perfect. Intermediate scrutiny does not require a perfect fit; rather only a reasonable one." Id.

Third, as the Court's Booker, 644 F.3d at 25-26 & n.18, analysis and statistics cited in Skoien, 614 F.3d at 642-44, revealed: (1) there are a substantial number of murders committed by domestic intimates that involve use of a firearm; (2) there is an increased risk of a deadly assault when a firearm is the weapon; (3) a strong association exists between a gun in the home of a convicted abuser and the risk of homicide; (4) nearly eight percent of non-accidental law enforcement officer fatalities in the line of duty were linked to domestic-disturbance calls between 2000 and 2009; and (5) there is a high recidivism rate for those who commit acts of domestic violence. Indeed, one

53

widely-cited statistical analysis revealed that "living in a household where someone had previously been hit or hurt in a fight in the home [is] strongly and independently associated with homicide[.]." A. Kellermann, <u>supra</u>, at 1087.  Thus, "it is plain that § 922(g)(9)," as applied to a recidivist like Voisine, "substantially promotes an important government interest in preventing domestic gun violence." See <u>Booker</u>, 644 F.3d at 26.

Fourth, as the <u>Skoien</u>, 614 F.3d at 641, court aptly explained, even after <u>Heller</u>, it is clear that:

> [S]ome categorical disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.  <u>Heller</u> did not suggest that disqualifications would be effective only if the statute's benefits are first established by admissible evidence.

Voisine has been shown to be untrustworthy with weapons, abusive against women, convicted of a crime of domestic violence and, as the district court stated, "a law unto himself" regarding protection orders and firearm laws.  His as-applied challenge to § 922(g)(9), therefore, readily fails and produces the same result as appellants' claims in <u>Booker</u>, 644 F.3d at 26.  Here, however, in light of <u>Booker</u>, the Court should summarily reject Voisine's statutory and Second Amendment claims.

## CONCLUSION

For the foregoing reasons, the Court should summarily affirm pursuant to Loc.R. 27.0(c).

Dated at Portland, Maine this 28th day of September 2012.

Respectfully submitted,

THOMAS E. DELAHANTY II
United States Attorney


/s/Renée M. Bunker
Renée M. Bunker
Assistant U.S. Attorney

# Certificate of Compliance With Rule 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☑ this brief contains __12,003__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐ this brief has been prepared in a proportionally spaced typeface using _____ _____in _____, *or*

☐ this brief has been prepared in a monospaced typeface using _____ _____ with _____.

(s) __/s/Renee M. Bunker_____

Attorney for __United States_____

Dated: __9/28/2012_____

| Print | Save As... | Reset |

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2012, I electronically filed Appellee's Brief with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Virginia G. Villa
Assistant Federal Defender
Federal Defender Office-Bangor
District of Maine
Key Plaza-Second Floor
23 Water Street, Suite 206
Bangor, ME  04401


   /s/ Robert H. Booth, Jr.
Robert H. Booth, Jr.
Paralegal Specialist