# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

STEPHEN L. VOISINE,
Defendant-Appellant.

———————

UNITED STATES OF AMERICA,
Appellee

v.

WILLIAM E. ARMSTRONG,
Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**SUPPLEMENTAL BRIEF OF THE APPELLEE UNITED STATES OF AMERICA**

THOMAS E. DELAHANTY II
United States Attorney

Renée M. Bunker
Assistant U.S. Attorney
District of Maine
100 Middle Street
East Tower, Sixth Floor
Portland, ME  04101
(207) 771-3258

## TABLE OF CONTENTS

Table of Authorities........................................ii

Issue Presented.............................................1

Statement of Facts..........................................1

    Procedural History......................................3

Argument...................................................13

THE COURT SHOULD, CONSISTENT WITH THE HOLDING AND REASONING IN
<u>CASTLEMAN</u> AND SOUND CIRCUIT PRECEDENT, CONCLUDE THAT A
CONVICTION UNDER MAINE'S SIMPLE ASSAULT STATUTE CONTINUES TO
QUALIFY CATEGORICALLY AS A MISDEMEANOR CRIME OF DOMESTIC
VIOLENCE FOR PURPOSES OF 18 U.S.C. § 922(g)(9).................13

    A.  The Standard.......................................14
    B.  Discussion.........................................15

Conclusion.................................................40

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aguilar v. Attorney General, 663 F.3d 692 (3d Cir. 2011....23, 37

Armstrong, S. Ct. No. 12-10209.................................11

Castleman. Armstrong v. United States, 134 S. Ct. 1759
    (2014)....................................................13

Commonwealth v. Hawkins, 32 N.E. 862 (Mass. 1893)..............19

Descamps v. United States, 133 S. Ct. 2276 (2013)..............13

Fernandez-Ruiz v. Gonzales, 466 F.3d 1121 (9th Cir. 2006)..31, 34

Garcia v. Gonzales, 455 F.3d 465 (4th Cir. 2006)...............31

Jimenez-Gonzalez v. Mukasey, 548 F.3d 557 (7th Cir. 2008)......31

Jobson v. Ashcroft, 326 F.3d 367 (2d Cir. 2003)................31

Johnson v. United States, 559 U.S. 133 (2010)....................
    ...........................4, 7, 10, 11, 12, 18, 19, 20, 35

Leocal v. Ashcroft, 543 U.S. 1 (2004)......19, 31, 32, 34, 37, 38

Oyebanji v. Gonzales, 418 F.3d 260 (3d Cir. 2005).........31, 37

Smith v. United States, 508 U.S. 223 (1993)....................33

United States v. Anderson, 559 F.3d 348 (5th Cir. 2009)........38

United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013)
    .....................................8, 9, 10, 11, 16, 17, 21

United States v. Bailey, 444 U.S. 394 (1980)...................22

United States v. Bayes, 210 F.3d 64 (1st Cir. 2000)....21, 22, 29

United States v. Bell, 505 F.2d 539, 540 (7th Cir. 1974) .....21

United States v. Belless, 338 F.3d 1063 (9th Cir. 2003)........12

United States v. Booker, 644 F.3d 12 (1st Cir. 2011)............
.........................4, 6, 7, 8, 9, 10, 11, 16, 17, 18, 19,
........................24, 25, 26, 30, 34, 35, 36, 39, 40

United States v. Calbat, 266 F.3d 358 (5th Cir. 2001).........22

United States v. Carter, 2014 WL 1688909 (1st Cir. Apr. 30,
    2014)........................................35, 36, 37

United States v. Castleman, 134 S. Ct. 1405 (2014)..............
............1, 2, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 25,
                    27, 28, 30, 32, 33, 34, 35, 38, 39, 40

United States v. Castleman, 695 F.3d 582 (6th Cir. 2014).......11

United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001).....31

United States v. Delis, 558 F.3d 177 (2d Cir. 2009)...........20

United States v. Espinoza, 733 F.3d 568 (5th Cir. 2013)....23, 37

United States v. Fish, 2014 WL 715785 (1st Cir. Feb. 26,
    2014).......................................................38

United States v. Freed, 401 U.S. 601 (1971)...................18

United States v. Guerrero-Robledo, 565 F.3d 940 (5th Cir.
    2009).......................................................38

United States v. Guilbert, 692 F.2d 1340 (11th Cir. 1982)......21

United States v. Hartsock, 347 F.3d 1 (1st Cir. 2003).........24

United States v. Loera, 923 F.2d 725 (9th Cir. 1991)..........21

United States v. Meeks, 664 F.3d 1067 (6th Cir. 2012).........22

United States v. Nason, 269 F.3d 10 (1st Cir. 2001).............
    .................................4, 7, 8, 9, 12, 16, 17, 40

United States v. Palomino Garcia, 606 F.3d 1317 (11th Cir.
    2010).......................................................31

United States v. Perez, 43 F.3d 1131 (7th Cir. 1994)..........21

iii

<u>United States v. Portela</u>, 469 F.3d 496 (6th Cir. 2006)........31

<u>United States v. Rodriguez-Pacheco</u>, 475 F.3d 434 (1st Cir. 2007)....................................................36

<u>United States v. Torres-Villalobos</u>, 487 F.3d 607 (8th Cir. 2007)....................................................31

<u>United States v. Voisine</u>, 495 F.App'x 101 (1st Cir. 2013) ...8, 11

<u>United States v. Williams</u>, 197 F.3d 1091 (11th Cir. 1999)......21

<u>United States v. Zunie</u>, 444 F.3d 1230 (10th Cir. 2006).19, 22, 31

<u>United States v. Zuniga-Soto</u>, 527 F.3d 1110 (10th Cir. 2008)....................................................21, 31

<u>Wajda v. Holder</u>, 727 F.3d 457 (6th Cir. 2013)..................37

**FEDERAL STATUTES**

8 U.S.C. § 1101(a)(43)(F)......................................37

8 U.S.C. § 1227(a)(2)(E)(i)........................31, 33, 34, 37

16 U.S.C. § 668(a)..............................................3

18 U.S.C. § 16.........................9, 10, 19, 31, 33, 34, 38

18 U.S.C. § 113(a)(5)...................................2, 20, 21

18 U.S.C. § 921(a)(33)(A)(i)
........................1, 2, 9, 12, 14, 15, 20, 25, 30, 32, 35

18 U.S.C. §  922(g)(1) .........................................32

18 U.S.C. § 922(g)(9) ............1, 2, 3, 4, 5, 6, 8, 9, 10, 11,
........................12, 13, 14, 16, 17, 22, 24, 25, 26, 27,
..........................30, 32, 33, 34, 35, 36, 38, 39, 40

iv

## STATE STATUTES

17-A M.R.S.A. § 35....................................15, 20, 22

17-A M.R.S.A. § 207(A)(1).......................3, 6, 15, 20, 22

## LEGISLATIVE RECORD

142 Cong. Rec. S10377-01 (Sept. 12, 1996).....................26

142 Cong. Rec. S10379-01 (Sept. 12, 1996).................27, 28

142 Cong. Rec. S11872-01 (Sept. 30, 1996).....................29

142 Cong. Rec. 22986 (1996)...................................27

142 Cong. Rec. S8829-01, S8922-01, D-809-02 (July 25, 1996)....26

142 Cong. Rec. S8831-06, S8832 (July 25, 1996).............24, 26

142 Cong. Rec. S9750-01 (Sept. 3, 1996), S10329-01.............27

142 Cong. Rec. S10329-01, S10277-01 (Sept. 11 1996) ..........27

H.R. Conf. Rep. 104-863, Div. C. Tit. III.....................33

## MISCELLANEOUS

3 Blackstone, Commentaries on the Laws of England, 120)
    (alterations from old English)(emphasis added here..........29

Interstate Stalking Punishment and Prevention Act of 1996......26

2 LaFave § 16.2(c)(2).....................................19, 20

Model Penal Code § 211.1(a)...................................19

Omnibus Consolidated Appropriates Act of 1997.................25

Rollin M. Perkins, Non-Homicide Offenses Against the
    Person, 26 B.U. L. Rev. 119, 125-26 (1946)..................20

## SENTENCING GUIDELINES

USSG § 2L1.2 .................................................31

**ISSUE PRESENTED**

**WHETHER THE COURT SHOULD, CONSISTENT WITH THE HOLDING AND REASONING IN <u>CASTLEMAN</u> AND SOUND CIRCUIT PRECEDENT, CONCLUDE THAT A CONVICTION UNDER MAINE'S SIMPLE ASSAULT STATUTE CONTINUES TO QUALIFY CATEGORICALLY AS A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE FOR PURPOSES OF 18 U.S.C. § 922(g)(9).**

**STATEMENT OF FACTS**

These cases are before this Court on remand from the Supreme Court in light of <u>United States v. Castleman</u>, 134 S.Ct. 1405 (2014).  In <u>Castleman</u>, the Court held that a conviction under Tennessee law for intentionally or knowingly causing bodily injury qualified as "'a misdemeanor crime of domestic violence'" for purposes of 18 U.S.C. § 922(g)(9) even if the defendant could have been convicted for causing slight, nonserious physical injury with nonviolent conduct. 134 S.Ct. at 1408-10.[1]  The Court held "that the requirement of 'physical force,'" as defined in 18 U.S.C. § 921(a)(33)(A), "is satisfied by the degree of force that supports a common-law battery conviction." <u>Id.</u> at 1413.  <u>Castleman</u> explained that "Congress incorporated the common-law meaning of 'force'--namely,

_____

[1]18 U.S.C. § 922(g)(9) prohibits firearm possession by "any person" "who has been convicted in any court of a misdemeanor crime of domestic violence," which is defined as "an offense that--(i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" committed in the domestic relationships listed. 18 U.S.C. § 921(a)(33)(A)(i)-(ii).

1

offensive touching"--in defining "a 'misdemeanor crime of domestic violence.'" Id. at 1410.

As discussed below, Castleman's holding and reasoning support concluding that a conviction under Maine's assault statute for what is necessarily a completed common-law battery continues to qualify categorically as a misdemeanor crime of domestic violence for § 922(g)(9) purposes, even if committed recklessly. Common-law battery encompassed intentional, knowing and reckless conduct and the most logical conclusion is that Congress intended to include reckless batteries within the meaning of misdemeanor crime of domestic violence.

This conclusion is buttressed by the fact that Congress included within § 921(a)(33)(A) federal misdemeanor battery, see 18 U.S.C. § 113(a)(5), which has long been understood to incorporate common-law assault and battery and a mens rea of recklessness and less. Section 922(g)(9)'s legislative history, context and domestic-violence focus that render it distinct from other statutes and cases addressing them or the phrase "use of physical force," as Castleman emphasized, 134 S.Ct. at 1411-12 & n.4 & n.6, also support concluding that Congress intended to include reckless domestic batterers within the law's scope. Perpetrators of domestic abuse should not be allowed to possess

firearms merely because they battered their spouses, children or other relations recklessly rather than intentionally.

## Procedural History

Stephen Voisine was charged in a two-count Information with possessing a firearm following a conviction for a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9)(Count 1); and shooting and killing a bald eagle, in violation of 16 U.S.C. § 668(a)(Count 2). V-JA:10-11.[2] These charges followed a November 2009 anonymous call that Voisine shot an eagle, subsequent discovery that Voisine possessed a rifle and his admission that he shot the bird. V-JA:53, 75-77.

Voisine's state charging document for his 2004 assault conviction that served as the § 922(g)(9) predicate alleged that he "did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to" the victim, in violation of title 17-A M.R.S.A. § 207(A)(1). V-JA:33.[3] Voisine

---

[2]Citations herein are as follows: the joint appendix filed in Armstrong's appeal as "A-JA:[pg#]" and in Voisine's appeal as "V-JA:[pg#]"; respective sealed appendices as "A-JSA:[pg#]" and "V-JSA:[pg#]"; Armstrong's opening brief as "AOB:[pg#]" and Voisine's as "VOB:[pg#]"; Government's opening brief in Armstrong as "A-GOB:[pg#]" and in Voisine as "V-GOB:[pg#]."

[3]A police report regarding this offense stated that, on April 12, 2003, Trooper Daniel Deschaine responded to Voisine's and Tina Farwell's residence after Farwell called 911 and then hung up. V-JA:35, 43. Voisine allowed Deschaine to enter the residence and, when asked if he had any firearms, pointed to some rifles

moved to dismiss the § 922(g)(9) charge, arguing that Count 1 failed to state an offense because, after Johnson v. United States, 559 U.S. 133 (2010), Maine's assault statute did not qualify as a misdemeanor crime of domestic violence because it encompassed offensive physical contact committed with a recklessness mens rea. V-JA:19-27. He also argued that § 922(g)(9) violated the Second Amendment. V-JA:13-18.

In an order preceding United States v. Booker, 644 F.3d 12 (1st Cir. 2011), the district court denied Voisine's motion, ruling that United States v. Nason, 269 F.3d 10 (1st Cir. 2001), remained solid Circuit precedent notwithstanding the Supreme Court's opinion in Johnson, which shed no light on what level of mens rea was sufficient for a misdemeanor crime of domestic violence. V-DAdd:7-8, 14-21. The court also rejected Voisine's Second Amendment claims. V-DAdd:11. Voisine entered a conditional guilty plea on Count 1, preserving his right to

---

in a gun rack. V-JA:43. Farwell told Deschaine she called 911 because Voisine--her boyfriend and cohabitant for seven years-- "slapped her in the face across the...cheek." V-JA:43. She said "he was drunk and...this was not the first time it happens" (sic). V-JA:43. Farwell's minor daughter "said...she did not see [Voisine] hit her [mother] but she heard the slap and went in the kitchen and saw her mother lying on the floor." V-JA:43. The trooper "did not observe any marks or bruises" on Farwell's face, but told her he was going to arrest Voisine for assault. V-JA:43. Farwell said she did not want Voisine arrested and added that "he is not usually like this except when he drinks." V-JA:43.

appeal the above-described adverse order, and an unconditional guilty plea on Count 2. V-JA:51, 62. Before imposing sentence, the court noted Voisine's "surprisingly lengthy criminal history" that included 15 convictions--almost all of which "involve his relationships with women and...alcohol." V-JA:101-02.[4] The court sentenced Voisine to concurrent terms of 12 months and 1 day on Count 1 and 9 months on Count 2. V-JA:107.

William Armstrong was charged in a one-count Indictment with possessing seven firearms and 1,763 rounds of ammunition following a conviction for a misdemeanor crime of domestic violence, in violation of § 922(g)(9). A-JA:11-12. This 2010 federal offense followed execution of a search warrant at Armstrong's home and discovery of firearms and ammunition. A-JA:119-20. The state charging document for Armstrong's 2008 assault that served as the predicate for his § 922(g)(9) offense alleged that he "did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Rosanna

---

[4]Voisine's Presentence Investigation Report (PSI) described his criminal history that spanned 28 years and included 14 convictions. V-JSA:5-8. Voisine sustained his first assault conviction in 1991. V-JSA:5. He had one 1996 conviction for entering his ex-wife's home "despite a protection order prohibiting him from having contact with her," and convictions in 1996, 1997 and 1999 for violation of protection orders. V-JSA:6-7. Voisine's above-described 2003 assault against Farwell followed, as did another domestic-assault conviction in 2005. V-JSA:6-8.

Armstrong," "a family or household member," in violation of 17-A M.R.S.A. § 207(A)(1)(A).[5] A-JA:33.

Armstrong, too, filed a motion to dismiss his § 922(g)(9) charge on essentially the same grounds argued in Voisine's case, which the district court summarily rejected as foreclosed by Booker, 644 F.3d 12. A-JA:4, 13-31. Armstrong conditionally pleaded guilty, reserving his right to appeal that adverse decision. A-JA:49-71. The sentencing court described Armstrong as a man with "a history of violence against women" (A-JA:90-91).[6] Although the "assaults...seem[ed]" to the court "to be

---

[5]A police report regarding this assault explained that after police responded to Rosanna's report of a domestic assault, she stated that while she was baking cookies, Armstrong "got mad...because she didn't have her wedding ring on." A-GAdd:4-5. He reportedly pushed her, she told him to stop, the two argued, Armstrong "got mad and slapped" Rosanna on her leg. A-GAdd:5. She hit him back in the chest, and told the officer: "William is a big guy and he [then] tightened his check" and "hit her again, but harder this time." A-GAdd:5. Rosanna hit him back and called the police. GAdd:5. The couple's 12-year-old daughter--who heard, but did not see, the incident--gave a report consistent with that of Rosanna. A-GAdd:5. The officer observed "a red mark" on "the upper outside thigh area" of Rosanna's leg where Armstrong hit her. A-GAdd:6.

[6]Armstrong's PSI and a police report revealed that a dismissed 1992 assault charge against him was lodged after Armstrong's mother reported that he pushed her during an argument. A-JSA:6; A-JA:116. The officer observed cuts on Armstrong's mother's arms caused by her fall upon a broken ashtray during the incident. A-JA:116-17. Officers arrested Armstrong and seized two firearms, including a loaded gun found on his bed. A-JA:116-17.

related to [Armstrong's] drinking and smoking marijuana and
fighting with [his] wife and things escalating," the court was
"very worried about the fact that this is a long-term problem"--
not "something that...happened with one woman." A-JA:105.  The
court sentenced Armstrong to three years' probation. A-JA:105.

On appeal, Appellants pressed their claims that a
conviction under Maine's assault statute, which they agreed
criminalized common-law battery, could not qualify as a
§ 922(g)(9) predicate because it encompassed offensive physical
contact rather than violent force and also a recklessness mens
rea. AOB:9-24; VOB:9-24.  Appellants characterized this Court's
contrary precedent as an outlier and inconsistent with holdings
in multiple other circuits. AOB:29; VOB:28-29.[7]  The Government
argued that Appellants' statutory claims were foreclosed by
Nason and Booker, that Johnson was irrelevant because, unlike
for the Armed Career Criminal Act (ACCA), Congress meant to

---

Sentencing exhibits revealed that Armstrong's 1993 assault
conviction entailed his assault of his ex-girlfriend. A-GAdd:1-
2; A-JA:82-84, 118; A-JSA:5.  A police report regarding a 2002
assault conviction revealed that Armstrong's  wife, Rosanna,
called 911, "was crying" and said Armstrong "assaulted her" (A-
GAdd:3; A-JSA:6).  Armstrong told the responding officer he had
been drinking and smoking marijuana--evidence of which the
officer observed. A-GAdd:3.  Rosanna said Armstrong "pushed her
several times" and the officer observed "marks on her...hand
from being grabbed." A-GAdd:3.

[7]Appellants also raised Second and Fifth Amendment issues that
are not relevant here.

encompass within § 922(g)(9) the common-law meaning of battery, and the cases upon which Appellants relied to label this Court's Nason and Booker opinions outliers addressed different statutes that were not comparable to § 922(g)(9). A-GOB:13-29, 33; V-GOB:16-27, 32-33, 37-38.

In United States v. Armstrong, 706 F.3d 1, 2 (1st Cir. 2013), the Court held that Appellants' claims were foreclosed by Nason and Booker.[8] The Court explained that in Nason, the Court ruled that "the phrase 'physical force'...was broad enough to encompass the 'offensive physical contact' variant of Maine's assault statute." Armstrong, 706 F.3d at 4 (citing Nason, 269 F.3d at 16, 20-21). "Specifically," the Nason Court "concluded that 'Congress intended the federal law to cover all persons who have been convicted of assaulting domestic partners in circumstances similar to those delineated by both strains of the Maine statute....'" Id. (Nason citation omitted).

More recently, the Booker Court "held that an offense with a mens rea of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)." Armstrong, 706 F.3d at 4 (citing Booker, 644 F.3d at 21). The Court explained in

_____

[8]Although the Armstrong opinion refers only to Appellant Armstrong, the Government herein uses the term Appellants because the Voisine opinion summarily affirmed by incorporating Armstrong's reasoning. United States v. Voisine, 495 F.App'x 101, 102 (1st Cir. 2013)(unpublished).

Armstrong that, "[i]n interpreting the breadth of the definition of 'misdemeanor crime of domestic violence' in § 922(g)(9)," the Booker opinion rejected analogizing to 18 U.S.C. § 16's definition for "'crime of violence'" because legislative history suggested Congress intended a broader definition for § 922(g)(9) purposes. Armstrong, 706 F.3d at 4-5 (citations to Booker omitted). In contrast to § 16 and the ACCA, "'§ 922(g)(9) addresses an acute risk to an identifiable class of victims--those in a relationship with a perpetrator of domestic violence.'" Id. at 5 (citations to Booker omitted). In light of Booker and Nason, this Court thus agreed with the district court's denial of Appellants' motions. Id.

"[F]or the sake of thoroughness," the Court addressed Appellants' claim that their convictions for engaging in offensive physical contact with their victims cannot constitute § 922(g)(9) predicates because "Congress never intended the proscription to apply to non-violent battery convictions" encompassing "non-violent offensive physical contact at common law." Id. at 5. This Court's interpretation of § 922(g)(9) and its definitional counterpart, § 921(a)(33)(A), in Booker and Nason "clearly indicates otherwise." Armstrong, 706 F.3d at 5.

"In Nason," the Court "reviewed the Maine Law Court's own interpretation of its simple assault statute's offensive-

9

physical-contact prong, and found that it included 'something less than bodily injury' but 'more than a mere touching of another.'" _Armstrong_, 706 F.3d at 5 (citations omitted). "In _Booker_," the Court "pointed to Congress's express rejection of including as predicate offenses only such 'crime[s] of violence' as are included in 18 U.S.C. § 16 and noted Congress's adoption of" what the bill's sponsor thought was a "'probably broader'" definition for § 922(g)(9) purposes. _Armstrong_, 706 F.3d at 5-6 (citations omitted).

Nor did this Court find availing Appellants' attempt to challenge Circuit precedent through _Johnson_, 559 U.S. 133. _Armstrong_, 706 F.3d at 6. That was because _Johnson_ issued before this Court's _Booker_ opinion and the _Johnson_ Court explicitly did not decide whether "physical force has the same meaning in the context of defining a _misdemeanor_ crime of domestic violence as opposed to a felony." _Armstrong_, 706 F.3d at 6 (internal alterations and quotation marks omitted). The Court thus concluded that "the statute on its face, its legislative history and this court's precedent do not distinguish between 'violent' or 'non-violent' misdemeanor convictions when they involve the kind of conviction at issue

here...." Id. Appellants' convictions were thus affirmed. Id.
at 8; Voisine, 495 F.App'x at 102.[9]

Appellants petitioned for a writ of certiorari, pressing
their various claims. Armstrong, S.Ct. No. 12-10209, Brief for
Petitioners at 8-17. On the degree-of-force issue, the
Government asked the Court to hold Appellants' petition in
abeyance and to proceed instead with review of the Sixth
Circuit's opinion in United States v. Castleman, 695 F.3d 582
(6th Cir. 2014). Armstrong, S.Ct. No. 12-10209, Brief for
Respondent at 10-18. The mens rea issue, the Government argued,
did not warrant Supreme Court review because there was not a
clear circuit split and, in any event, this Court correctly
decided that issue in Booker, consistent with Johnson, 559 U.S.
at 139-40, and other cases addressing the meaning of common-law
battery as including a mens rea of recklessness. Id. at 19-23.
The Supreme Court held Appellants' petition pending issuance of
its opinion in Castleman.

As explained above, in Castleman, the Court held that, for
§ 922(g)(9) purposes, Congress incorporated the common-law

---

[9]The Court also rejected Appellants' forfeited due-process or
"'fair warning'" claims, concluding that there was no ambiguity
in the term "use of physical force" and this claim was based on
a mistaken premise that Johnson impacted the interpretation of
misdemeanor crime of domestic violence. Id. at 6. Appellants'
Second Amendment claims were also foreclosed by Booker.
Armstrong, 706 F.3d at 7-8.

meaning of battery and therefore convictions for offensive touchings qualify as predicate crimes of domestic violence. 134 S.Ct. at 1410-12.  That holding resolved a split among the Courts of Appeals in favor of this Circuit's precedent on the degree-of-force issue. Id. at 1410 (comparing, e.g., Nason, 269 F.3d at 18 (discussed above), with United States v. Belless, 338 F.3d 1063, 1068 (9th Cir. 2003)(holding that § 922(g)(9) covers only crimes requiring "'the violent use of force'")).

The Sixth Circuit in Castleman's case had therefore erroneously applied Johnson's holding that the ACCA required violent force to its analysis of §§ 921(a)(33)(A) and 922(g)(9). Castleman, 134 S.Ct. at 1409-10.  As the Castleman Court noted, "Johnson specifically reserved the question whether [the Supreme Court's] definition of 'physical force' would extend to...§ 922(g)(9)." 134 S.Ct. at 1410.  Castleman held that it did not. Id. at 1410-13.

Likewise, in holding that Congress intended to include common-law batteries within the meaning of "misdemeanor crime of domestic violence," the Castleman Court explicitly did not decide whether convictions under laws with a recklessness mens rea qualified as § 922(g)(9) predicates. Id. at 1414 ("But we need not decide whether a domestic assault conviction in Tennessee categorically constitutes a 'misdemeanor crime of

domestic violence,'...."). That was because Castleman pleaded guilty under a divisible statute to "'intentionally or knowingly'" causing bodily injury. Id. (citing Descamps v. United States, 133 S.Ct. 2276, 2281 (2013)). Resorting, therefore, to the modified categorical approach and concluding that such a conviction qualified, the Court reversed and remanded to the Sixth Circuit for further proceedings consistent with Castleman. Id. at 1414-16.

The Supreme Court subsequently granted Appellants' petition for a writ of certiorari, vacated this Court's judgments and remanded for further consideration in light of Castleman. Armstrong v. United States, 134 S.Ct. 1759 (2014). This Court has thus ordered supplemental briefing regarding Castleman's impact on these cases.

**ARGUMENT**

**THE COURT SHOULD, CONSISTENT WITH THE HOLDING AND REASONING IN CASTLEMAN AND SOUND CIRCUIT PRECEDENT, CONCLUDE THAT A CONVICTION UNDER MAINE'S SIMPLE ASSAULT STATUTE CONTINUES TO QUALIFY CATEGORICALLY AS A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE FOR PURPOSES OF 18 U.S.C. § 922(g)(9).**

Castleman ruled that, for § 922(g)(9) purposes, the meaning of "use of physical force" is broader when defining a misdemeanor crime of domestic violence than definitions for violence *simpliciter* and violent felonies defined in other statutes. To address the potentially fatal combination of

13

firearms and domestic violence, Congress incorporated common-law batteries; therefore, convictions for merely offensive touchings qualify as § 922(g)(9) predicates. No violent force is required. There is no reason to conclude that Congress did not also intend to incorporate the mens rea of recklessness that was well-established as sufficient to prove a common-law battery. Incorporating the recklessness mens rea is consistent with <u>Castleman</u>'s reasoning and especially warranted in the domestic-violence context. Appellants' convictions should be affirmed.

**A.    Standard**

Title 18, U.S.C. § 922(g)(9) makes it "unlawful for any person...who has been convicted in any court of a misdemeanor crime of domestic violence, to...possess in or affecting commerce, any firearm or ammunition...."  The term "'misdemeanor crime of domestic violence' means an offense that—

> **(i)** is a misdemeanor under Federal, State, or Tribal law; and
> **(ii)** has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse,... or...by a person who is cohabiting with or has cohabited with the victim as a spouse...or by a person similarly situated to a spouse....

18 U.S.C. § 921(a)(33)(A)(i)-(ii).

Maine law renders one guilty of assault if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." 17-A M.R.S.A. § 207(1)(A).  Under Maine law, "A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result." Id., § 35(3)(A).  The statute adds that:

> For purposes of this subsection, the
> disregard of the risk, when viewed in the
> light of the nature and purpose of the
> person's conduct and the circumstances known
> to the person, must involve a gross
> deviation from the standard of conduct that
> a reasonable and prudent person would
> observe in the same situation.

Id., § 35(3)(C)(Sept. 2007-present).[10]

## B.  Discussion

As Castleman explained, "absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." 134 S.Ct. at 1410 (internal quotation marks omitted).  "Seeing no 'other indication' here," the Court held "that Congress incorporated the common-law meaning of 'force'-- namely, offensive touching--in § 921(a)(33)(A)'s definition of 'misdemeanor crime of domestic violence.'" Id.  The Court thus

---

[10]The only differences between this version of § 35 and the 2004 statute relevant to Voisine's case is the use of gender-neutral terms here.

held "that the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9) by the degree of force that supports a common-law battery conviction." Id. at 1413.

What those holdings mean in the context of this Circuit's precedent is that this Court got it right in Nason, Booker and Armstrong by holding that a conviction under the offensive-physical-contact variant of Maine's assault statute qualifies categorically as a § 922(g)(9) predicate. See Nason, 269 F.3d at 17-18 (§ 922(g)(9) contemplated "use of any physical force, regardless of whether that force resulted in bodily injury or risk of harm"); Booker, 644 F.3d at 16 ("convictions under generic assault and battery statutes may qualify as 'misdemeanor crimes[s] of domestic violence' under § 922(g)(9)); id. at 17 (Johnson did not undermine Nason); Armstrong, 706 F.3d at 5 (rejecting claim that "non-violent battery" "encompass[ing] non-violent offensive physical contact at common law" did not qualify as a § 922(g)(9) predicate).

Accordingly, regardless of whether this Circuit was the outlier, as Appellants' counsel has repeatedly asserted in numerous cases, but which was not necessarily true given a comparison among incommensurate statutes, the Supreme Court's Castleman opinion reveals that the First Circuit paved the way with correct reasoning and toward the right result. This is

true at least insofar as the Court's incorporation of common-law battery and the requisite degree-of-force analyses have been conducted.[11]

The only open question then is whether this Court also correctly ruled in Booker and Armstrong that a mens rea of recklessness comfortably fits within the meaning of misdemeanor crime of domestic violence for purposes of § 922(g)(9) specifically.  The answer is yes.  Based on Castleman's holding and reasoning, the Court should conclude that Booker is consistent with Castleman and that a conviction under Maine's assault statute, even if for reckless battery, continues to qualify categorically as a § 922(g)(9) domestic-violence predicate.  There is therefore no need to resort to the modified categorical approach.  Cf. Castleman, 134 S.Ct. at 1414.  This is true for seven reasons.

First, as explained above, Castleman held that for § 922(g)(9) purposes, "the common-law meaning of 'force' fits

_____

[11]The same is true regarding this Circuit's correct analysis of various appellants' fair-warning, rule-of-lenity and Second Amendment claims in the context of § 922(g)(9). Compare Castleman, 134 S.Ct. at 1416, with Nason, 269 F.3d at 22, Booker, 644 F.3d at 21-26, and Armstrong, 706 F.3d at 6-8.  But those issues do not appear to be the significant aspects of the precedential impact of Castleman and are thus likely irrelevant to this Court's supplemental briefing order.  The Government therefore only notes the absence of any incongruity between Castleman and this Court's rulings on the Second and Fifth Amendment claims.

perfectly...." 134 S.Ct. at 1410. <u>See</u> <u>Booker</u>, 644 F.3d at 16

(convictions under generic battery statutes may qualify as

§ 922(g)(9) predicates). The same should be true for the

requisite mens rea.

As the Supreme Court explained:

> Where Congress borrows terms of art in which
> are accumulated the legal tradition and
> meaning of centuries of practice, it
> presumably knows and adopts the cluster of
> ideas that were attached to each borrowed
> word in the body of learning from which it
> was taken and the meaning its use will
> convey to the judicial mind unless otherwise
> instructed.

<u>United States v. Freed</u>, 401 U.S. 601, 607-08 (1971). It

therefore "makes sense for Congress to have classified as a

'misdemeanor crime of domestic violence'" not only "the type of

conduct that supports a common-law battery conviction,"

<u>Castleman</u>, 134 S.Ct. at 1411, but also the mental states that

supported a common-law battery conviction. Indeed, to

incorporate a lower-threshold, common-law battery actus reus

into § 922(g)(9) while requiring the purposeful, aggressive and

intentional mens rea applicable to violent felonies and felony

crimes of violence creates a "comical misfit." <u>Cf.</u> <u>Castleman</u>,

134 S.Ct. at 1410 (combining misdemeanor minimal force with

misdemeanor battery); <u>Johnson</u>, 559 U.S. at 139-43 (ensuring fit

between felonious force and violent felony).

As the Court in <u>Booker</u> explained: "In common parlance, a 'use of physical force' may be described as reckless or intentional." 644 F.3d at 18; <u>cf.</u> <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004)(concluding that the phrase "use...of physical force against the person or property of another" in 18 U.S.C. § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct," but reserving judgment as to recklessness).  Incorporating a recklessness mens rea is consistent with the "more specialized legal usage" of the phrase "use...of physical force" to describe the common-law crime of battery. <u>Johnson</u>, 559 U.S. at 139-40.  The crime of battery has traditionally encompassed both intentional and criminally negligent or reckless infliction of harm. <u>See</u> 2 LaFave § 16.2(c)(2), at 557; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Commonwealth v. Hawkins</u>, 32 N.E. 862, 863 (Mass. 1893).

Consistent with that background, "a substantial majority of the battery-type statutes" in modern criminal codes "expressly state that the crime may be committed by recklessness." 2 LaFave § 16.2(c)(2), at 557. <u>See</u> <u>also</u> Model Penal Code § 211.1(a)("A person is guilty of assault if he * * * attempts to cause or purposefully, knowingly or recklessly causes bodily injury to another."); <u>United States v. Zunie</u>, 444 F.3d 1230, 1234-35

19

(10th Cir. 2006).[12] Here, where Congress employed the common-law definition of misdemeanor battery to define "misdemeanor crime of domestic violence," the most natural conclusion is that Congress intended to include battery crimes, like the Maine assault offenses at issue here, that punish conduct that is either intentional or involves "conscious[] disregard[]" of the risk involved. <u>See</u> Title 17-A M.R.S.A. § 35(3)(A).

Second, Congress's intent to encompass common-law battery as a whole is further evidenced by its inclusion of federal misdemeanor batteries in defining misdemeanor crime of domestic violence within § 921(a)(33)(A).  Federal misdemeanor assault, 18 U.S.C. § 113(a)(5), has long been understood to apply the common-law definition of assault and battery. <u>See, e.g.</u>, <u>United States v. Delis</u>, 558 F.3d 177, 180-82 (2d Cir. 2009) (incorporating meaning of common-law battery into § 113(a)(5) and explaining that: "Common-law battery did not require any specific intent either to injure or to touch offensively, but rather only a more general intent to commit the unlawful act or,

---

[12]In <u>Johnson</u>, the Court described common-law battery as the "intentional application of unlawful force against the person of another." 559 U.S. at 139.  As LaFave explains, while some courts have spoken of criminal batteries as necessarily involving "intent" to injure, they have also treated reckless or criminally negligent conduct as supplying the necessary intent. <u>See</u> 2 LaFave § 16.2(c)(2), at 556 & n.32; <u>see</u> <u>also</u> Rollin M. Perkins, <u>Non-Homicide Offenses Against the Person</u>, 26 B.U. L.Rev. 119, 125-26 (1946).

indeed, mere recklessness or criminal negligence."); United States v. Bayes, 210 F.3d 64, 68-69 (1st Cir. 2000); United States v. Williams, 197 F.3d 1091, 1096 (11th Cir. 1999); United States v. Perez, 43 F.3d 1131, 1137 & n.9 (7th Cir. 1994) (collecting cases); United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982)(citing United States v. Bell, 505 F.2d 539, 540 (7th Cir. 1974)). See also Armstrong, 706 F.3d at 6.

Section 113(a)(5) is a generic assault and battery statute with no mens rea. Bayes, 210 F.3d at 68. As this Court explained, a common-law battery "did not require proof that the defendant intended to injure another or to threaten her with harm. The slightest willful offensive touching of another constitute[d] a battery...regardless of whether the defendant harbor[ed] an intent to do physical harm." Id. (internal quotation marks omitted). See also United States v. Loera 923 F.2d 725, 728 (9th Cir. 1991)(explaining that "'willful' as used at common law as an element of a general intent crime refers to a volitional act"; "If he could have refrained, the act is voluntary; but if he was impelled by some irresistible force, it is involuntary.")(citations and internal quotation marks omitted); United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008)(assault under § 113(a)(6)("assault resulting in serious bodily injury") may be based on reckless conduct)(citing

<u>Zunie</u>, 444 F.3d at 1235); <u>United States v. Calbat</u>, 266 F.3d 358, 363 (5th Cir. 2001)("intoxication assault" caused by driving while intoxicated constitutes a violation of § 113(a)(6)). Accordingly, in <u>Bayes</u>, the Court rejected appellant's claim that his § 113(a)(5) conviction could not stand absent proof of specific intent to assault and instead ruled that it was sufficient to show that the defendant "deliberately touched another in a patently offensive manner without justification." 210 F.3d at 69.

Third, and relatedly, in assessing the volitional scale, recklessness lies closer to knowingly--which <u>Castleman</u>, 134 S.Ct. at 1414-15, ruled sufficed for common-law battery and § 922(g)(9)--than to negligent or merely accidental conduct. Recklessly is more akin to deliberately or knowingly, where it requires, under Maine law, that the perpetrator "consciously disregards," *i.e.*, knowingly or deliberately disregards, a risk that the conduct will cause the prohibited result. Title 17-A M.R.S.A. § 35(3).  The conscious disregard is "viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person." <u>Id.</u>  <u>See also United States v. Meeks</u>, 664 F.3d 1067, 1070-72 (6th Cir. 2012)(wanton conduct, *i.e.*, conscious disregard, qualified as felony crime of violence under career-offender guideline); <u>United States v. Bailey</u>, 444

U.S. 394, 404-05 (1980)(one acts "knowingly if he is aware that
that result is practically certain to follow from his conduct,
whatever his desire may be as to that result"; "'knowledge'
corresponds loosely with the concept of general intent")
(citations and internal quotation marks omitted).

Including such a mens rea for common-law battery is
especially, if not distinctly, appropriate within the domestic-
violence context where, unlike, *e.g.,* driving a vehicle while
intoxicated and risking an accident or injury to random third
parties, the perpetrator's conduct is directed at a particular
victim.[13]  The special circumstances that give rise to a domestic
assault or battery include the knowledge that the battery is
being inflicted on an intimate partner or one with whom the
perpetrator shares a domestic relationship. See Castleman, 134
S.Ct. at 1412 (describing the distinguishing nature of domestic
violence as typically entailing what in other contexts might
appear to be minor acts that accumulate over time).

---

[13]In this sense, domestic violence is more akin to burglary as
discussed in cases addressing felonies than, *e.g.,* felony drunk
driving. See United States v. Espinoza, 733 F.3d 568, 573
(5th Cir. 2013)(explaining that reckless domestic assault was
analogous to burglary because it "can end in confrontation
leading to violence")(internal quotation marks omitted); Aguilar
v. Attorney General, 663 F.3d 692, 698-99, 701 (3d Cir.
2011)(same regarding felony sexual-assault that qualified as
aggravated felony crime of violence even with recklessness mens
rea).

This Court also correctly homed in on that important distinction between domestic violence or assaults and violent felonies against strangers. See Booker, 644 F.3d at 21 (explaining that § 922(g)(9)'s ultimate purpose "'is to protect domestic abuse victims from the risk of further violence involving firearms'")(quoting United States v. Hartsock, 347 F.3d 1, 2 (1st Cir. 2003)); id. ("§ 922(g)(9) addresses an acute risk to an identifiable class of victims--those in a relationship with a perpetrator of domestic violence"). The Court explained, as Senator Lautenberg had stated:

> "By their nature, acts of domestic violence are especially dangerous and require special attention. These crimes involve people who have a history together and perhaps share a home or child. These are not violent acts between strangers, and they don't arise from a chance meeting. Even after separation, the individuals involved, often by necessity, have a continuing relationship of some sort, either custody of children or common property ownership."

Id. (quoting 142 Cong. Rec. S8831-06, S8832 (July 25, 1996) (statement of Sen. Lautenberg)). See also Castleman, 134 S.Ct. at 1408 ("Domestic violence often escalates in severity over time...and the presence of a firearm increases the likelihood that it will escalate to homicide.")(citations omitted). Including within § 922(g)(9)'s firearm prohibition the perpetrators who recklessly batter their domestic intimates in

addition to those who do so intentionally is therefore not only common sense, but arguably essential to effectuating the very purpose of this federal law.

A fourth reason the Court should confirm that Booker has not been undermined is that, there, 644 F.3d at 18, as in Castleman, 134 S.Ct. at 1412 n.6, the Court correctly acknowledged that Congress knows how to define a heightened degree of force or mens rea when it chooses to do so. "That it did not do so here," "suggests...it did not mean to." See id. As the Court noted in Booker, "Congress included a mens rea requirement in the immediately preceding section of the legislation that enacted § 922(g)(9)...." 644 F.3d at 18.

Section 922(g)(9) was located at § 658 of the Omnibus Consolidated Appropriations Act of 1997. Id. at n.5 (citation omitted). As Booker noted, § 657 of the same act "amended 18 U.S.C. § 922(q), which made it 'unlawful for any individual knowingly to possess a firearm...at a place that the individual knows, or has reasonable cause to believe, is a school zone.'" Id. (citations omitted)(emphasis added in Booker). Accordingly, where no mens rea was chosen for §§ 921(a)(33) and 922(g)(9), and where Congress purposefully eschewed defining domestic violence by resorting to other statutes addressing violence *simpliciter*, Castleman, 134 S.Ct. at 1412 n.4 & n.6, it is

logical to hold that a misdemeanor battery conviction with a recklessness mens rea qualifies as a misdemeanor crime of domestic violence for § 922(g)(9) purposes. See Booker, 644 F.3d at 21.

Fifth, as intimated above, the legislative history supports holding that Congress intended to include within § 922(g)(9)'s firearm prohibition those who recklessly, and those who intentionally, batter their domestic partners or household members.  Senator Lautenberg's original bill, introduced on May 17, 1996, was initially passed as an amendment to the Interstate Stalking Punishment and Prevention Act of 1996. See 142 Cong. Rec. S8829-01, S8922-01 and D-809-02 (July 25, 1996); 142 Cong. Rec. S10377-01 (Sept. 12, 1996).  He later explained, "The amendment says abuse your child and lose your gun.  Beat your wife, and lose your gun.  Assault your ex-wife, lose your gun, no ifs, ands or buts.  It is a tough policy....But when it comes to domestic violence, we have to get tough." 142 Cong. Rec. S8831-06.  There was no reference to intentional versus reckless beatings; rather, there were "no ifs, ands or buts" to excuse the latter.

After the stalking bill encountered House opposition, Senator Lautenberg re-introduced the identical legislation as proposed amendments to two other acts and reiterated, "This

amendment...would establish a policy of zero tolerance when it comes to guns and domestic violence.  [It] would prohibit <u>any person</u> convicted of domestic violence from possessing a firearm." 142 Cong. Rec. S9750-01 (Sept. 3, 1996), S10329-01 and S10377-01 (Sept. 11, 1996)(emphasis added). <u>See also</u> <u>Castleman</u>, 134 S.Ct. at 1409 (explaining that, as one Senator stated during debate regarding § 922(g)(9): "'[A]ll too often,'...'the only difference between a battered woman and a dead woman is the presence of a gun.'")(quoting 142 Cong. Rec. 22986 (1996) (statement of Senator Wellstone)).

As another cosponsor explained:

> We have seen that firearms-associated family and intimate assaults are 12 times more likely to be fatal than those not associated with firearms....Again, the gun is the key ingredient most likely to turn a domestic violence incident into a homicide.  But the people this amendment would take guns away from--these people have already broken the law, and in a very relevant way.  In the face of the reality of domestic violence and the role guns play in homicides in such situations, the Senate cannot allow convicted abusers to have guns.

142 Cong. Rec. S10379-01 (Sept. 12, 1996)(statement of Senator Murray).  Again, there was no suggestion that the firearm prohibition was to apply only to those who intentionally abuse their domestic victims and not to those who recklessly do so.

Focusing on the harm this legislation addressed, Congress considered statistics at that time revealing that:

> Every year, an estimated 2 million women are victimized by domestic violence. Of these..., nearly 6,000 die. And 70 percent of the time, the perpetrators of the deadly violence use a gun. * * * This amendment looks to the type of crime, rather than the classification of the conviction. <u>Anyone</u> convicted of a domestic violence offense would be prohibited from possessing a firearm.

<u>Id.</u> (statement of Senator Feinstein)(emphasis added). <u>See also</u> <u>Castleman</u>, 134 S.Ct. at 1408 (recognizing the "deadly combination" of domestic strife and firearms, "Congress forbade the possession of firearms by anyone convicted of a 'misdemeanor crime of domestic violence'"). That deadly combination is no less deadly, and arguably more so, when perpetrators are, *e.g.,* intoxicated and recklessly directing their batteries at their victims with a gun nearby.

Senator Lautenberg's statements about the final bipartisan agreement and purpose of the bill also strongly suggest an intent to include those who commit reckless and almost unknowing acts of domestic violence given the nature of that offense and concerns about firearms and victims. His example of what the legislation would achieve follows:

> Once [a man] beat his wife brutally and was prosecuted, but like most wife beaters, he

pleaded down to a misdemeanor and got away
with a slap on the wrist....[N]ext year,
this fellow is going to lose his cool at
work, or with the boys, and he is going to
go home one day and get into another
argument with his wife.  As arguments often
do, it will escalate, and this time, as
before, it will get out of control.  As
their children huddle in fear, the anger
will get physical, and almost without
knowing what he is doing, with one hand he
will strike his wife and with the other hand
he will reach for the gun he keeps in his
drawer.  In an instant their world will
change.  And this woman...will die or be
severely wounded.

142 Cong. Rec. S11872-01 (Sept. 30, 1996)(statement of Senator

Lautenberg)(emphasis added).[14]

Common sense informed this legislation and should continue

to lead this Court to conclude that Maine's assault statute has

the requisite element of force, as Castleman confirmed,

regardless of whether the battery was committed intentionally or

---

[14]"As Blackstone observed in his Commentaries:
      The lea[s]t touching of another's per[s]on
      willfully, or in anger, is a battery; for
      the law cannot draw the line between
      different degrees of violence, and therefore
      totally prohibits the fir[s]t and lowe[s]t
      [s]tage of it: every man's per[s]on being
      [s]acred, and no other having a right to
      meddle with it, in any the [s]lighte[s]t
      manner."
Bayes, 210 F.3d at 68 (quoting 3 Blackstone, Commentaries on the
Laws of England, 120 (Univ. of Chicago Press ed. 1979)(1768))
(alterations from old English)(emphasis added here).

recklessly; and that the very nature of domestic abuse is such
that the risk of escalation, physical harm and even death is
substantial.  That risk remains extremely high regardless of
whether the perpetrator acts out in anger intentionally,
knowingly, recklessly or almost without knowing what he or she
is doing (perhaps because the perpetrator is too drunk, too
angry or both).  Where Maine makes criminal only the first three
possibilities, the Court should conclude that Booker was
correctly decided and that Armstrong and Voisine remain properly
convicted pursuant to § 922(g)(9) and the reasoning of
Castleman.

The sixth reason to reach that conclusion lies within the
footnote in Castleman that on the surface might lead some to
conclude that Booker's mens rea holding regarding § 922(g)(9) is
contrary to the holdings in opinions from 10 other circuit
courts. 134 S.Ct. at 1414 n.8.  A careful review of this
footnote however leads to the opposite conclusion when read in
light of Castleman's unequivocal reasoning regarding its
distinguishing interpretation of § 922(g)(9).  Footnote 8
therefore provides additional support for this Court's well-
reasoned Booker opinion.

Excepting Booker, not one of the other cases cited in
footnote 8 even addresses §§ 922(g)(9) or 921(a)(33).  All but

one of those cases, _Fernandez-Ruiz v. Gonzales_, 466 F.3d 1121

(9th Cir. 2006)(see _infra_ n.17), addressed the requisite mens

rea for a _felony_ crime of violence in applying the immigration-

related sentencing guideline enhancement in USSG § 2L1.2,[15] or

the requisite mens for an aggravated _felony_ pursuant to the

immigration statutes.[16]  One thing _Castleman_ made clear is that

_____

[15]See _United States v. Palomino Garcia_, 606 F.3d 1317, 1334-37
(11th Cir. 2010)(extending _Leocal_'s reasoning to conclude that
felony conviction for aggravated assault did not qualify as
felony crime of violence under § 2L1.2); _United States v.
Zuniga-Soto_, 527 F.3d 1110, 1117-18, 1121-24 (10th Cir.
2008)(extending _Leocal_ reasoning to hold that felony assault on
public servant did not qualify for § 2L1.2 increase); _United
States v. Portela_, 469 F.3d 496, 497-99 (6th Cir.
2006)(extending _Leocal_ to conclude that felony vehicular assault
did not qualify for § 2L1.2 increase).

[16]See _Jimenez-Gonzalez v. Mukasey_, 548 F.3d 557, 560-62 (7th Cir.
2008)(applying _Leocal_ to conclude that felony criminal
recklessness was not an aggravated felony pursuant to 8 U.S.C.
§§ 1227(a)(2)(iii) and 1101(a)(43)(F) and 18 U.S.C. § 16(b));
_United States v. Torres-Villalobos_, 487 F.3d 607, 614-17
(8th Cir. 2007)(same regarding felony second-degree
manslaughter); _Garcia v. Gonzales_, 455 F.3d 465, 468-69
(4th Cir. 2006)(same regarding felony reckless assault (striking
pedestrian while speeding)); _Oyebanji v. Gonzales_, 418 F.3d 260,
263-65 (3d Cir. 2005)(applying "ordinary meaning of the term
'violent'" pursuant to _Leocal_ to conclude that felony vehicular
homicide was not an aggravated felony for immigration
deportation purposes); _Jobson v. Ashcroft_, 326 F.3d 367, 375
(2d Cir. 2003)(concluding, in a pre-_Leocal_ opinion, that felony
second-degree manslaughter under New York statute did not
qualify as aggravated felony because the offense could be
committed by failing to act in some circumstances or
recklessly); _United States v. Chapa-Garza_, 243 F.3d 921, 927
(5th Cir. 2001)(holding, in a pre-_Leocal_ case, that Texas
driving-while-intoxicated conviction did not qualify as
aggravated felony under § 16(b)).

analyses for defining the elements or scope of a <u>misdemeanor</u> crime of domestic violence and a <u>felony</u> crime of violence, aggravated <u>felony</u> or violent <u>felony</u> are not the same. <u>See</u> <u>Castleman</u>, 134 S.Ct. at 1410 (common-law meaning of force fits perfectly in § 922(g)(9) but was a "comical misfit" for ACCA); <u>id.</u> at 1411.  The persons convicted of the potential aggravated felonies and felony crimes of violence addressed in the cases within note 8 are all prohibited from possession of firearms under 18 U.S.C. § 922(g)(1) as persons convicted of a felony-- regardless of whether their crimes were committed recklessly, intentionally or knowingly. <u>See</u> <u>Castleman</u>, 134 S.Ct. at 1412 (explaining that in determining whether predicate misdemeanor qualifies as crime of violence, the relevant comparison is not to the ACCA, but to the statutory scheme within § 922(g)).

   <u>Castleman</u> was clear that the meaning of domestic violence enacted within §§ 922(g)(9) and 921(a)(33) does not have the same definitional scope as felony crimes of violence, the ordinary meaning of violence *simpliciter* or even misdemeanor domestic violence defined elsewhere in federal law. <u>See</u> <u>id.</u> at 1411 (explaining that domestic violence is different from how one might characterize ordinary violence); <u>id.</u> at n.4 (distinguishing analysis in <u>Leocal</u> and opinions extending it to offensive touchings in other contexts).  The Court explained

that: "Nothing in [Castleman] casts doubt on those holdings [cited in n.4] because--as we explain--'domestic violence' encompasses a range of force broader than that which constitutes 'violence' *simpliciter*." Id. at 1411 n.4.

The Court, id., added "that federal law elsewhere defines 'domestic violence' in more limited terms: For example, a provision of the Immigration and Nationality Act defines a "'crime of domestic violence'" as 'any crime of violence (as defined by [18 U.S.C. § 16])' committed against a qualifying relation. 8 U.S.C. § 1227(a)(2)(E)(i)." Indeed, the legislative history reveals that the amendment to § 1227(a)(2)(E) that rendered some domestic-violence misdemeanants deportable was adopted within the same legislation that included the Lautenberg Amendment that became § 922(g)(9). H.R. Conf. Rep. 104-863, Div. C. Tit. III, Subtitle C., Sec. 350. Congress certainly could have chosen to define domestic violence for § 922(g)(9) purposes by direct resort to § 16, as it did for the immigration statute that most of the cases in Castleman's footnote 8 address, but it chose not to. See Smith v. United States, 508 U.S. 223, 229 (1993).

As Castleman explained with regard to the immigration statutes and their resort to § 16 to define domestic violence for deportation purposes: "Our view that 'domestic violence'

33

[for § 922(g)(9) purposes] encompasses acts that might not constitute 'violence' in a nondomestic context does not extend to a provision like this, which specifically defines 'domestic violence' by reference to a 'generic crime of violence.'" 134 S.Ct. at 1411 n.4.[17]  To be sure, Castleman was focused on the degree-of-force element, not mens rea.  But there is no logic in concluding that the analysis and opinions regarding violent felonies or crimes of violence as defined in the immigration statutes' resort to § 16 are irrelevant to defining the meaning of force for § 922(g)(9) purposes but highly relevant and dispositive on the mens rea element for the same offense: common-law battery.

---

[17]The only opinion, excepting Booker, in Castleman's n.8 that addressed a misdemeanor rather than felony conviction was Fernandez-Ruiz, 466 F.3d 1121.  There, id. at 1129-32, the majority applied Leocal's analysis and held that a conviction under Arizona law for misdemeanor domestic violence did not qualify as a crime of violence pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) and 18 U.S.C. § 16(a) so as to render the petitioner deportable.  For the reasons stated in Castleman, the holding and reasoning in Fernandez-Ruiz, along with those of the other opinions in n.8, are not relevant to defining the scope of § 922(g)(9)'s broader notion of domestic violence as encompassing common-law battery.

Moreover, the four-judge dissent in Fernandez-Ruiz, 466 F.3d at 1142 (Wardlaw, J., dissenting), aptly explained that the majority opinion ignored the nature of domestic violence as distinct from, i.e., assaulting a stranger. See also Castleman, 134 S.Ct. at 1412 (explaining that domestic violence is different).

Nor does this Court's recent opinion in <u>United States v.</u>
<u>Carter</u>, 2014 WL 1688909, at *8 (1st Cir. Apr. 30, 2014), warrant
a different conclusion.  For all of the above-explained reasons,
<u>Castleman</u> does not "cast[] doubt upon" <u>Booker</u>'s holding that a
conviction for a completed battery under Maine law, even if
committed recklessly, satisfies the meaning of common-law
battery and "misdemeanor crime of violence" for § 922(g)(9)
purposes. <u>But</u> <u>see</u> <u>Carter</u>, 2014 WL 1688909, at *8.  The 10
circuit court holdings in note 8 that <u>Carter</u> highlights, <u>id.</u>,
uniformly addressed the meaning of "use of force" in other
statutes that <u>Castleman</u> explicitly ruled were not comparable to
the meaning of that term in § 921(a)(33), which the Court
explained is broader. 134 S.Ct. at 1411 n.4, 1412 n.6.

As the <u>Carter</u> opinion correctly acknowledged, 2014 WL
1688909, at *8, <u>Castleman</u> did not decide the mens rea issue. <u>See</u>
<u>also</u> <u>id.</u> at n.7 (noting that the Supreme Court had likewise
"disavowed that its <u>Johnson</u> decision would control the
interpretation of" § 922(g)(9)).  In the Government's view,
therefore, the remand in <u>Carter</u>, 2014 WL 1688909, at *11, was
unnecessary.

Given that <u>Castleman</u> did not undermine <u>Booker</u>, let alone
overrule it, *stare decisis* should bind the Court to adhere to
its earlier rulings. <u>Cf.</u> <u>Carter</u>, 2014 WL 1688909, at *9 n.11

35

(citing <u>United States v. Rodríguez-Pacheco</u>, 475 F.3d 434, 441
(1st Cir. 2007)("stating that '[a] panel of this court is
normally bound to follow an earlier panel decision that is
closely on point'")).  The limited exception to that rule that
the <u>Carter</u> opinion noted as perhaps applicable here does not
apply.  This is because, contrary to <u>Carter</u>'s suggestion, 2014
WL 1688909, at *9 n.11, <u>Castleman</u>'s dicta and related citation
in n.8 to cases addressing felony crimes of violence and the
immigration statute's resort to § 16 to define aggravated felony
and domestic violence as violence *simpliciter* do not provide a
sound reason for believing that the <u>Booker</u> panel would reach a
different result.  Such a belief and result would be contrary to
the holding in <u>Castleman</u> that Congress meant to include common-
law batteries within § 922(g)(9) in particular and eviscerate,
with no basis for doing so, <u>Booker</u>'s sound parallel reasoning
that logically harmonizes the actus and mens reas for common-law
batteries under § 922(g)(9).

In any event, <u>Carter</u> does not foreclose this panel from
deciding that a recklessness mens rea continues to qualify
categorically as a § 922(g)(9) predicate after <u>Castleman</u> because
<u>Carter</u> avoided that issue and remanded for application of the
modified categorical approach. <u>See</u> <u>Carter</u>, 2014 WL 1688909,
at *9 & n.11.  Therefore, although in the Government's view the

36

remand in Carter was, for the above-stated reasons, unnecessary, it is not dispositive of the issue now before the Court.

On that issue, a seventh reason for concluding that a misdemeanor domestic-violence conviction under Maine law qualifies categorically as a § 922(g)(9) predicate, even if committed recklessly against the victim, is because courts have ruled that recklessness is sufficient even to render an offense a violent felony in some contexts. See United States v. Espinoza, 733 F.3d 568, 572-74 (5th Cir. 2013), cert. denied, 2014 WL 1659919 (Apr. 28, 2014)(holding that conviction for recklessly causing bodily injury in context of domestic-violence assault qualified as ACCA predicate); Wajda v. Holder, 727 F.3d 457, 458, 462-64 (6th Cir. 2013), cert. denied, 134 S.Ct. 1310 (Feb. 24, 2014)(declining to extend Leocal and Oyebanji, 418 F.3d 260, to petitioner's challenge to a removal order based on felony second-degree murder convictions resulting from drunk driving offense that could be committed recklessly because the relevant immigration statute did not specifically resort to § 16; the court thus resorted to generic definition of crime).

In Aguilar v. Attorney General, 663 F.3d 692, 693-95 (3d Cir. 2011), the court held that a sexual-assault conviction with a minimum mens rea of recklessness qualified as a felony crime of violence and aggravated felony pursuant to 8 U.S.C.

§§ 1101(a)(43)(F) and 1227(a)(2)(A)(iii) and 18 U.S.C. § 16(b).
The court rejected petitioner's claim that <u>Leocal</u> and other
cited authority warranted a blanket rule that no crime with a
recklessness mens rea could qualify as a felony crime of
violence. <u>Id.</u> at 696-98.  Analogizing the risk of confrontation
as akin to that of burglary, even if it is "a risk that may be
only recklessly undertaken," the court, <u>id.</u> at 698-702,
concluded that its holding was consistent with <u>Leocal</u> and the
petitioner was removable. <u>See</u> <u>also</u> <u>United States v. Guerrero-
Robledo</u>, 565 F.3d 940, 947 (5th Cir. 2009); <u>United States v.
Anderson</u>, 559 F.3d 348, 355-56 (5th Cir. 2009). <u>But</u> <u>see</u> <u>United
States v. Fish</u>, 2014 WL 715785, at *12 (1st Cir. Feb. 26, 2014)
(assault and battery with a deadly weapon under Massachusetts
statute, an offense that can be committed recklessly, does not
qualify as felony crime of violence under § 16(b) pursuant to
<u>Leocal</u>).[18]

---

[18]<u>Fish</u>, 2014 WL 715785, at *6-*12, bolsters the Government's
argument here that even similarly worded statutes, *i.e.*, the
ACCA and § 16(b), are not necessarily to be construed in the
same manner even when the analysis is a comparison among
felonies.  As <u>Castleman</u> made clear, comparing the threshold
elements of felony crimes of violence and violent felonies with
those applicable to a misdemeanor crime of domestic violence is
equally misplaced. 134 S.Ct. at 1410-12 & n.4 & n.6.  The same
is true of attempts to compare § 922(g)(9)'s threshold elemental
requirements with those of § 16(b) where Congress intentionally
eschewed resorting to § 16's definition of generic violence

These cases further suggest that <u>Booker</u> is by no means an outlier by holding that the meaning of <u>misdemeanor</u> crime of domestic violence under § 922(g)(9) encompasses a recklessness mens rea.  If, under certain circumstances, a recklessness mens rea can qualify a prior conviction as a violent felony or felony crime of violence, it should be rather "easy to describe as 'domestic violence'" for § 922(g)(9) purposes, <u>see</u> <u>Castleman</u>, 134 S.Ct. at 1412, a <u>misdemeanor</u> common-law battery committed recklessly against the victim.  It would be odd to hold otherwise, and to import the purposeful, violent aggressive employments of force required for violent felonies into the meaning of § 922(g)(9)--contrary to the common-law definition of battery that <u>Castleman</u> held applies here.

The result is that Voisine and Armstrong, severe recidivists with three assault convictions each and a history of domestic violence against women, were lawfully convicted in Maine for their common-law batteries and subsequently properly convicted in federal court under § 922(g)(9) for possession of firearms.  That conclusion is consistent with the plain meaning of § 922(g)(9), the legislative history regarding that law, and <u>Castleman</u>'s reasoning making it clear that resort to other

_____

*simpliciter* to define misdemeanor crime of domestic violence for § 922(g)(9) purposes. <u>Id.</u> at 1411 n.4.

statutes to define domestic violence for § 922(g)(9) purposes is inappropriate.

Regardless of whether Appellants intentionally, knowingly or recklessly abused their domestic partners, or did so, as Senator Lautenberg put it, "almost without knowing what" they were doing as they slapped, hit, pushed and grabbed their so-called loved ones, see Castleman, 134 S.Ct. at 1412, they remain properly convicted under § 922(g)(9). This Court therefore correctly decided Nason and Booker and should hold, again, consistent with Castleman's holding and reasoning, that a conviction under Maine's assault statute for what is necessarily a completed common-law battery qualifies categorically as a misdemeanor crime of domestic violence for purposes of § 922(g)(9). Appellants' convictions should thus be affirmed.

**CONCLUSION**

For the above-stated reasons, the Court should affirm. Dated at Portland, Maine this 27th day of May 2014.

Respectfully submitted,

THOMAS E. DELAHANTY II
United States Attorney

/s/ Renée M. Bunker
Renée M. Bunker
Assistant U.S. Attorney

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH
### TYPEFACE AND LENGTH LIMITATIONS

CA No. 12-1213, 12-1216

UNITED STATES OF AMERICA

v.

STEPHEN VOISINE

UNITED STATES OF AMERICA

v.

WILLIAM E. ARMSTRONG

TO BE INCLUDED IMMEDIATELY BEFORE THE
CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.      This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below (for example, Wordperfect 8, CG Times, 14 point):

_____

10 1/2 characters per inch, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and characters per inch below (for example, Wordperfect 8, Courier, 10 1/2 CPI):
        Courier New , 12 CPI
_____

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

❑      _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

☒      8,890 words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

❑      _____Lines of Mono spaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line print-out.

_____/s/ Renee M. Bunker_____
Signature of Filing Party

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2014, I electronically

filed Appellee's Supplemental Brief, with the Clerk of Court

using the CM/ECF system, which will send notification of such

filing to the following:

> Virginia Villa, Esq.
> Federal Defender's Office
> 23 Water Street, 2nd Floor
> Bangor, ME    04401
> (207) 992-4111
> Virginia_villa@fd.org


> /s/ Melody A. Richardson_____
> Paralegal Specialist