# United States Court of Appeals
## For the First Circuit

————————

Nos. 12-1213
     12-1216

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN L. VOISINE; WILLIAM E. ARMSTRONG III,

Defendants, Appellants.

————————

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

————————

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

————————

Virginia G. Villa, Assistant Federal Defender, Federal
Defender Office, for appellants.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

————————

January 30, 2015

————————

LYNCH, **Chief Judge**.  The Supreme Court has directed us, in light of United States v. Castleman, 134 S. Ct. 1405 (2014), to consider again our decision in these two cases that both defendants had indeed been convicted under state law of "misdemeanor crimes of domestic violence," as defined in 18 U.S.C. § 921(a)(33)(A), even though the state statutes allowed conviction based on a recklessness mens rea.  Armstrong v. United States, 134 S. Ct. 1759 (2014) (Mem.); see United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013); United States v. Voisine, 495 F. App'x 101 (1st Cir. 2013) (per curiam).  If so, then their motions to dismiss their federal charges for possessing firearms after such convictions, in violation of 18 U.S.C. § 922(g)(9), were properly denied.

Our answer is informed by congressional recognition in § 922(g)(9) of the special risks posed by firearm possession by domestic abusers.  "Domestic violence often escalates in severity over time . . . and the presence of a firearm increases the likelihood that it will escalate to homicide . . . ." Castleman, 134 S. Ct. at 1408.  It is also informed by the congressional choice in the federal sentencing scheme to honor each state's choice as to how to define its own crimes, through statutory text and judicial decision.

As we see it, this case turns on the unique nature of § 922(g)(9).  That section is meant to ensure that individuals who engage in the "seemingly minor act[s]" that actually constitute

domestic violence, like squeezing and shoving, may not possess a firearm. <u>Castleman</u>, 134 S. Ct. at 1412. This range of predicate acts is broader than that found in other federal prohibitions involving the use of physical force. Applying the teachings of <u>Castleman</u>, we find that Maine's definition of reckless assault fits within § 922(g)(9).

We affirm the denial of the motion to dismiss the indictment and information here. That means the conditional guilty pleas the defendants entered are valid and their sentences stand. The question is close and we rule narrowly.

I.

A. <u>Statutory Background</u>

As the Supreme Court observed in <u>Castleman</u>, 18 U.S.C. § 922(g)(9) was enacted to close a loophole. "While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors." <u>Castleman</u>, 134 S. Ct. at 1409. No ban prevented those domestic abusers from possessing firearms, yet there is a "sobering" connection between domestic violence and homicide. <u>Id.</u> The "manifest purpose" of § 922(g)(9), the Lautenberg Amendment to the Gun Control Act of 1968, was to remedy the "potentially deadly combination" of "[f]irearms and domestic strife." <u>United States</u> v. <u>Hayes</u>, 555 U.S. 415, 426-27 (2009).

-3-

Under § 922(g)(9), it is against federal law for any person "who has been convicted in any court of a misdemeanor crime of domestic violence" to "possess in or affecting commerce[] any firearm or ammunition."  In turn, a "misdemeanor crime of domestic violence" is defined in § 921(a)(33)(A) as an offense that (1) is a misdemeanor under federal, state, or tribal law, and (2) "has, as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim" or by a person in a similar domestic relationship with the victim.

The predicate offenses in these cases are convictions under Maine assault statutes.  Me. Rev. Stat. Ann. tit. 17-A, §§ 207(1)(A), 207-A(1)(A).  Under Maine law, a "person is guilty of assault if[ t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person."  Id. § 207(1)(A).  A violation of § 207 constitutes misdemeanor domestic violence assault if the "victim is a family or household member."  Id. § 207-A(1)(A).

Maine law explains that "[a] person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result."  Id. § 35(3)(A).  The statute goes on to give more meat to the "conscious disregard" definition.  It refers to disregard of a risk, "when viewed in light of the nature and

purpose of the person's conduct and the circumstances known to that person," that "involve[s] a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."  Id. § 35(3)(C).

B.  Facts

William E. Armstrong III was convicted in 2002 and 2008 of assaulting his wife in violation of Maine's misdemeanor assault statutes, Me. Rev. Stat. Ann. tit. 17-A §§ 207(1)(A), 207-A(1)(A). In May 2010, twenty-nine months after the last domestic assault conviction, the Maine State Police searched the Armstrong residence for drug paraphernalia and marijuana.  They discovered six firearms and ammunition.  The police notified the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), which executed a search. That search uncovered only ammunition, but Armstrong later explained that he had arranged for a friend to remove the guns. ATF agents observed the guns at the friend's home.

Armstrong was arrested and federally charged with being a prohibited person in possession of a firearm, in violation of § 922(g)(9).  The indictment listed Armstrong's 2008 domestic violence assault conviction as the predicate offense.

Stephen L. Voisine was convicted in 2003 and 2005 of assaulting a woman with whom he was in a domestic relationship, in violation of Maine's assault statute.  In 2009, acting on an

anonymous tip, state and local law enforcement officials arrested Voisine on the federal misdemeanor charge of killing a bald eagle in violation of 16 U.S.C. § 668(a). When conducting a background check, they discovered his 2003 misdemeanor simple assault. As Voisine had turned a rifle over to the police during the investigation, the criminal information charged him with violating § 922(g)(9) as well as § 668(a).

C. Procedural History

Both Armstrong and Voisine moved to dismiss, arguing that their indictment and information did not charge a federal offense and that § 922(g)(9) violated the Constitution. The district court denied the motions, and both defendants entered guilty pleas conditioned on the right to appeal the district court's decision.[1]

We consolidated Armstrong and Voisine's cases. In a January 18, 2013 opinion, we affirmed the district court's decisions. Armstrong, 706 F.3d at 1; see Voisine, 495 F. App'x. at 102 (incorporating the reasoning from Armstrong as there were "no pertinent factual differences" distinguishing the two cases). The defendants had argued that a misdemeanor assault on the basis of

---

[1] In February 2012, Armstrong was sentenced to three years of probation and a fine and special assessment totaling $2,600. Also in February 2012, Voisine was sentenced to a year and a day imprisonment on the § 922(g)(9) charge with two years supervised release, concurrent with nine months imprisonment and one year supervised release on the § 668(a) charge, and $125 in special assessments.

offensive physical contact, as opposed to one causing bodily injury, is not a "use of physical force," and, concordantly, not a "misdemeanor crime of domestic violence." Relying on United States v. Booker, 644 F.3d 12 (1st Cir. 2011), and United States v. Nason, 269 F.3d 10 (1st Cir. 2001), we held that § 922(g)(9) did not distinguish between violent and nonviolent convictions, and the statute included the offensive physical contact portion of the Maine statute within its definition of "physical force." Armstrong, 706 F.3d at 6; Voisine, 495 F. App'x at 101-02.

Second, the defendants argued that § 922(g)(9) violated the Second Amendment as applied to them. This argument was foreclosed by Booker, which denied an identical argument framed as a facial challenge. 644 F.3d at 22-26; see Armstrong, 706 F.3d at 7-8; Voisine, 495 F. App'x. at 101.

The defendants petitioned for certiorari. On March 31, 2014, the Supreme Court granted their petitions, vacated the judgments, and remanded "for further consideration in light of United States v. Castleman." Armstrong v. United States, 134 S. Ct. 1759 (2014) (Mem.). In Castleman, the Court had addressed the issue of whether the phrase "use of physical force" in § 921(a)(33)(A) required violence or could be satisfied by offensive touching. That issue had been the source of a circuit split. Castleman resolved the question in agreement with Nason, holding that "Congress incorporated the common-law meaning of

'force' -- namely, offensive touching -- in § 921(a)(33)(A)'s
definition of a 'misdemeanor crime of domestic violence.'"
Castleman, 134 S. Ct. at 1410. The Supreme Court left open
whether a conviction with the mens rea of recklessness could serve
as a § 922(g)(9) predicate. Id. at 1414. In footnote 8, the Court
stated, "the Courts of Appeals have almost uniformly held that
recklessness is not sufficient," and listed ten cases.[2] Id. at
1414 n.8. It then added, "But see United States v. Booker, 644
F.3d 12, 19-20 (C.A.1 2011)." Id. The footnote did not say Booker
was wrong. It gave no further definition of recklessness. Nor did
it account for the differences in the statutory sections being
interpreted in the other cases cited.

This case comes to us following the Supreme Court's
remand.


II.

In construing § 922(g)(9)'s applicability to a given
case, we use the "categorical approach." Under that approach the

---

[2] United States v. Palomino Garcia, 606 F.3d 1317, 1335-36
(11th Cir. 2010); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 560
(7th Cir. 2008); United States v. Zuniga-Soto, 527 F.3d 1110, 1124
(10th Cir. 2008); United States v. Torres-Villalobos, 487 F.3d 607,
615-16 (8th Cir. 2007); United States v. Portela, 469 F.3d 496, 499
(6th Cir. 2006); Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1127-32
(9th Cir. 2006) (en banc); Garcia v. Gonzales, 455 F.3d 465, 468-69
(4th Cir. 2006); Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d
Cir. 2005) (Alito, J.); Jobson v. Ashcroft, 326 F.3d 367, 373 (2d
Cir. 2003); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th
Cir. 2001).

elements of the predicate offense (here, the Maine assault statute) must be identical to or categorically within the description of the subsequent provision (here, § 922(g)(9)). See Castleman, 134 S. Ct. at 1413. Where, as here, the predicate statute is "divisible" into crimes with alternative sets of elements, we may consider whether the elements under which the defendant was convicted are still within the subsequent provision, an inquiry known as the "modified categorical approach." Id. at 1414. The government concedes that the record here of the state proceedings is too sparse to "discern under which prong of Maine's statute" the defendants were convicted, and they urge us against "resort[ing] to the modified categorical approach." For us to affirm, we must find that the Maine statute -- including the reckless acts it prohibits -- categorically fits within § 922(g)(9).

The defendants frame the issue as whether a reckless act can constitute a "use of physical force" and rely on cases interpreting statutes other than § 922(g)(9). We do not agree that is the proper way to frame the question. That framing is predicated on the notion that particular statutory language must be interpreted identically in different sections across the U.S. Code. To the contrary, context matters, as the Supreme Court demonstrated in Castleman itself. 134 S. Ct. at 1410-12. The question is whether Maine's definition of recklessness fits within § 921(a)(33)(A)'s phrase "use of physical force."

Section 921(a)(33)(A) is a provision crafted in the unique context of domestic violence, and it should be so interpreted.  <u>Castleman</u>, 134 S. Ct. at 1410-12 & n.4; <u>Booker</u>, 644 F.3d at 18-21.

      This reframing of the question clarifies our approach to the two arguments raised by the defendants: that <u>Castleman</u> footnote 8 decides this case, and that <u>Castleman</u>'s analysis of § 921(a)(33)(A) undermines our prior decisions. <u>Castleman</u>'s emphasis on context reinforces, rather than undermines, our earlier decision.

A.  Castleman <u>Footnote 8</u>

      The defendants read too much into <u>Castleman</u> footnote 8, which expressly does not resolve the question before us.  Nor is their argument made by reference to the cases cited for contrast in

the footnote.  Each of those cases[3] construes a different statutory definition, and all but one arose in a different context.

---

[3] All but one of the ten cases cited in Castleman footnote 8 as deciding the § 922(g)(9) mens rea issue in fact considered other statutes in other contexts and followed the reasoning of Leocal v. Ashcroft, 543 U.S. 1, 13 (2004).  Six cases analyzed 18 U.S.C. § 16.  In Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d Cir. 2005) (Alito, J.), the Third Circuit read Leocal to apply to § 16(b), which offered an alternative definition of "crime of violence" to § 16(a), and decided that reckless crimes cannot be crimes of violence under that section.  Three other cases from the footnote did the same.  See Garcia v. Gonzales, 455 F.3d 465, 467-69 (4th Cir. 2006) (interpreting § 16(b), as referenced in an immigration statute); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 559-62 (7th Cir. 2008) (same); United States v. Torres-Villalobos, 487 F.3d 607, 614-17 (8th Cir. 2007) (same).  Two more interpreted the same provision, but without relying on Leocal, which had yet to be decided.  See Jobson v. Ashcroft, 326 F.3d 367, 373-74 (2d Cir. 2003); United States v. Chapa-Garza, 243 F.3d 921, 926-27 (5th Cir. 2001).  All of these cases interpreted the term "crime of violence" as part of an aggravated felony statute, and Castleman is clear that the interpretive rules governing felonies do not apply to misdemeanor crimes of domestic violence.  134 S. Ct. at 1411. Three of the remaining four cases interpreted the term "use of physical force" in the context of a Sentencing Guidelines provision imposing an enhancement for defendants who were deported after committing a felony "crime of violence," U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A).  Each of those cases analyzed the provision by analogizing to § 16 and applying Leocal.  For example, in United States v. Palomino Garcia, the Eleventh Circuit explained that both § 16 and the Guidelines provision define the phrase "crime of violence," and they are "almost identically worded."  606 F.3d 1317, 1335 (11th Cir. 2010).  It then cited Leocal and the other § 16 cases mentioned above to conclude that a "use of physical force" cannot be reckless.  Id. at 1335-36; see also United States v. Portela, 469 F.3d 496, 498-99 (6th Cir. 2006); United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008). Even if § 16 were analogous to § 922(g)(9), that would not resolve the matter.  The Third Circuit has explained that some reckless convictions can serve as predicates for § 16 offenses, depending on the nature of the recklessness.  Aguilar v. Att'y Gen., 663 F.3d 692, 698-700 (3d Cir. 2011); cf. United States v. Espinoza, 733 F.3d 568, 572-74 (5th Cir. 2013) (allowing a reckless conviction to be a predicate for a violent felony under the Armed Career Criminal Act).

Footnote 8 begins by describing the issue as an open question, with a citation to Leocal v. Ashcroft, 543 U.S. 1, 13 (2004). In Leocal, the Supreme Court interpreted 18 U.S.C. § 16(a), the definition of the term "crime of violence." 543 U.S. at 8-10. Such a crime requires "use of physical force," and Leocal held that the term "use" suggests a mens rea higher than negligence, but it withheld judgment on whether recklessness is sufficient, Castleman, 134 S. Ct. at 1414 n.8; Booker, 644 F.3d at 19-20.

Considering context, section 16(a) is not analogous to the section which concerns us, § 922(g)(9). Castleman itself distinguished the term "use of force" in § 16(a), a provision for undifferentiated violent crimes, from the term "use of physical force" in § 922(g)(9)'s domestic violence provision. "Domestic violence" is a "term of art" that "encompasses a range of force broader than that which constitutes 'violence' simpliciter," including "acts that might not constitute 'violence' in a nondomestic context." Castleman, 134 S. Ct. at 1411 & n.4. A "crime of violence," by contrast, "suggests a category of violent, active crimes." Id. at 1411 n.4 (quoting Leocal, 559 U.S. at 140) (internal quotation mark omitted). As the Supreme Court explained, a "'squeeze of the arm [that] causes a bruise'" is "hard to describe as . . . 'violence'" within the meaning of § 16, but "easy to describe as 'domestic violence'" within the meaning of

§ 922(g)(9).  <u>Id.</u> at 1412 (alterations in original) (quoting <u>Flores</u>
v. <u>Ashcroft</u>, 350 F.3d 666, 670 (7th Cir. 2003)) (internal quotation
marks omitted).

     Unsurprisingly, the drafting history of § 922(g)(9)
indicates that "Congress expressly rejected" the § 16(a)
definition, instead developing the term "misdemeanor crime of
violence" that was "'probably broader' than the definition" in
§ 16.  <u>Booker</u>, 644 F.3d at 19 (citing a statement by Sen.
Lautenberg).  And where Congress wanted to define a domestic
violence crime as a § 16 crime of violence occurring in the
domestic context, it has done so -- even in the same legislation
that contained the Lautenberg Amendment. <u>See</u>, <u>e.g.</u>, 8 U.S.C.
§ 1227(a)(2)(E).  "That it did not do so here suggests, if
anything, that it did not mean to." <u>Castleman</u>, 134 S. Ct. at 1412
n.6.

     The only case cited in <u>Castleman</u> footnote 8 from the
domestic violence context is one in which Congress elected to
define the crime with reference to § 16.  In <u>Fernandez-Ruiz</u> v.
<u>Gonzales</u>, the Ninth Circuit considered whether a reckless
misdemeanor could serve as a predicate "crime of domestic
violence." 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc) (citing
8 U.S.C. § 1227(a)(2)(E)(i)).  Unlike § 922(g)(9), however, the
relevant statute in <u>Fernandez-Ruiz</u> defined "crime of domestic
violence" as a "crime of violence" (referencing § 16) committed

against someone in a domestic relationship with the perpetrator. Id. at 1124-25. The Ninth Circuit accordingly conducted a § 16 analysis, applying Leocal and cases from other circuits to reach its conclusion. Id. at 1127-32. But even that result did not follow so obviously from Leocal, as four judges dissented emphasizing the differences between domestic violence and other contexts. Id. at 1136 (Wardlaw, J., dissenting).

On remand of this case to us, the defendants' brief adds to the cases in the footnote by citing two other § 922(g)(9) cases, not mentioned in Castleman, which they say directly conflict with Booker. We disagree. In United States v. White, 258 F.3d 374 (5th Cir. 2001), the relevant predicate statute criminalized reckless "conduct that places another in imminent danger of serious bodily injury." Id. at 381. The court found that the statute did not require a completed "use of physical force," since it was satisfied by a risk of injury, and the statute extended beyond an "attempted use of force" because attempt liability requires specific intent rather than recklessness. Id. at 382-84. Rather than construing the phrase "use of physical force," as Booker did, White relied on principles of attempt liability to rule out reckless predicate crimes.

In United States v. Howell, 531 F.3d 621 (8th Cir. 2008), also added by the defendants, the predicate statute criminalized reckless "conduct which creates a grave risk of death or serious

-14-

physical injury to another." Id. at 624. The court found this provision to be a "catch-all provision applicable to innumerable factual situations," so a completed "use of physical force" is not always or ordinarily present. Id.

Simply put, we are aware of no case -- including the cases in Castleman footnote 8 -- in conflict with Booker's holding that a reckless misdemeanor assault satisfies § 922(g)(9)'s particular definition of a "misdemeanor crime of domestic violence." Rather, § 922(g)(9)'s unique context, as described in Castleman and supported by the legislative history, suggests that § 922(g)(9) should be interpreted more broadly than other provisions, including § 16.

B. Structure of Castleman

The defendants present a second argument, which is that Castleman's analytical approach to the term "use of physical force" means the conduct of neither defendant here could meet that standard. Castleman held that Congress intended to incorporate the common law meaning of "force" in § 921(a)(33)(A), the definitional provision for "misdemeanor crime of domestic violence." 134 S. Ct. at 1410. "[A]bsent other indication, 'Congress intends to incorporate the well-settled meaning of the common law terms it uses.'" Id. (quoting Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013)) (internal quotation mark omitted). As a result, the

statutory term "physical force" is satisfied by "the degree of force that supports a common-law battery conviction." Id. at 1413. The parties agree that, under Castleman, the term "use of physical force" also incorporates the common law mens rea for battery.

The parties approach this as a generalized question. They disagree about whether reckless acts could or could not constitute batteries at common law, and each side marshals support for its view. See, e.g., Johnson v. United States, 559 U.S. 133, 139 (2010); Lynch v. Commonwealth, 109 S.E. 427, 428 (Va. 1921); Commonwealth v. Hawkins, 32 N.E. 862, 863 (Mass. 1893); 2 Wayne R. LaFave, Substantive Criminal Law § 16.2(c)(2); 3 William Blackstone, Commentaries *120.

We decline the parties' invitation to define the mens rea of a common law battery independent of the interpretation Maine gives its own statute. Castleman explains that the term "use of physical force" includes "the type of conduct that supports a common-law battery conviction." 134 S. Ct. at 1411. Castleman also explains that Congress incorporated "the common-law meaning of 'force.'" Id. at 1410. Castleman holds that the term "use of physical force" includes both causing bodily injury and offensive contact. Defendants concede that reckless causation of bodily injury is a use of physical force. We see no reasoned argument that offensive physical contact does not similarly entail the use

-16-

of force simply because it is inflicted recklessly as opposed to intentionally.

We follow the statutory scheme in evaluating whether a conviction under the Maine statute categorically counts as a "misdemeanor crime of domestic violence."

1. The Scope of a "Misdemeanor Crime of Domestic Violence"

As Castleman explained, § 922(g)(9) is a statute with a particular purpose: to ensure that domestic abusers convicted of misdemeanors, in addition to felonies, are barred from possessing firearms.  134 S. Ct. at 1408-12.  "[B]ecause perpetrators of domestic violence are 'routinely prosecuted under generally applicable assault or battery laws,'" id. at 1411 (quoting Hayes, 555 U.S. at 427), we think Congress intended the firearm prohibition to apply to those convicted under typical misdemeanor assault or battery statutes.  See id. at 1411, 1413.  That encompasses assault statutes for those states that allow conviction with a mens rea of recklessness where recklessness is defined as including a degree of intentionality.  A victim of domestic violence often encounters the perpetrator again, and a broader reading of § 922(g)(9)'s mens rea requirement better ensures that a perpetrator convicted of domestic assault is unable to use a gun in a subsequent domestic assault.  If Congress had wanted to impose a higher mens rea, it could have done so explicitly, as it did in the immediately preceding section of the bill that established § 922(g)(9).  Booker, 644 F.3d at 18 & n.5.

-17-

This view is confirmed by the legislative history of § 922(g)(9). Senator Lautenberg explained that § 922(g)(9) was a broad prohibition covering "any person convicted of domestic violence," without reference to a particular mental state. 142 Cong. Rec. S10377-01 (1996). Another senator made statements to the same effect. <u>See</u> <u>id.</u> Additionally, Senator Lautenberg described the law's application to scenarios without clear intent, in which domestic arguments "get out of control," "the anger will get physical," and one partner will commit assault "almost without knowing what he is doing." 142 Cong. Rec. S11872-01 (Sept. 30, 1996). Such conduct may not be "knowing," but it nonetheless constitutes a "use" of physical force -- whether it causes offensive contact or bodily harm.

2. <u>Maine's Definition of "Recklessness"</u>

Whatever the common law meaning of battery as to recklessness, Maine characterizes recklessness as a mens rea involving a substantial amount of deliberateness and intent. The statutory definition requires that a person "<u>consciously</u> disregard[] a risk that the person's conduct will cause" the result. Me. Rev. Stat. Ann. tit. 17-A § 35(3)(A) (emphasis added). The disregard of the risk is "viewed in light of the nature and <u>purpose</u> of the person's conduct and the circumstances <u>known</u> to the person." <u>Id.</u> § 35(3)(C) (emphasis added). Further, it must

-18-

"involve a gross deviation" from the standard of reasonable care. Id.

Maine's definition of "recklessly," like its definition of "knowingly," includes an element of intentionality and specificity.  To act "knowingly" in Maine, the person must be aware that the result is "practically certain" to occur.  Id. § 35(2)(a). Maine's definitions of knowingly as contrasted with recklessly differ primarily in their description of the degree of the person's awareness of the likelihood that the result will occur.  Cf. 2 LaFave, Substantive Criminal Law, § 5.4(f).  To act knowingly and recklessly, but not negligently, the person must be aware of the risk: the recklessness definition requires reference to "the nature and purpose of the person's conduct and the circumstances known to the person."  Maine's Supreme Judicial Court has made clear that the recklessness inquiry focuses on the person's "subjective state of mind."  Stein v. Me. Criminal Justice Acad., 95 A.3d 612, 618 (Me. 2014) (quoting State v. Goodall, 407 A.2d 268, 280 (Me. 1979)) (internal quotation mark omitted); see State v. Hicks, 495 A.2d 765, 771 (Me. 1985) (comparing the subjective test for recklessness with the objective test for negligence).

For example, the Maine Supreme Judicial Court has affirmed a conviction for "act[ing] recklessly when [the defendant] shot a powerful handgun into the woods in a residential area and in the direction of his next-door neighbor's home, knowing where it

was located." State v. Kline, 66 A.3d 581, 584 (Me. 2013) (citing
Me. Rev. Stat. Ann. tit. 17-A § 35). It also affirmed a conviction
for reckless conduct with the use of a dangerous weapon when the
defendant "drove his van alongside the victim's vehicle, remaining
there . . .[,] used his van to push the victim's vehicle into heavy
oncoming traffic, and made contact with that vehicle at least
once." State v. York, 899 A.2d 780, 783 (Me. 2006).

        Maine's definition of recklessness includes a volitional
component. In this, it is like other states. See Fernandez-Ruiz,
466 F.3d at 1141 (Wardlaw, J., dissenting) (collecting cases).
Notwithstanding Leocal, some judges found that even § 16
encompassed reckless predicate convictions. In Fernandez-Ruiz,
four dissenting judges of the Ninth Circuit observed that Arizona's
definition of recklessness, like Maine's, requires that the person
"be aware of a substantial and unjustifiable risk and affirmatively
choose to act notwithstanding that risk." Id. Recklessness
includes an "volitional, active decision, which necessarily
involves 'a higher degree of intent than negligent or merely
accidental conduct.'" Id. (quoting Leocal, 543 U.S. at 9); accord
Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 449-50 (4th Cir. 2005)
(Niemeyer, J., dissenting) ("Unlike a person who accidentally
injures another person, a person who acts recklessly in bringing
about harm to another is aware of the nature of his conduct and
thus can be said to be 'actively employ[ing]' the physical force

-20-

that results in injury 'against another.'" (alteration in original) (quoting <u>Leocal</u>, 543 U.S. at 9)).

3. <u>Categorical Comparison</u>

We conclude that reckless assault in Maine is "use of physical force" within the meaning of a "misdemeanor crime of domestic violence."  As noted above, § 922(g)(9) is meant to embrace those seemingly minor predicate acts, occurring sometimes in moments of passion, where the perpetrator consciously disregarded a risk in light of known circumstances.  This often constitutes domestic violence.  Reckless assaults in Maine fit that congressional intent for § 922(g)(9), including the paradigm of a domestic assault as described by Senator Lautenberg.  As the dissenting judges on the Ninth Circuit, concerned with a different federal statute, explained:

> "Domestic abusers may be drunk or otherwise incapacitated when they commit their crimes, and they may plea bargain down from a felony to a misdemeanor or from a statute that requires a mens rea of intentionality to one that can be satisfied by recklessness.  But this does not alter the nature of domestic violence as a crime involving the use of force against someone in a domestic relationship . . . ."

<u>Fernandez-Ruiz</u>, 466 F.3d at 1139 (Wardlaw, J., dissenting).

Defendants' position assumes that a reckless act cannot be an act of domestic violence because it lacks volition.  But that is not true.  For example, suppose Maine convicts a husband for throwing a knife toward his wife, intending to instill fear rather

-21-

than to cause physical injury, but actually striking her.  The mens rea of the conviction would likely be recklessness: in light of the circumstances known to the husband, he consciously disregarded the risk of harm.  Such a reckless assault can "subject one intimate partner to the other's control," Castleman, 134 S. Ct. at 1411, and is the type of conduct included in § 922(g)(9) even though the husband did not intend to cause bodily injury or offensive contact.  Similarly, if Maine prosecutes and convicts a parent for assault for waving a lit cigarette near a child in anger, the cigarette touching and burning the child, that conviction in context may well be an act of domestic violence.

The defendants focus their analysis on assaults involving reckless causation of offensive physical contact, rather than bodily injury.  We do not see why that distinction is material to the analysis here.  The issue is whether § 922(g)(9) encompasses reckless uses of force, regardless of whether the use of force results in bodily injury or an offensive physical contact.  If the husband's knife grazes his wife or harms her grievously, it is an assault all the same.[4]

_____

[4] The dissent wrongly relies on our decision in United States v. Bayes, 210 F.3d 64 (1st Cir. 2000), for the proposition federal assault statute requires deliberate action.  Id. at 69 (citing 18 U.S.C. § 113(a)(5)).  Bayes says that "it is sufficient to show the defendant deliberately touched another in a patently offensive manner without justification or excuse."  Id.  In deciding that the statue did not require specific intent, Bayes did not pass on whether recklessness would satisfy the statute.  Further, the dissent relies on the rule of lenity, an argument not

As a practical matter, it is hard to identify a case of reckless assault in the domestic context that Maine would prosecute but that Congress did not intend to serve as a § 922(g)(9) predicate. See James v. United States, 550 U.S. 192, 208 (2007) (explaining that the categorical approach focuses on "the ordinary case," not "every conceivable factual offense covered by a statute"); United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014) ("[I]n assessing whether the elements of the candidate proposed as a predicate crime are overbroad, we need not consider fanciful, hypothetical scenarios."). Maine will not prosecute all "[m]inor uses of force." Castleman, 134 S. Ct. at 1412; see Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003) (Evans, J., concurring) ("[P]eople don't get charged criminally for expending a newton of force against victims. [The defendant] actually beat his wife . . . ."). But some grabbing and slapping "accumulat[es] . . . over time," "subject[ing] one intimate partner to the other's control." Castleman, 134 S. Ct. at 1412. When it eventually "draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a 'misdemeanor crime of domestic violence.'" Id. After all, not all assaults will serve as

_____

made by the defendants.

-23-

§ 922(g)(9) predicates, but only those occurring in the domestic context.

To be clear, we do not decide that, on the spectrum from negligence to intentional acts, recklessness is always closer to the latter. Cf. Fernandez-Ruiz, 466 F.3d at 1141-42 (Wardlaw, J., dissenting) ("Recklessness is a distinct mens rea, which lies closer to intentionality than to negligence."). We also do not decide that recklessness in the abstract is always enough to satisfy § 922(g)(9).[5] We decide only that the Maine definition is sufficiently volitional that it falls within the definition of "use of physical force" applied in § 922(g)(9). See Booker, 644 F.3d at 18.

C. Our Recent Decision in Carter Does Not Help the Defendants

In United States v. Carter, 752 F.3d 8 (1st Cir. 2014), we encountered similar facts to this case. We remanded for the district court to determine whether the defendant had indeed been convicted of a reckless assault. The opinion noted that Castleman "casts doubt" upon Booker, but it explicitly did "not decide" the

_____

[5] As recognized at 2 LaFave, Substantive Criminal Law, § 5.4 n.6, "usage of the term [recklessness] has not been consistent." See, e.g., United States v. Meeks, 664 F.3d 1067, 1070-71 & n.2 (6th Cir. 2012) (explaining that "recklessness" in Kentucky is a lower standard than "being aware of and consciously disregarding a substantial and unjustifiable risk"). As the dissent observes, while the Model Penal Code definition is similar to Maine's (though not identical), Puerto Rico's definition--until the new statute is in effect--has language quite different from the Maine statute.

question before this court.  Id. at 18 & n.11.  Now, squarely
presented with the issue and having reviewed Castleman, we resolve
the question left open by Carter.

                              III.

        The defendants make three constitutional arguments, none
of which are successful.

        First, the defendants renew their prior argument that
§ 922(g)(9) violates the Second Amendment as applied to them.  They
explicitly raise the argument only to preserve it, and for good
reason: it is "foreclosed by binding precedent in this circuit."
Carter, 752 F.3d at 13; see Armstrong, 706 F.3d at 7-8; Booker, 644
F.3d at 22-26.

        Second, the defendants offer a "gloss" on their earlier
argument.  They suggest that Castleman held that the link between
non-violent misdemeanors and domestic violence involving firearms
is extremely tenuous, and they argue that such a tenuous link
cannot support the law's constitutionality.  To the contrary,
Castleman explained that the link between non-violent misdemeanors
and domestic violence involving firearms is "sobering," and hardly
tenuous.  134 S. Ct. at 1409.

        The defendants also raise an argument outside the scope
of the Supreme Court's remand.  They claim that § 922(g)(9)
violates the Fifth Amendment, Sixth Amendment, and Ex Post Facto

                              -25-

Clause because the determination that the predicate crime involves domestic violence is made at the time of the § 922(g)(9) conviction, rather than at the time of the predicate conviction.

We have discretion to reexamine issues beyond the scope of the Supreme Court's specific remand order when "necessary to avoid extreme injustice." United States v. Burnette, 423 F.3d 22, 25 n.6 (1st Cir. 2005) (quoting United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005)) (internal quotation mark omitted).  But "[t]here is no injustice in refusing to reexamine a carefully considered decision based on the same arguments that we have already rejected." Id. at 25 n.6.  The Supreme Court has already rejected arguments very similar to the defendants' in  United States v. Hayes, 555 U.S. 415, 421 (2009).

The defendants argue that Hayes was implicitly overruled by a recent Supreme Court decision, Descamps v. United States, 133 S. Ct. 2276 (2013).  Hayes held that the determination that an earlier conviction involved a domestic relationship is an element of § 922(g)(9), not the predicate conviction.  555 U.S. at 418. Descamps limited the extent to which courts can look at the facts underlying the predicate conviction to determine whether they fit the subsequent conviction, under the modified categorical approach. 133 S. Ct. at 2281-82.  The defendants argue that, as in Descamps, the subsequent court may not evaluate the predicate conviction to

determine a fact about it -- here, whether it involved a domestic relationship.

We reject this argument. Whether the predicate conviction involved a domestic relationship is not a fact about the predicate conviction discerned through application of the modified categorical approach, in violation of <u>Descamps</u>. It is an element proved anew in the § 922(g)(9) proceeding.


IV.

The question before us is a narrow one. We are asked to decide whether a conviction for reckless assault against a person in a domestic relationship in Maine constitutes a federal "misdemeanor crime of domestic violence." Congress in passing the Lautenberg Amendment recognized that guns and domestic violence are a lethal combination, and singled out firearm possession by those convicted of domestic violence offenses from firearm possession in other contexts. <u>Castleman</u> recognizes as much.

For the reasons stated above, we <u>affirm</u> the judgments of guilt.

**So ordered.**


**-Dissenting Opinion Follows-**

-27-

TORRUELLA, Circuit Judge, Dissenting. The majority fails to adequately justify its departure from the Supreme Court's direction and the analogous decisions of our sister circuits. Indeed, the Supreme Court's message is clear. In United States v. Castleman, 134 S. Ct. 1405 (2014), the Court noted that we are the only outlying circuit on this question: our prior precedent is inconsistent with every other circuit court to consider the issue. See id. at 1414 n.8 (contrasting our past position with that of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals, which have "uniformly held that recklessness is not sufficient" to "constitute a 'use' of force"). The Court then remanded the instant cases for reconsideration in light of Castleman, see United States v. Armstrong, 134 S. Ct. 1759 (2014), implicitly suggesting that we bring our holdings in line with the other federal circuit courts of appeals. We are obligated to heed the Supreme Court's direction. See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) ("[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement."). Not only are the Supreme Court's instructions mandatory, but the legal reasoning and analysis in the cases cited by the Court are also correct.

On remand, this case requires us to answer, at the very least, one question of statutory interpretation: whether a Maine conviction for the "reckless" causation of an "offensive physical contact" necessarily involves the "use or attempted use of physical force" as required to establish a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9). The majority fails to persuasively explain why, <u>in all cases</u>, the merely reckless causation of offensive physical contact categorically <u>must</u> involve the "use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A), particularly in light of the host of cases strongly suggesting otherwise. As explained herein, these cases hold that the "use" of physical force requires the active or intentional employment of force, which cannot be satisfied by merely reckless conduct.

Confronting this question, we are not acting upon an empty stage; rather, we must start with the backdrop painted by the Supreme Court in <u>Castleman</u>, which is the basis for the instant remand. Indeed, the <u>Castleman</u> Court questioned whether the "merely reckless causation" of even bodily injury -- much less offensive physical contact -- could constitute the "use" of force, noting that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient," because the "use" of force requires a greater degree of intentionality. <u>Castleman</u>, 134 S. Ct. at 1414 & n.8.

Although the majority opinion correctly observes that those circuit court cases involved different statutes, the operative language is nearly identical and the majority fails to persuasively explain why the result should be different here. All of the analogous cases involved the "use" of "force," and most interpreted 18 U.S.C. § 16. See id. at 1414 n.8 (listing cases). Several of these cases[6] analyzed § 16(a), which defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). That language is materially indistinguishable, as relevant here, from the Lautenberg Amendment's definition of a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 922(g)(9); id. § 921(a)(33)(A). "[W]hen Congress uses the same language in two statutes having similar purposes, . . . it is appropriate to presume that Congress intended that text to have the same meaning

---

[6] See United States v. Torres-Villalobos, 487 F.3d 607, 616–17 (8th Cir. 2007) (holding that Minnesota second-degree manslaughter can be committed recklessly without the intentional use of force, and therefore is not a crime of violence under § 16(a)); Fernández-Ruiz v. Gonzales, 466 F.3d 1121, 1123 (9th Cir. 2006) (holding that reckless conduct cannot constitute the "use" of force for purposes of § 16(a)); García v. Gonzales, 455 F.3d 465, 468 (4th Cir. 2006) (reasoning that the "use" of "physical force" requires the intentional employment of physical force, and therefore holding that a New York second-degree reckless assault conviction is "beyond the scope" of § 16(a)).

in both statutes." <u>Smith</u> v. <u>City of Jackson, Miss.</u>, 544 U.S. 228, 233 (2005).[7]

The majority opinion concedes that this case presents a "close" question. <u>Ante</u>, at 3. I agree. Given the Supreme Court and circuit court cases interpreting similar statutes and holding that merely reckless conduct is insufficient to constitute the "use" of physical force, I believe that the rule of lenity also forecloses the defendants' convictions here. Indeed, it is a "familiar principle" that "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity'" towards the accused. <u>Skilling</u> v. <u>United States</u>, 561 U.S. 358, 410 (2010)

---

[7] Moreover, the cases involving § 16(b) provide even stronger support for the defendants' position here, as § 16(b) involves language more susceptible than that of § 16(a) or the Lautenberg Amendment to a reading that encompasses reckless conduct. <u>Compare</u> 18 U.S.C. § 16(b) (defining a "crime of violence" as a felony that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"), <u>with</u> Model Penal Code § 2.02(2)(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."). Yet most courts nonetheless have rejected arguments that § 16(b) can be satisfied by a predicate offense with a <u>mens</u> <u>rea</u> of recklessness. <u>See</u>, <u>e.g.</u>, <u>Jobson</u> v. <u>Ashcroft</u>, 326 F.3d 367, 373 (2d Cir. 2003) ("[T]he verb 'use' in section 16(b), particularly when modified by the phrase 'in the course of committing the offense,' suggests that section 16(b) 'contemplates only <u>intentional</u> conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will <u>intentionally</u> employ physical force.'" (internal quotation marks omitted) (quoting <u>Dalton</u> v. <u>Ashcroft</u>, 257 F.3d 200, 208 (2d Cir. 2001))).

(quoting <u>Cleveland</u> v. <u>United States</u>, 531 U.S. 12, 25 (2000)).[8]  The rule of lenity bars courts from giving the text of a criminal statute "a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant."  <u>Burrage</u> v. <u>United States</u>, 134 S. Ct. 881, 891 (2014).  In my view, by permitting a conviction based on the reckless causation of offensive physical contact, the government and the majority seek to give the "use . . . of physical force" a meaning different from that phrase's ordinary meaning.  The ordinary meaning of the "use" of physical force requires the <u>intentional</u> employment of force, and not the merely accidental, negligent, or reckless use of such force.  <u>Cf.</u> <u>Leocal</u> v. <u>Ashcroft</u>, 543 U.S. 1, 4 (2004) (giving an ordinary and natural reading to the phrase "'use . . . of physical force against the person or property of another,'" and holding that this phrase requires "a higher degree of intent than negligent or merely accidental conduct" (quoting 18 U.S.C. § 16(a))); <u>id.</u> (explaining that "'use' requires active employment," and reasoning that "a person would 'use . . . physical force against' another when

_____

    [8] In addition to its acknowledgment that this is a "close" case, the majority's reliance on legislative history also suggests that the statutory text is ambiguous.  <u>Cf.</u> <u>Tenn. Valley Auth.</u> v. <u>Hill</u>, 437 U.S. 153, 184 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.").  Furthermore, the contrasting results reached by the First Circuit and our sister circuits on the interpretation of the phrase "use . . . of physical force" provide additional evidence of that statutory text's ambiguity.

pushing him . . . [but not] by stumbling and falling into him");
García v. Gonzales, 455 F.3d 465, 468 (4th Cir. 2006) (holding that
"the use . . . of physical force" requires the intentional
employment of physical force).  Moreover, given that the Supreme
Court has stated that (1) "the merely reckless causation of bodily
injury . . . may not be a 'use' of force," and (2) "the Courts of
Appeals have almost uniformly held that recklessness is not
sufficient" to constitute the "use" of force, Castleman, 134 S. Ct.
at 1414 & n.8, I cannot see how the proper application of the rule
of lenity permits affirmance of the defendants' convictions.

        I express no opinion here on whether the "use" of
physical force is satisfied by either the reckless causation of
bodily injury or the intentional or knowing causation of offensive
physical contact.  Rather, I confine my inquiry to one subsumed
offense under the Maine assault statutes: the reckless causation of
offensive physical contact.  Although the majority states that they
fail to see why the distinction between "bodily injury" and
"offensive physical contact" "is material to the analysis here,"
ante, at 22, I explain herein why that distinction matters.  See
infra Section II(B)(1).  Namely, even if recklessness were a
sufficient mens rea for purposes of bodily injury, a conviction

-33-

under the Lautenberg Amendment nonetheless cannot rest on the reckless causation of offensive physical conduct in Maine.[9]

The Supreme Court has stated that, under the Lautenberg Amendment, Congress classified as a "'misdemeanor crime of domestic violence'" "the type of conduct that supports a common-law battery conviction." Castleman, 134 S. Ct. at 1411. The Supreme Court has further explained that "the common-law crime of battery . . . consisted of the intentional application of unlawful force against the person of another." Johnson v. United States, 559 U.S. 133, 139 (2010) (emphasis added); see also United States v. Bayes, 210 F.3d 64, 69 (1st Cir. 2000) ("[T]he common law provided that an assault committed by way of a battery did not require an intent to cause or to threaten an injury as long as the defendant touched

---

[9] All of the examples cited by the majority -- squeezing, shoving, a squeeze of the arm that causes a bruise, shooting a powerful handgun in the direction of a neighbor's home, driving a van to make contact with another vehicle and to push the victim's vehicle into heavy oncoming traffic, a husband throwing a knife towards his wife intending to instill fear but actually striking her, and waving a lit cigarette near a child in anger so that the cigarette touches and burns the child, ante, at 3, 12, 19-20, 21-22 -- involve intentional conduct that is reckless as to the result, which in nearly all of those examples is bodily injury. By contrast, the Maine statutes at issue here permits conviction for far less culpable conduct: merely reckless conduct that is also reckless as to the result of offensive physical contact. In so doing, the majority conflates mens rea as to the result with mens rea as to the underlying conduct that causes the result. It is this distinction that explains why common-law battery permits conviction for (1) intentional conduct that is reckless as to the result of bodily injury and (2) intentional conduct that is intentional as to the result of bodily injury or offensive touching, but does not permit conviction for (3) reckless conduct that is merely reckless as to the result of an offensive touching.

another in a <u>deliberately offensive</u> manner without a valid reason to do so.") (emphasis added); <u>State</u> v. <u>Rembert</u>, 658 A.2d 656, 658 (Me. 1995) (stating that "[u]npermitted and <u>intentional</u> contacts . . . [are] actionable as an offensive contact") (emphasis added); <u>cf.</u> Wayne R. LaFave, 2 <u>Substantive Criminal Law</u> § 16.2(c)(2) n.32 (2d ed.) ("[W]ith the tort of battery an intention to injure or touch offensively is needed"); <u>Black's Law Dictionary</u> 182 (10th ed. 2014) (defining tortious battery as a "nonconsensual, <u>intentional</u>, and offensive touching of another without lawful justification") (emphasis added).  To trigger a violation of the Lautenberg Amendment, therefore, the relevant precedent counsels that the offensive touch must be caused intentionally and not merely recklessly.  By contrast, the Maine statutes at issue here permit conviction for recklessly causing an offensive touch.[10]  Therefore, a conviction under either of the Maine assault statutes implicated here does not categorically establish a violation of the Lautenberg Amendment.  Given that the record does not permit a conclusion that the defendants' Maine convictions rested on a subsumed offense that

---

[10] To recklessly cause an offensive physical contact in Maine, a person must consciously disregard a risk that his or her conduct will cause physical contact -- something more than a mere touching -- that a reasonable person would find to be offensive under the circumstances.  <u>See</u> Me. Rev. Stat. tit. 17-A, § 35(3) (defining recklessness); <u>id.</u> § 207(1)(A) (simple assault); <u>id.</u> § 207-A(1)(A) (domestic violence assault).  Therefore, to sustain a Maine conviction for this subsumed offense, the defendant need not intend that physical contact occur nor intend that the contact be considered offensive.

<u>does</u> constitute a violation of the Lautenberg Amendment, the federal convictions at issue here cannot stand.[11]

---

[11] Despite the foregoing, the majority opinion offhandedly rejects the relevance of the <u>mens rea</u> for battery under the common law. <u>See</u> <u>ante</u>, at 16 ("The parties agree that, under <u>Castleman</u>, the term 'use of physical force' also incorporates the common law mens rea for battery. . . . They disagree about whether reckless acts could or could not constitute batteries at common law, and each side marshals support for its view. We decline the parties' invitation to define the mens rea of a common law battery . . . .") (citations omitted). At the same time, the majority cites <u>Castleman</u> for the proposition that the "use" of physical force includes offensive contact, due to the common-law meaning of "force" for purposes of battery. <u>Id.</u> The majority opinion thus relies on the <u>actus reus</u> for battery under the common law, but simultaneously rejects the relevance of the accompanying <u>mens rea</u> for common-law battery. <u>See</u> <u>id.</u> In so doing, the majority fails to sufficiently justify its decision to "decline" the parties' "invitation" to consider the import of the <u>mens rea</u> of common-law battery to the question at bar. Such a decision requires justification, particularly because the Supreme Court in <u>Castleman</u> also extended an "invitation" for us to consider this issue when it explained that Congress intended to classify as a "'misdemeanor crime of domestic violence' the type of conduct that supports a common-law battery conviction." <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1411.

Nothing in <u>Castleman</u> suggests that the phrase "type of conduct" refers only to the <u>actus</u> <u>reus</u> for battery and not also the accompanying <u>mens</u> <u>rea</u>. Indeed, the contrary conclusion makes far more sense. If Congress meant to incorporate the common-law crime of battery, it most likely meant to incorporate both the <u>actus reus</u> and its accompanying <u>mens rea</u>. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Zhen Zhou Wu</u>, 711 F.3d 1, 18 (1st Cir. 2013) ("'In the criminal law, both a culpable <u>mens rea</u> and a criminal <u>actus reus</u> are generally required for an offense to occur.'" (quoting <u>United States</u> v. <u>Apfelbaum</u>, 445 U.S. 115, 131 (1980))); <u>United States</u> v. <u>Cornelio-Pena</u>, 435 F.3d 1279, 1286 (10th Cir. 2006) (stating that "most crimes . . . require[] both <u>mens rea</u> and <u>actus reus</u>"); <u>cf.</u> <u>United States</u> v. <u>Freed</u>, 401 U.S. 601, 607-08 (1971) (explaining that when "Congress borrows terms of art" from the common law, "it presumably knows and adopts the cluster of ideas that were attached to each borrowed word" (internal quotation marks and citation omitted)).

After giving careful consideration to the issues involved, engaging in the necessary statutory interpretation and legal analysis, and applying the relevant precedent, I heed the Supreme Court's direction and follow the lead of our sister circuits in disagreeing with the majority's conclusion. Therefore, I respectfully dissent.

## I.  <u>Legal Background</u>

### A.  The Statutory Framework

#### 1.  The Lautenberg Amendment

The defendants here were charged with violating the Lautenberg Amendment to the Gun Control Act of 1968, now codified at 18 U.S.C. § 922(g)(9) (the "Lautenberg Amendment" or "§ 922(g)(9)"). Under the Lautenberg Amendment, it is unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(9). For these purposes, a "misdemeanor crime of domestic violence" is further defined in 18 U.S.C. § 921(a)(33)(A) as an offense that:

> (I) is a misdemeanor under Federal, State, or Tribal law; and

> (ii) has, <u>as an element</u>, the <u>use or attempted use of physical force</u>, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or

> guardian, or by a person similarly situated to
> a spouse, parent, or guardian of the victim[.]

Id. § 921(a)(33)(A) (emphases added).

### 2. The Relevant Maine Assault Statutes

The defendants argue that the relevant Maine assault statutes do not "ha[ve], as an element, the use or attempted use of physical force." See id. Under Maine law, a defendant is guilty of "domestic violence assault" if (1) the defendant violates the Maine simple assault provision, and (2) "the victim is a family or household member." See Me. Rev. Stat. tit. 17-A, § 207-A(1)(A).

Turning to the simple assault provision in the Maine Criminal Code, a person is guilty of "assault" if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." See § 207(1)(A). Thus, there are six different, divisible permutations of the Maine simple assault statute, each of which can form the basis for a section 207 assault conviction. United States v. Carter, 752 F.3d 8, 17-18 (1st Cir. 2014) ("The Maine general-purpose assault statute is divisible into six permutations of subsumed offenses, based on the combination of one element from each of two categories: (1) mens rea ('intentionally, knowingly or recklessly'), and (2) actus reus ('causes bodily injury or offensive physical contact to another person')." (quoting § 207(1)(A))). These six subsumed offenses are illustrated in the following chart:

**The six variants of the Maine simple assault statute:**

| Maine simple assault statute, Me. Rev. Stat. tit. 17-A, § 207(1)(A) | | Actus Reus | |
|---|---|---|---|
| | | . . . causes bodily injury. | . . . causes offensive physical contact. |
| Mens Rea | Intentionally . . . | 1. Intentionally causes bodily injury. | 4. Intentionally causes offensive physical contact |
| | Knowingly . . . | 2. Knowingly causes bodily injury. | 5. Knowingly causes offensive physical contact. |
| | Recklessly . . . | 3. Recklessly causes bodily injury. | 6. Recklessly causes offensive physical contact. |

In Maine state court, Armstrong was convicted of Maine domestic-violence assault under section 207-A, and Voisine was convicted of Maine simple assault under section 207.[12] These prior convictions served as the predicate offenses for the defendants' § 922(g)(9) charges, which are the subject of the instant appeal. A simple assault statute lacking a domestic-relationship element (such as Voisine's prior offense of conviction in Maine) can nonetheless serve as the predicate offense for a misdemeanor crime of domestic violence, so long as the domestic-relationship element

---

[12] Violation of either provision -- the general assault offense or "domestic violence assault" -- constitutes a "Class D" crime under the Maine Criminal Code, which is equivalent to a misdemeanor. See State v. Allen, 377 A.2d 472, 475 n.4 (Me. 1977) ("We therefore deem Class D and Class E crimes to be the Criminal Code equivalents of misdemeanors.").

is proved in the subsequent federal prosecution.  See United States
v. Hayes, 555 U.S. 415, 418 (2009) (holding "that the domestic
relationship, although it must be established beyond a reasonable
doubt in a § 922(g)(9) firearms possession prosecution, need not be
a defining element of the predicate offense").

**B.  The Categorical and Modified Categorical Approaches**

Given the foregoing statutory framework, we must analyze
whether the elements of the Maine assault statute necessarily
fulfill the requirements of the Lautenberg Amendment.  In cases
such as this -- where a court must decide whether a prior
conviction for an earlier offense (like assault) satisfies one of
the elements of the offense in a subsequent prosecution (here, for
example, whether the earlier offense "has, as an element, the use
. . . of physical force," 18 U.S.C. § 921(a)(33)(A)) -- the court
determines whether it is appropriate to apply the categorical
approach or the modified categorical approach.

**1.  The Categorical Approach**

In Taylor v. United States, 495 U.S. 575, 600 (1990), the
Supreme Court described the categorical approach, under which
courts "look[] only to the statutory definitions of the prior
offenses, and not to the particular facts underlying those
convictions."  See also United States v. Dávila-Félix, 667 F.3d 47,
56 (1st Cir. 2011) (same).  If the "statutory definition" of the
prior offense necessarily meets the requirements of the subsequent

offense at issue, then the court can determine that a conviction for the prior offense <u>categorically</u> constitutes a valid predicate offense for purposes of the later prosecution. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1414.

### 2. The Modified Categorical Approach

Some statutes, like the Maine assault statutes at issue here, are "divisible": they "set[] out one or more elements of the offense in the alternative." <u>See</u> <u>Descamps</u> v. <u>United States</u>, 133 S. Ct. 2276, 2281 (2013). For these statutes, some permutations or variants of the subsumed offenses may categorically meet the requirements of the subsequent offense, whereas others may not. Accordingly, for these divisible statutes, courts may apply the "modified categorical approach" to determine which variant or subsumed offense formed the basis for the prior conviction, and thus whether that prior conviction can serve as a valid predicate offense for the subsequent prosecution. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1414. Under this approach, a court may "consult[ ] the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms" -- in order to "determine which statutory phrase was the basis for the conviction" under such a divisible statute. <u>Johnson</u>, 559 U.S. at 144. These documents are often called "<u>Shepard</u> documents," after

-41-

Shepard v. United States, 544 U.S. 13 (2005) (plurality opinion).
See, e.g., Carter, 752 F.3d at 19-20 & 19 n.12.

### 3. Application

Under established precedent not called into doubt by
Castleman and not challenged here, certain subsumed offenses under
the Maine assault statutes (such as the intentional or knowing
causation of bodily injury) are unequivocally valid predicate
offenses for the Lautenberg Amendment. See Castleman, 134 S. Ct.
at 1415 ("It is impossible to cause bodily injury without applying
force in the common-law sense," and "the knowing or intentional
application of force is a 'use' of force."). If the Shepard
documents showed that the defendants' prior assault convictions
were for those particular subsumed offenses, for example, then we
would be able to apply the modified categorical approach and affirm
the defendants' Lautenberg Amendment convictions without reaching
the recklessness issue. See Carter, 752 F.3d at 18 n.11 (reasoning
that under the modified categorical approach, if the Shepard
documents showed that the defendant's prior Maine conviction was
for intentional or knowing conduct, then the court could affirm his
conviction under the Lautenberg Amendment). The parties agree,
however, that the Shepard documents for Armstrong's and Voisine's
underlying Maine convictions are inconclusive and do not reveal
which variants of the Maine assault statutes served as the bases

for their convictions. Therefore, the modified categorical approach cannot resolve this appeal.

Rather, we must apply the categorical approach to determine whether the statutory definitions of the Maine assault provisions necessarily include the "use or attempted use of physical force." See 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9); see also Castleman, 134 S. Ct. at 1414. Under the categorical approach, if any one of the six variants of the Maine assault statute does not necessarily constitute the "use . . . of physical force," then the defendants' convictions must be reversed. Put differently, to affirm the defendants' convictions under the categorical approach, all of the subsumed offenses under the Maine statute must have the "use or attempted use of physical force" as an element. 18 U.S.C. §§ 921(a)(33)(A); see also United States v. Holloway, 630 F.3d 252, 257 (1st Cir. 2011) (stating that under the categorical approach, "the [prior] conviction may only serve as a predicate offense if each of the possible offenses of conviction would qualify" as individually satisfying the offense in the subsequent prosecution (citing Shepard, 544 U.S. at 26)). The defendants focus their argument on the sixth and least severe subsumed offense: the "reckless" causation of "offensive physical contact." Therefore, we must apply the governing precedent to decide whether this statutory definition necessarily involves the "use . . . of physical force."

-43-

C.  **The Supreme Court's Decisions in <u>Leocal</u> and <u>Johnson</u>**

          The Supreme Court's opinions in <u>Leocal</u> v. <u>Ashcroft</u>, 543 U.S. 1 (2004), and <u>Johnson</u> v. <u>United States</u>, 559 U.S. 133 (2010), provided foundational reasoning for subsequent cases relevant to this appeal.  In both of these cases, the Supreme Court engaged in statutory interpretation to determine whether the offenses underlying prior state convictions had, as an element, the "use" of physical force as required for purposes of a subsequent federal proceeding.

          1.  **<u>Leocal</u>**

          In <u>Leocal</u>, the Supreme Court examined a similar question to that facing us today, regarding parallel language in the statutory definition of a "crime of violence" under 18 U.S.C. § 16(a).  Under that statute, a "crime of violence" includes "an offense that has as an element the <u>use, attempted use, or threatened use of physical force</u> against the person or property of another."  18 U.S.C. § 16(a) (emphasis added).  The petitioner in <u>Leocal</u> had previously been convicted in Florida state court for driving under the influence of alcohol (DUI) and causing serious bodily injury.  <u>Leocal</u>, 543 U.S. at 3.  The Supreme Court held that the petitioner's DUI conviction was not a crime of violence under 18 U.S.C. § 16.  <u>Id.</u> at 4.  In so holding, the Court explained that "'use' requires active employment," reasoning that "a person would 'use . . . physical force against' another when pushing him . . .

[but not] by stumbling and falling into him." Id. Giving the operative phrase in 18 U.S.C. § 16(a) its ordinary and natural reading, in context, the Leocal Court held that the "'use . . . of physical force against the person or property of another'" requires "a higher degree of intent than negligent or merely accidental conduct." Id. (quoting 18 U.S.C. § 16(a)). The Court also interpreted parallel language in 18 U.S.C. § 16(b), giving that language "an identical construction" and "requiring a higher mens rea than the merely accidental or negligent conduct involved in a DUI offense." Id. at 11.

Additionally, the Court considered the fact that it was "ultimately . . . determining the meaning of the term 'crime of violence.'" Id. It reasoned that "[t]he ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person . . . suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses." Id. Therefore, the Court concluded that "[i]nterpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." Id. Importantly for the instant case, the Leocal Court held only that negligent and accidental conduct did not constitute the "use" of force and thus a crime of violence under 18 U.S.C. § 16; the Court did not reach the question whether reckless conduct would be

-45-

sufficient.  Id. at 13 ("This case does not present us with the
question whether a state or federal offense that requires proof of
the reckless use of force against a person or property of another
qualifies as a crime of violence under 18 U.S.C. § 16.").

    **2. Johnson**

In Johnson, the Supreme Court considered a related
question: "whether the Florida felony offense of battery by
'[a]ctually and intentionally touch[ing]' another person, Fla.
Stat. § 784.03(1)(a), (2) (2003), 'has as an element the use . . .
of physical force against the person of another,' 18 U.S.C.
§ 924(e)(2)(B)(I), and thus constitutes a 'violent felony' under
the Armed Career Criminal Act, § 924(e)(1)." Johnson, 559 U.S. at
135 (alterations in original).  The Court observed that "the
element of 'actually and intentionally touching' under Florida's
battery law is satisfied by any intentional physical contact, 'no
matter how slight.'" Id. at 138 (quoting State v. Hearns, 961 So.
2d 211, 218 (Fla. 2007)).  Even "[t]he most 'nominal contact,' such
as a 'ta[p] . . . on the shoulder without consent,'" is sufficient
to constitute a violation of the Florida law.  Id. (second and
third alterations in original) (quoting Hearns, 961 So. 2d at 219).

In determining the definition of "physical force" under
the Armed Career Criminal Act ("ACCA"), the Court sought to give
the phrase "its ordinary meaning" while keeping in mind the context
of its inquiry: defining the statutory category of violent

-46-

felonies.  Id. at 138-40.  In that context, the Court thought "it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person."  Id. at 140.  The Johnson Court explicitly limited its holding to the ACCA, asserting that its decision would not extend to the Lautenberg Amendment.  See id. at 143-44 ("We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony.'  We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence.  The issue is not before us, so we do not decide it.").

**D.  Pre-Castleman First Circuit Precedent: Nason, Booker, Armstrong I, and Voisine I**

Prior to the Supreme Court's decision in Castleman, the defendants' arguments were squarely foreclosed by First Circuit precedent; it is this precedent that the Supreme Court has instructed us to reconsider.

In United States v. Nason, 269 F.3d 10 (1st Cir. 2001), which also considered the interplay between the Maine simple assault statute and the Lautenberg Amendment, we held that the actus reus of "offensive physical contact" necessarily involved the "use or attempted use of physical force," id. at 11-12, 21.  Synthesizing the definitions of "physical force" from Black's Law Dictionary and other dictionaries, we determined that "physical

-47-

force may be characterized as power, violence, or pressure directed against another person's body." Id. at 16. We thus held that § 922(g)(9) does not require that the predicate offense involve "bodily injury," but rather can be satisfied by "any physical force" -- including offensive physical contact -- "regardless of whether that force resulted in bodily injury or risk of harm." Id. at 16-18. Therefore, Nason established that either actus reus prong of the Maine assault statute -- bodily injury or offensive physical contact -- could serve as a valid predicate conviction for purposes of § 922(g)(9). Id. at 21 ("[B]oth [actus reus] variants of assault regulated under Maine's general-purpose assault statute necessarily involve the use of physical force.").

Whereas Nason focused on the actus reus variants of the Maine assault statute for purposes of the Lautenberg Amendment, we later focused on the mens rea variants in United States v. Booker, 644 F.3d 12 (1st Cir. 2011). In Booker, we rejected the argument that only an intentional offense could constitute a misdemeanor crime of domestic violence under § 922(g)(9). Id. at 13-14. The appellants in Booker sought to rely on the Supreme Court's decisions in Leocal and Johnson, analogizing to the definition of "crime of violence" under 18 U.S.C. § 16 and the definition of "violent felony" under the ACCA, 18 U.S.C. § 924(e). Id. at 18-19. We held that those other statutes were not sufficiently analogous to dictate the result in Booker, reasoning that, for example,

"[w]hereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, § 922(g)(9) addresses an acute risk to an identifiable class of victims -- those in a relationship with a perpetrator of domestic violence." Id. at 21. We thus turned to the "plain, unambiguous language of § 922(g)(9)," finding that "the statutory definition of 'misdemeanor crime of domestic violence' does not prescribe an intentional mens rea." Id. (quoting 18 U.S.C. § 922(g)(9)). Therefore, we held "that an offense with a mens rea of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)." Id. (quoting 18 U.S.C. § 922(g)(9)).

On the initial appeal in this case, United States v. Armstrong, 706 F.3d 1, 5 (1st Cir. 2013) ("Armstrong I"), vacated, 134 S. Ct. 1759 (2014), we considered Armstrong's arguments that the Lautenberg Amendment's prohibition on gun ownership does not apply to non-violent offensive physical contact. We found the defendant's argument on this issue to be squarely foreclosed by our prior decisions in Nason and Booker. Id. at 2 (citing Booker, 644 F.3d 12; Nason, 269 F.3d 10). On that basis, we rejected Armstrong's statutory interpretation arguments and affirmed the decision of the district court. Id. at 2-6, 8. That same day, we issued an opinion in United States v. Voisine, 495 F. App'x 101 (1st Cir. 2013) (per curiam) ("Voisine I"), vacated sub nom.

_Armstrong_ v. _United States_, 134 S. Ct. 1759 (2014).  In a per curiam opinion, we stated that Voisine had raised "the exact same arguments" as those raised in _Armstrong I_.  _Id._  Because there were "no pertinent factual differences distinguishing" _Voisine I_ from _Armstrong I_, we incorporated _Armstrong I_'s reasoning into the _Voisine I_ per curiam opinion and affirmed the district court's decision.  _Id._ at 102.  Both defendants appealed our decisions in to the Supreme Court.

**E.  Castleman and Its Aftermath**

      **1.  The Supreme Court's Castleman Opinion**

Approximately one year later, while the petitions for writs of certiorari were pending in _Armstrong I_ and _Voisine I_, the Supreme Court issued its opinion in _Castleman_, 134 S. Ct. 1405.  The defendant in _Castleman_ had pleaded guilty to a Tennessee offense for "intentionally or knowingly caus[ing] bodily injury to" the mother of his child.  _Id._ at 1408-09.  After federal authorities subsequently learned that he was selling firearms on the black market, Castleman was indicted on two counts of violating the Lautenberg Amendment.  _Id._ at 1409.  He argued that the Tennessee statute did not have the use, or attempted use, of physical force as an element of the offense.  _Id._ (citing 18 U.S.C. § 921(a)(33)(A)(ii)).  The Sixth Circuit affirmed the dismissal of Castleman's convictions on the § 922(g)(9) counts, holding that the Tennessee conviction was not a valid predicate offense because

Castleman might have been convicted for "'caus[ing] a slight, nonserious physical injury with conduct that cannot be described as violent.'" See id. at 1409-10 (quoting United States v. Castleman, 695 F.3d 582, 590 (6th Cir. 2012)). The Supreme Court reversed, reasoning that Castleman had pleaded guilty to intentionally or knowingly causing bodily injury, which "necessarily involves the use of physical force." Castleman, 134 S. Ct. at 1414.

The Court explained that "physical force" for purposes of § 922(g)(9) encompasses "the common-law meaning of 'force' -- namely, offensive touching." Id. at 1410. The Court explained that "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context" -- acts like slapping, shoving, pushing, grabbing, hair-pulling, and spitting. Id. at 1411 & n.5.

The Castleman Court further explained that there are two main categories of assault or battery laws generally used to prosecute domestic abusers: "those that prohibit both offensive touching and the causation of bodily injury, and those that prohibit only the latter." Id. at 1413. Interpreting "physical force" to exclude a mere "offensive touching" would have rendered the Lautenberg Amendment "ineffectual in at least 10 States -- home to nearly thirty percent of the Nation's population -- at the time of its enactment." Id. (footnote omitted). Therefore, the Court

held that the "physical force" requirement is satisfied "by the degree of force that supports a common-law battery conviction" -- including an offensive touching.  <u>Id.</u>

The Court considered whether it could apply the "categorical approach" articulated in <u>Taylor</u>, 495 U.S. 575, to resolve the issue, asking if the elements of the Tennessee statute necessarily met the requirements of § 922(g)(9). <u>Castleman</u>, 134 S. Ct. at 1414.  If the answer were in the affirmative, then the Court could conclude that "a domestic assault conviction in Tennessee categorically constitutes a 'misdemeanor crime of domestic violence.'"  <u>Id.</u>

Expressing skepticism regarding such a categorical conclusion, the Court stated that "[i]t does not appear that every type of assault defined by [the Tennessee statute] necessarily involves 'the use or attempted use of physical force, or the threatened use of a deadly weapon.'"  <u>Id.</u> at 1413-14 (quoting 18 U.S.C. § 921(a)(33)(A)).  For example, the Court reasoned that under the Tennessee statute, "[a] threat . . . may not necessarily involve a deadly weapon, and the merely reckless causation of bodily injury . . . may not be a 'use' of force."  <u>Id.</u> at 1414. The Court noted that in <u>Leocal</u> it had "reserved the question whether a reckless application of force could constitute a 'use' of force," <u>id.</u> at 1414 n.8 (citing <u>Leocal</u>, 543 U.S. 1), but emphasized that "the Courts of Appeals have almost uniformly held that

recklessness is not sufficient," id. (contrasting our holding in Booker, 644 F.3d 12, with the decisions of ten of our sister courts of appeals: the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).  The Court declined to hold that a conviction under the Tennessee statute categorically constitutes a misdemeanor crime of domestic violence for purposes of § 922(g)(9).  See id. at 1414.

On the heels of its Castleman opinion, the Supreme Court vacated our prior decisions in Voisine I and Armstrong I, and it remanded those two cases for reconsideration in light of its decision in Castleman.  See Armstrong I, 134 S. Ct. 1759 ("Judgment vacated, and case remanded to the United States Court of Appeals for the First Circuit for further consideration in light of United States v. Castleman, [134 S. Ct. 1405] (2014).").  There is little disagreement that this remand order calls for us to consider the impact of Castleman's Footnote Eight on our prior precedent, particularly Booker and Nason.  In that footnote, the Supreme Court contrasted our Booker holding with the decisions of ten of our sister circuits, noting that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to "constitute a 'use' of force."  Id. at 1414 n.8.

## 2. The First Circuit's <u>Carter</u> Opinion

In the wake of <u>Castleman</u> and the Supreme Court's remand of the instant cases, we issued an opinion in <u>United States</u> v. <u>Carter</u>, 752 F.3d 8 (1st Cir. 2014). Among other arguments, the defendant in that case, Wayne Carter, raised similar issues to those examined in <u>Armstrong I</u>. <u>Id.</u> at 9-10. Carter had been convicted in 1997 of a misdemeanor assault in Maine, after his live-in girlfriend at the time, Annie Eagan, told police officers that Carter spit in her face and shoved her right shoulder. <u>Id.</u> at 10. Eagan reported that she was not hurt, that she did not want Carter arrested or charged with an offense, and that she only wanted him removed from the house. <u>Id.</u> at 10-11. Nonetheless, the Maine state prosecutor charged Carter under Maine's general-purpose assault statute, to which Carter pleaded guilty and was sentenced to time served: thirty days in jail. <u>Id.</u> at 11.

Approximately thirteen years later, in 2010, Carter obtained a loan by pawning a rifle that he had inherited from his dead father. <u>Id.</u> at 10. A records check and further investigation in connection with his pawning activities revealed Carter's prior misdemeanor assault conviction. <u>Id.</u> The pawn shop's records showed that Carter had pawned and redeemed three separate rifles multiple times between 2007 and 2010. <u>Id.</u> at 11. All of the rifles were inherited from his father. <u>Id.</u> at 11 n.2. "The firearms were kept in a locked cabinet at his mother's house, and

Carter only physically possessed the rifles in connection with pawning them." Id. Based on the foregoing, Carter was charged in a one-count indictment for violating the Lautenberg Amendment's prohibition on gun possession by those convicted of a misdemeanor crime of domestic violence. Id. at 11. After entering a conditional guilty plea, reserving his right to appeal, Carter was sentenced by the district court to be imprisoned for twelve months and one day -- a downward variance from the bottom of the Sentencing Guidelines range: eighteen months. Id. at 9, 12. He then appealed, arguing, among other things, that the commission of simple assault by recklessly causing offensive physical contact does not constitute the "use . . . of physical force" as required to establish a misdemeanor crime of domestic violence under the Lautenberg Amendment. Id. at 10.

On appeal, we noted that although this argument was previously foreclosed by our holding in Booker, "the Supreme Court's recent decision in Castleman casts doubt upon this holding." Id. at 18 (citing Castleman, 134 S. Ct. at 1414 & n.8). In support of that assertion, we cited the Supreme Court's statements that "'the merely reckless causation of bodily injury under [the Tennessee assault statute] may not be a "use" of force,'" id. (alteration in original) (quoting Castleman, 134 S. Ct. at 1414), and that "'the Courts of Appeals have almost uniformly held that recklessness is not sufficient' to 'constitute

a "use" of force,'" id. (quoting Castleman, 134 S. Ct. at 1414
n.8).  Although Castleman had not directly overruled our prior
decision in Booker, we noted that these statements from the Supreme
Court provided a "'sound reason' for thinking that the Booker panel
might well 'change its collective mind' in light of Castleman."
Id. at 18 n.11 (quoting United States v. Rodríguez-Pacheco, 475
F.3d 434, 442 (1st Cir. 2007)).

     Despite the Supreme Court's statements in Castleman
calling into question our prior precedent on this question, it was
unnecessary in Carter to answer the recklessness issue, because
Carter potentially could have been resolved via the modified
categorical approach: the underlying Shepard documents might have
"ultimately show[n] that Carter's conviction was under one of the
other two mens-rea prongs of the statute -- 'intentionally' or
'knowingly.'"  Id.  We thus observed that under Castleman, "the
validity of Carter's § 922(g)(9) conviction may depend on which
mens-rea prong of the Maine general-purpose assault statute served
as the basis for his guilty plea and conviction."  Id. at 18.
Examining the record for Shepard documents that could determine
which variant of the Maine assault statute was the basis for
Carter's conviction, we found the record incomplete and
undeveloped: it was unclear whether such documents existed.  See
id. at 20-21 ("It is not clear . . . whether there are any other
'approved' Shepard documents or comparable judicial records

available with respect to Carter's prior assault conviction. . . . [T]he record is insufficiently developed to determine which variant of the Maine general-purpose assault statute served as the basis for Carter's conviction."). Accordingly, we "remand[ed] the case to the district court to allow the parties to further develop the record on this issue," consistent with the Supreme Court's opinion in <u>Castleman</u>. <u>Id.</u> at 21. In so doing, we reserved the question presented by the Supreme Court's vacatur of <u>Armstrong I</u> and <u>Voisine I</u> in light of <u>Castleman</u>, allowing us to squarely address that issue in the instant remand.

### 3. District Courts' Application of <u>Castleman</u> and <u>Carter</u>

To date, three different district court judges in the First Circuit have applied the reasoning of <u>Castleman</u>'s Footnote Eight regarding these issues; all three opinions concluded that a recklessly committed Maine assault does not necessarily involve the "use" of physical force and thus is not categorically a misdemeanor crime of domestic violence. <u>United States</u> v. <u>Sales</u>, No. 2:13-CR-137-NT, 2014 WL 3405658 (D. Me. July 11, 2014); <u>United States</u> v. <u>Carter</u>, No. 2:10-cr-00155-GZS, 2014 WL 3345045 (D. Me. July 8, 2014); <u>United States</u> v. <u>Hines</u>, No. 1:12-cr-00204-JAW, 2014 WL 1875164 (D. Me. May 9, 2014). Each of these three cases is examined below, in the order that they were decided.

### a. **Hines**

The first district court case to apply the decisions in _Castleman_ and _Carter_ to these issues was _Hines_, 2014 WL 1875164. The defendant in _Hines_ had pleaded guilty in Maine state court to violating the domestic violence assault statute; the _Shepard_ documents revealed no further details regarding the conduct underlying this offense. _Id._ at *2. Before the district court, the defendant argued, among other things, that a _mens rea_ of recklessness could not satisfy the "use of force" requirement under the Lautenberg Amendment. _Id._ at *4. The district court noted that pre-_Castleman_ First Circuit precedent had previously foreclosed this argument, and "[t]he question is how _Castleman_ affects the resolution of the issues [the defendant] has raised." _Id._ at *7.

Examining _Castleman_'s Footnote Eight, the court observed that "[t]his footnote, which cited ten circuit courts as concluding that reckless conduct did not constitute 'use of physical force,' strongly hinted that the First Circuit's _Booker_ decision was an outlier." _Id._ at *8. The district court then considered the Supreme Court's vacatur of _Armstrong I_ in light of _Castleman_. _Id._ The court explained that "[r]eading Supreme Court tea leaves is chancy, but the First Circuit decision in _Armstrong I_ was consistent with _Castleman_ except for the Circuit Court's brief recklessness analysis." _Id._ Thus, the court found that "[i]t is

a short logical step to conclude that the reason the Supreme Court vacated the First Circuit decision in <u>Armstrong I</u> was to pull the First Circuit in line with the other ten circuit courts in the recklessness analysis." <u>Id.</u>  Accordingly, on the basis of <u>Castleman</u>, the vacatur of <u>Armstrong I</u>, and <u>Carter</u>, the district court concluded that it is "questionable" whether a Maine conviction for domestic assault -- "without more" -- qualifies as a valid predicate conviction for the Lautenberg Amendment.  <u>Id.</u> at *9.

### b. <u>Carter</u>

Following our remand instructions in <u>Carter</u>, the district court permitted the parties to further develop the record with <u>Shepard</u> documents to determine which subsumed variant of the Maine assault statute formed the basis of Carter's prior state misdemeanor conviction.  <u>Carter</u>, 2014 WL 3345045, at *6.  The only additional document available was a transcript of Carter's plea colloquy in Maine state court, in which Carter's attorney stated that "'discovery shows that this was no more than a push on the right shoulder, that it was nothing more serious than that.'"  <u>Id.</u> at *7.  Accordingly, on the basis of all the <u>Shepard</u> documents, the district court was "unable to identify the offense of Carter's conviction."  <u>Id.</u>

The district court cited <u>Hines</u>, including the statement that "'[i]t is a short logical step to conclude that the reason the

Supreme Court vacated the First Circuit decision in [Armstrong I]
was to pull the First Circuit in line with the other ten circuit
courts in the recklessness analysis.'" Id. at *5 (quoting Hines,
2014 WL 1875164, at *8). The court further observed that "while
the statement in Castleman was via dictum in a footnote, 'it is
much more than an offhand comment. . . . [C]arefully considered
statements of the Supreme Court, even if technically dictum, must
be accorded great weight and should be treated as authoritative.'"
Id. at *6 (quoting Crowe v. Bolduc, 365 F.3d 86, 92 (1st Cir.
2004)) (internal quotation marks omitted). Stating that it "cannot
ignore the guidance of the Supreme Court and the First Circuit in
Castleman, Armstrong and Carter," the district court concluded that
"Carter's conviction may only stand if it was premised on more than
accidental, negligent or reckless conduct." Id. Faced with the
absence of any Shepard documents permitting such a finding, the
district court granted Carter's motion to dismiss the indictment,
holding that his 1997 conviction could not serve as a predicate
misdemeanor for the Lautenberg Amendment. Id. at *7.

### c. Sales

Sales, 2014 WL 3405658, is the third and, to date, final
district court case to apply Castleman and Carter. The defendant
in that case, Kenneth Sales, had pleaded guilty in Vermont state
court to one count of "assault-simple-mutual affray" because he
"engaged in a fight or scuffle entered into by mutual consent."

Id. at *1 (citing Vt. Stat. Ann. tit. 13, § 1023).  In that plea colloquy, the Vermont Superior Court judge explained that Sales "recklessly caused bodily injury to a person, and that it was in a fight or scuffle entered into by mutual consent." Id.  The judge further explained that "there was a physical altercation between [Sales] and [his girlfriend] . . . and that in the course of it [he] at least recklessly . . . caused bodily injury to her, being . . . a scratch or a sort of cut that she received." Id. Explaining the actus reus of bodily injury, the judge stated that "[b]odily injury is any sort of injury, it doesn't have to be a broken bone or anything like that, it can be a bruise, a cut, kind of anything that hurts." Id.  With respect to the mens rea, the judge explained that "[r]ecklessly means you did not have to intend a particular result, but you engaged in conduct that was not what a reasonable person would do in these circumstances, and had a very high risk that the result would happen." Id.  Subsequent to this assault conviction in Vermont state court, Sales was charged with a violation of the Lautenberg Amendment in federal district court in Maine. Id. at *2.

The district court reviewed the governing precedent, including Castleman, Carter, and the previous two district court decisions described above, Hines and Carter.  Id. at *2-3. Observing that the Castleman court emphasized Leocal's holding that "use" requires active employment, the district court further

highlighted that "[t]he Supreme Court also pointed out that <u>Booker</u> is out of step with other circuit courts that have held that recklessness is not sufficient to constitute a 'use' of force." <u>Id.</u> at *3 (citing <u>Castleman</u>, 134 S. Ct. at 1414 n.8). Accordingly, the district court opined that "the Supreme Court's remand of Armstrong 'in light of <u>Castleman</u>' is fairly construed as a directive to the First Circuit to reconsider whether an assault committed recklessly is sufficient to meet the federal definition of a misdemeanor crime of domestic violence." <u>Id.</u> The district court agreed with Chief Judge Woodcock that "'[r]eading Supreme Court tea leaves is chancy,'" <u>id.</u> at *4 (quoting <u>Hines</u>, 2014 WL 1875164 at *8), but concluded that "it is hard to miss the message here," <u>id.</u> The court observed that the First Circuit may yet "decide that recklessness is sufficient," but that it would be "presumptuous" for the district court "to make that determination." <u>Id.</u> Therefore, the district court dismissed the defendant's indictment. <u>Id.</u>

## II. <u>Discussion</u>

On remand, the relevant inquiry is whether the "reckless" causation of "offensive physical contact" under Maine law necessarily constitutes the "use or attempted use of physical force" for purposes of the Lautenberg Amendment. <u>Compare</u> Me. Rev. Stat. tit. 17-A, § 207, <u>with</u> 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9). As a matter of statutory interpretation, we need to compare the

text of each side of the equation: (a) the definition of the "reckless" causation of "offensive physical conduct" under the Maine assault statutes; and (b) the definition of the "use . . . of physical force" under the federal Lautenberg Amendment. The former inquiry is a question of Maine state law, while the latter is a question of federal law. Applying the relevant precedent, this discussion concludes that the reckless causation of offensive physical contact in Maine does not necessarily constitute the "use" of physical force and thus is not categorically a "misdemeanor crime of domestic violence" under the Lautenberg Amendment.

## A. The Meaning of the "Reckless" Causation of "Offensive Physical Contact" Under Maine Law

### 1. The Meaning of "Reckless"

Under the applicable definition in the Maine Criminal Code, "[a] person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result." Me. Rev. Stat. tit. 17-A, § 35(3)(A). Additionally, "the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." Id. § 35(3)(C).

The majority opinion describes this definition of "recklessness" as involving "a substantial amount of deliberateness

and intent." Ante, at 18.  To support this assertion, the majority
follows the government's brief in emphasizing that the definition
requires that a person "consciously" disregard the risk involved,
and that this disregard involves a "gross deviation" from the
standard of reasonable and prudent conduct.  Id. at 18-19.  Relying
on this language, the government argues that "recklessness lies
rather close to 'knowingly'" on the "volitional scale," and that
recklessness "is arguably part and parcel of 'willfully.'"
Continuing, the government asserts that "[r]ecklessly is more akin
to deliberately or knowingly."  I disagree.

        Contrary to the claim that the Maine definition of
recklessness involves "a substantial amount of deliberateness and
intent," the Maine definition is in fact a textbook definition of
recklessness, falling squarely within the standard definitions of
recklessness in various jurisdictions and as defined by multiple
authorities.  Indeed, the Maine definition is materially
indistinguishable from the definition of recklessness in the Model
Penal Code.  Cf. Model Penal Code § 2.02(2)(c) ("A person acts
recklessly with respect to a material element of an offense when he
consciously disregards a substantial and unjustifiable risk that
the material element exists or will result from his conduct. The
risk must be of such a nature and degree that, considering the
nature and purpose of the actor's conduct and the circumstances
known to him, its disregard involves a gross deviation from the

standard of conduct that a law-abiding person would observe in the actor's situation."). This Model Penal Code definition contains all of the elements and precise language highlighted by the majority as supposedly establishing "a substantial amount of deliberateness and intent." <u>Cf.</u> <u>ante</u>, at 18-19 ("<u>consciously</u>" disregards, "nature and <u>purpose</u> of the person's conduct and the circumstances <u>known</u> to [him]," and "gross deviation" from the standard of care) (emphases supplied by the majority).

As revealed in the chart below, the Maine definition of recklessness is also consistent with the equivalent definitions in the Model Penal Code, <u>Black's Law Dictionary</u>, and the majority of First Circuit jurisdictions.

| Source, Authority, or Jurisdiction | Definition |
|---|---|
| Model Penal Code § 2.02(2)(c) (emphases added) | "Recklessly. A person acts recklessly with respect to a material element of an offense when he <u>consciously disregards</u> a <u>substantial and unjustifiable risk</u> that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a <u>gross deviation</u> from the standard of conduct that a law-abiding person would observe in the actor's situation." |
| Black's Law Dictionary 1462 (10th ed. 2014) (emphases added) | "reckless, adj. . . . Characterized by the creation of a <u>substantial and unjustifiable risk of harm</u> to others and by a <u>conscious (and sometimes deliberate) disregard</u> for or indifference to that risk; heedless; rash. • Reckless conduct is much more than mere negligence: it is a <u>gross deviation</u> from what a reasonable person would do. See recklessness. . . . Cf. careless; wanton . . . ." |

| Black's Law Dictionary 1462 (10th ed. 2014) (emphasis added) | "recklessness, n. . . . 1. Conduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and <u>consciously takes the risk</u>. • Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing. 2. The state of mind in which a person does not care about the consequences of his or her actions. -- Also termed heedlessness. Cf. wantonness." |
|---|---|
| Maine | "A person acts recklessly with respect to a result of the person's conduct when the person <u>consciously disregards</u> a risk that the person's conduct will cause such a result. . . . [T]he disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a <u>gross deviation</u> from the standard of conduct that a reasonable and prudent person would observe in the same situation." Me. Rev. Stat. tit. 17-A, § 35(3)(emphases added) (subsections defining "recklessly" under the Maine Criminal Code section setting out "Definitions of culpable states of mind"); see also <u>Stein</u> v. <u>Me. Criminal Justice Acad.</u>, 95 A.3d 612, 618 (Me. 2014) (applying the foregoing statutory definitions of "recklessly" to the Maine general-purpose assault statute, § 207(1)(A)). |

| Massachusetts | "Reckless failure to act involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another." <u>Sandler</u> v. <u>Commonwealth</u>, 419 Mass. 334, 644 N.E.2d 641, 643 (Mass. 1995). "[R]eckless conduct involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind." <u>Id.</u>, 644 N.E.2d at 644.<br><br>"To prove reckless battery, the Commonwealth must establish '(1) that the defendant's conduct involve[d] a high degree of likelihood that substantial harm will result to another, or that it constitute[d] . . . disregard of probable harmful consequences to another and (2) that, as a result of that conduct, the victim suffered some physical injury.'" <u>United States</u> v. <u>Holloway</u>, 630 F.3d 252, 261 (1st Cir. 2011) (quoting <u>Commonwealth</u> v. <u>Welch</u>, 16 Mass. App. Ct. 271, 450 N.E.2d 1100, 1102–03 (Mass. App. Ct. 1983)).<br><br>"To constitute wanton or reckless conduct, as distinguished from mere negligence, grave danger to others must have been apparent and the defendant must have chosen to run the risk rather than alter his conduct so as to avoid the act or omission which caused the harm." <u>Commonwealth</u> v. <u>Welansky</u>, 316 Mass. 383, 55 N.E.2d 902, 910 (Mass. 1944) (internal quotation marks omitted). |
| --- | --- |
| New Hampshire | "'Recklessly.' A person acts recklessly with respect to a material element of an offense when he is aware of and <u>consciously disregards</u> a <u>substantial and unjustifiable risk</u> that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the <u>circumstances known</u> to him, its disregard constitutes a <u>gross deviation</u> from the conduct that a law-abiding person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication or hypnosis also acts recklessly with respect thereto." N.H. Rev. Stat. § 626:2 (II)(c) (emphases added). |

| Puerto Rico | <u>Old</u>: "[W]hen the actor has foreseen or is conscious that there exists a high probability that his conduct will produce the criminal act."  P.R. Laws Ann. tit. 33, § 5035 (2012) (unofficial translation supplied).<br><br><u>New</u>: "A person acts recklessly when he is conscious that his conduct generates a substantial and unjustified risk that the legally prohibited result or circumstance will be produced."  2014 P.R. Laws No. 246, art. 12 (enacting S.B. 1210, and modifying art. 22(3) of Law 146-2012) (unofficial translation supplied).[13] |

---

[13]   The situation in Puerto Rico merits some further explanation.  Historically, under Puerto Rico's Penal Code, there were two culpable mental states: "intent" and "negligence."  <u>See</u> P.R. Laws Ann. tit. 33, §§ 4650-4652 (2004).  The definition of "intent" included three variants, generally corresponding to the concepts of "purposeful," "knowing," and "reckless" conduct under the Model Penal Code.  <u>See</u> <u>id.</u> § 4651; <u>see also</u> Dora Neváres-Muñiz, <u>Recodification of Criminal Law in a Mixed Jurisdiction: The Case of Puerto Rico</u>, 12.1 Elec. J. Comp. L.  16 (May 2008), <u>available at</u> http://www.ejcl.org/121/art121-14.pdf.  In the 2012 version of the Puerto Rico Penal Code, the third definition of "intent" covered reckless conduct: "when the actor has foreseen or is conscious that there exists a high probability that his conduct will produce the criminal act."  P.R. Laws Ann. tit. 33, § 5035 (2012) (unofficial translation supplied).

In 2014, a new law was proposed, passed by both the Puerto Rico Senate and the House of Representatives, and sent to the Governor for his approval.  <u>See</u> S.B. 1210 (P.R. 2014).  That law was signed and approved on December 26, 2014, and it takes effect on March 26, 2015.  <u>See</u> 2014 P.R. Laws No. 246.  Article 12 of the new law eliminates the old culpable mental states (intent and negligence) and explicitly replaces them with the four mental states in the Model Penal Code: purposely, knowingly, recklessly, and negligently.  <u>Compare</u> <u>id.</u> art. 12 (modifying art. 22 of Law No. 146-2012), <u>with</u> Model Penal Code § 2.02(2); <u>see also</u> P.R. House of Representatives, <u>P. del S. 1210 Informe Positivo</u> 9 (Nov. 13, 2014), http://www.tucamarapr.org/dnncamara/Documents/Measures/9fda6cce-8 8d9-4e39-a6ae-0dc163f421dc.pdf.

| Rhode Island | "[T]he use of the word 'reckless' or 'recklessly' in penal statutes connotes something more than the negligence necessary to support a civil action for damages, and that the two words impart a disregard by the accused for the consequences of his act and an indifference to the safety of life and limb. . . . [T]he distinguishing factor, which properly classifies the operation of a motor vehicle as reckless, is that the evidence shows that a driver has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action." <u>State</u> v. <u>Lunt</u>, 106 R.I. 379, 260 A.2d 149, 151 (R.I. 1969). |
|---|---|

The definitions of "recklessness" in the preceding chart demonstrate that the Maine definition is a perfectly ordinary, textbook definition of the term.  There is nothing about the Maine statute that sets it above and beyond the standard definitions provided in the Model Penal Code, <u>Black's Law Dictionary</u>, and the other jurisdictions in the First Circuit.  Nor does it seem that the Model Penal Code and the First Circuit jurisdictions are unique in their definitions of recklessness.  <u>See</u>, <u>e.g.</u>, Ariz. Rev. Stat. § 13-105 ("'Recklessly' means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and <u>consciously disregards</u> a <u>substantial and unjustifiable risk</u> that the result will occur or that the circumstance exists.  The risk must be of such nature and degree that disregard of such risk constitutes a <u>gross deviation</u> from the standard of conduct that a reasonable person would observe in the situation. . . .") (emphases added); N.Y. Penal Law § 15.05(3) ("A person acts recklessly with respect to a result or to a

circumstance described by a statute defining an offense when he is aware of and <u>consciously disregards</u> a <u>substantial and unjustifiable risk</u> that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a <u>gross deviation</u> from the standard of conduct that a reasonable person would observe in the situation.") (emphases added). Thus, the Maine definition of "recklessness" is far from extraordinary, but rather embraces the standard, generally accepted definition of the term.

Applying that definition, I disagree with the government's assertion that "[r]ecklessly is more akin to deliberately or knowingly" than negligently. The majority opinion echoes this claim, arguing that "Maine's definitions of knowingly as contrasted with recklessly differ primarily in their description of the degree of the person's awareness of the likelihood that the result will occur." <u>Ante</u>, at 19. The Supreme Court has held that negligent conduct cannot constitute the "use" of force. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1414 n.8; <u>Leocal</u>, 543 U.S. at 9. On a volitional spectrum from "negligently" (clearly insufficient to constitute the "use" of force) to "intentionally" (clearly sufficient), the government and the majority seeks to place "recklessly" closer to the latter end. Yet the differences between the definitions of "recklessly" and "criminal negligence" are just as small as (if not smaller than) the differences between

"knowingly" and "recklessly." See Fernández-Ruiz, 466 F.3d at 1130 ("To the extent recklessness differs from criminal negligence, '[t]he difference between them is that criminal negligence requires only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk.'" (quoting In re William G., 192 Ariz. 208, 963 P.2d 287, 292 n.1 (Ariz. Ct. App. 1997))); see also 1 Charles E. Torcia, Wharton's Criminal Law § 27 (15th ed. 1993). Indeed, just as Maine's definitions of knowingly and recklessly "differ primarily in their description of the degree of the person's awareness of the likelihood that the result will occur," ante, at 19 (emphasis added), so too do Maine's definitions of recklessness and negligence "differ primarily in their description of the degree of the person's awareness of the likelihood that the result will occur," id. Compare Me. Rev. Stat. tit. 17-A, § 35(3)(A) ("A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result."), with id. § 35(4)(A) ("A person acts with criminal negligence with respect to a result of the person's conduct when the person fails to be aware of a risk that the person's conduct will cause such a result."). Therefore, I find the attempt by the government and the majority to establish that "reckless" conduct in Maine is akin to knowing, willful, or

intentional conduct, or involves a "a substantial amount of deliberateness and intent," to be unavailing.

### 2.  The Meaning of "Offensive Physical Contact"

In this context, the <u>actus</u> <u>reus</u> of "offensive physical contact" has two constituent elements: first, there must be "physical contact," and second, the physical contact must also be "offensive."  Under Maine law, the physical contact required is "not limited to direct touchings, but also c[an] be effected by indirect touchings (e.g., the touching of items intimately connected to the body, such as clothing or a cane, customarily regarded as part and parcel of an individual's 'person')." <u>Nason</u>, 269 F.3d at 19 (citing <u>State</u> v. <u>Rembert</u>, 658 A.2d 656, 658 (Me. 1995)).

Determining whether the physical contact is "offensive" is an objective test: courts ask whether a reasonable person would find the physical contact to be offensive, under the particular circumstances involved.  <u>See</u> <u>United States</u> v. <u>Pettengill</u>, 682 F. Supp. 2d 49, 56 (D. Me. 2010) (stating that "'offensive physical contact' means 'physical contact which a reasonable person would find offensive under the circumstances'" (quoting Donald G. Alexander, Maine Jury Instruction Manual § 6-59 (4th ed. 2003)); <u>see also</u> <u>State</u> v. <u>Pozzuoli</u>, 693 A.2d 745, 747 (Me. 1997)) ("[T]he question is whether a reasonable person would find the contact to be offensive . . . .");  Restatement (Second) of Torts § 19 ("A

-72-

bodily contact is offensive if it offends a reasonable sense of personal dignity."). Offensive physical contact, therefore, involves "'something less than bodily injury . . . but requires more than a mere touching of another.'" Nason, 269 F.3d at 19 (alteration in original) (quoting Pozzuoli, 693 A.2d at 747).

In examining the Maine assault statute, we have previously observed that "[t]wo factors distinguish mere touchings from offensive physical contacts: the mens rea requirement, and the application of a 'reasonable person' standard to determine whether a contact is offensive." Nason, 269 F.3d at 19 (citations omitted). Accordingly, to recklessly cause an offensive physical contact in Maine, a person must consciously disregard a risk that his or her conduct will cause physical contact -- something more than a mere touching -- that a reasonable person would find to be offensive under the circumstances. See Me. Rev. Stat. tit. 17-A, § 35(3)(A); Nason, 269 F.3d at 19; Pettengill, 682 F. Supp. 2d at 56; Pozzuoli, 693 A.2d at 747. Moreover, the disregard of that risk "when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." Me. Rev. Stat. tit. 17-A, § 35(3)(C).

**B.  The Meaning of "Use . . . of Physical Force" Under Federal Law**

**1.  The "Use" of "Force" and Common-Law Battery**

The following discussion demonstrates that under the Lautenberg Amendment, the use-of-force requirement can be satisfied by an <u>actus</u> <u>reus</u> of an offensive touching, but such an offensive touch must be committed with a <u>mens</u> <u>rea</u> of intent rather than mere recklessness.  In <u>Castleman</u>, the Supreme Court held that "force," for purposes of the Lautenberg Amendment, incorporates the common-law meaning of "force."  <u>Castleman</u>, 134 S. Ct. at 1410-11.  The Court further stated that "it makes sense for Congress to have classified as a 'misdemeanor crime of domestic violence' the type of conduct that supports a common-law battery conviction."  <u>Id.</u> at 1411.  On that basis, the Court held that "the requirement of 'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction" -- including an offensive touching.  <u>Id.</u> at 1413.

I agree with the government's contention that "it makes sense for Congress to have classified as a 'misdemeanor crime of domestic violence'" not only "the type of conduct that supports a common-law battery conviction," <u>id.</u> at 1411, but also the culpable mental states that support a battery conviction under the common law.  <u>See</u>, <u>e.g.</u>, <u>Freed</u>, 401 U.S. at 607-08 ("'(W)here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and

-74-

adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.'" (alteration in original) (quoting Morissette v. United States, 342 U.S. 246, 263 (1952))); see also Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013) ("It is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" (quoting Neder v. United States, 527 U.S. 1, 23 (1999))).  Thus, as urged by both parties here and as suggested by the Supreme Court in Castleman, I turn to examine the culpable mental states that attach to the common-law crime of battery.  See Castleman, 134 S. Ct. at 1410-11.

In Johnson, the Supreme Court explained that "the common-law crime of battery . . . consisted of the intentional application of unlawful force against the person of another." Johnson, 559 U.S. at 139 (emphasis added).  According to Supreme Court precedent, therefore, although the Lautenberg Amendment's "force" requirement can be satisfied by an actus reus of an offensive touching, such offensive contact must involve a mens rea of intent rather than mere recklessness.  See id.; see also Bailey v. United States, 516 U.S. 137, 143 (1995) (defining the word "use" for purposes of the pre-1998 text of 18 U.S.C. § 924(c) -- which had provided certain penalties if the defendant "uses or carries a

firearm" during a crime of violence -- and holding that such "use" required "active employment" and not "mere possession of a firearm"), superseded by statute, Bailey Fix Act, Pub. L. No. 105-386, 112 Stat. 3469 (1998), as recognized in Abbott v. United States, 562 U.S. 8 (2010); Rembert, 658 A.2d at 658 (stating that "[u]npermitted and intentional contacts . . . [are] actionable as an offensive contact"); Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427, 428 (Va. 1921) ("To constitute battery there must be some touching of the person of another, but not every such touching will amount to the offense.  Whether it does or not will depend, not upon the amount of force applied, but upon the intent of the actor."); id. at 428 (reasoning that when a man placed his hand on a woman's shoulder after she already rejected his romantic advances, the evidence was sufficient to justify a verdict of guilt for battery due to the defendant's "willful violation of the sanctity of her person" (emphasis added)); Black's Law Dictionary 182 (10th ed. 2014) (defining tortious battery as a "nonconsensual, intentional, and offensive touching of another without lawful justification").

        The sources cited by the government do not demonstrate otherwise.  These sources suggest, at best, that a common-law battery by "bodily injury" or "infliction of harm" can be committed recklessly; they do not establish that a common-law battery by "offensive physical contact" can be committed recklessly.  See,

e.g., Model Penal Code § 211.1(1)(a) ("A person is guilty of assault if he . . . attempts to cause or purposely, knowingly or recklessly causes bodily injury to another . . . ."); Wayne R. LaFave, 2 Substantive Criminal Law § 16.2(a) (2d ed.) ("The modern approach, as reflected in the Model Penal Code, is to limit battery to instances of physical injury and cover unwanted sexual advances by other statutes."); id. § 16.2(c)(2) n.32 ("[W]ith the tort of battery an intention to injure or touch offensively is needed"); see also Commonwealth v. Hawkins, 157 Mass. 551, 32 N.E. 862, 863 (1893) (stating that "the intent necessary to constitute" an offense of assault and battery is the "intentional doing of an action which, by reason of its wanton or grossly negligent character, exposes another to personal injury, and causes such an injury," without saying anything regarding whether such an offense could be committed by causing offensive physical contact).

        The weakness of the government's argument is revealed by its selective citation and selective quoting.  For example, the government quotes a criminal law treatise for the proposition that "a substantial majority of the battery-type statutes" in modern criminal codes "expressly state that the crime may be committed by recklessness," but conveniently omits the immediately following clause at the end of that sentence: "-- that is, where there is subjective awareness of the high risk of physical injury." LaFave, supra, § 16.2(c)(2) (emphasis added).  The unabridged sentence says

nothing about whether a battery by <u>offensive touching</u> can be committed by recklessness. Indeed, in the same section, the cited treatise states that the modern approach "limit[s] battery to instances of physical injury." <u>Id.</u> § 16.2(a). Furthermore, the treatise explains that the Model Penal Code's assault provision "covers only causing 'bodily injury,' on the ground that 'offensive touching is not sufficiently serious to be made criminal, except in the case of sexual assaults as provided' elsewhere in the Code." <u>Id.</u> § 16.2(a) n.6 (quoting Model Penal Code § 211.1 cmt. at 185 (1980)). Given the foregoing, there is no justification for the majority's heavy reliance on the legislative history of the Lautenberg Amendment. <u>See</u>, <u>e.g.</u>, <u>Rubin</u> v. <u>United States</u>, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.'" (quoting <u>Tenn. Valley Auth.</u> v. <u>Hill</u>, 437 U.S. 153, 187 n.33 (1978)) (internal quotation marks and citation omitted)).

Contrary to the government's arguments, our decision in <u>United States</u> v. <u>Bayes</u>, 210 F.3d 64 (1st Cir. 2000), supports the conclusion that battery by offensive touching requires intent and not mere recklessness with respect to the offensiveness of the contact. In <u>Bayes</u>, we evaluated the defendant's challenge to the sufficiency of the evidence to support his conviction for simple assault under 18 U.S.C. § 113(a)(5). <u>Bayes</u>, 210 F.3d at 65. The

factual basis for the offense was that the defendant, Christopher Bayes, while on a Delta Airlines flight from Atlanta to England, "'put his hand on [a flight attendant's] buttocks and rubbed [her] buttocks and grabbed at the bottom of [her] buttocks,'" which a nearby passenger described as Bayes "'reaching behind the flight attendant and grabbing her in the rear end'" and "'squeezing.'" Id. at 66 (second and third alterations in original) (quoting trial testimony).  "Bayes persisted in being unruly despite periodic warnings from members of the crew." Id. "A scuffle ensued, ending only after the captain dumped thousands of gallons of fuel, diverted the aircraft in mid-flight, and made an unscheduled landing [in Maine] so that Bayes could be taken off the plane. . . ." Id.

        Bayes argued that simple assault required "a specific kind of intent that the government failed to prove." Id. Namely, Bayes contended that "the government did not prove that he intended to injure [the flight attendant] or to threaten her with harm when he touched her on the buttocks." Id. at 67. Because the statute in question, § 113(a)(5), criminalized "[s]imple assault" but did "not define that term in any way," we "turn[ed] to the common law for additional guidance." Id. at 67-68. We stated that "the common law provided that an assault committed by way of a battery did not require an intent to cause or to threaten an injury as long as the defendant touched another in a deliberately offensive manner

without a valid reason to do so." <u>Id.</u> at 69 (emphasis added). We reviewed prior opinions and determined that they "support the conclusion that, in a prosecution for simple assault under § 113(a)(5), it is sufficient to show that the defendant <u>deliberately touched another</u> in a <u>patently offensive manner</u> without justification or excuse." <u>Id.</u> (emphases added). Therefore, we held that the evidence supported Bayes's conviction because "the jury was entitled to conclude that Bayes had groped [the flight attendant] in a way that <u>could not have been accidental</u>, that <u>must have been deliberate</u>, and that was <u>patently offensive</u>." <u>Id.</u> (emphases added).

The preceding language from <u>Bayes</u> reveals that the <u>mens rea</u> required for a § 113(a)(5) battery-by-offensive-touching conviction is intent and not mere recklessness: the defendant must "deliberately" (and not accidentally) touch the victim in a "deliberately offensive" manner. <u>See id.</u> By contrast, under the Maine assault statutes, a defendant can commit the offense recklessly by merely disregarding (a) the risk that his conduct will cause physical contact (more than a mere touching) to occur, <u>and</u> (b) the risk that a reasonable person would find that physical contact to be offensive. <u>See</u> Me. Rev. Stat. tit. 17-A, § 35(3)(A). The "deliberate" intent that we required in <u>Bayes</u> is thus not necessary for a conviction for recklessly committed assault or domestic-violence assault in Maine.

Therefore, the following conclusion must be drawn: under the Lautenberg Amendment, the "force" requirement can be satisfied by an <u>actus</u> <u>reus</u> of an offensive touching, but such an offensive touch must involve a <u>mens</u> <u>rea</u> of intent rather than mere recklessness. That is, the defendant must <u>intend</u> to touch and <u>intend</u> that the touch be offensive, rather than merely disregard the risk that a touch will occur and be considered offensive. By contrast, the Maine statutes at issue permit conviction when the defendant merely disregards a risk that his or her conduct will cause physical contact that a reasonable person would find to be offensive. Accordingly, applying a categorical approach and the Supreme Court's statements in <u>Castleman</u> and <u>Johnson</u>, a conviction under either of the Maine assault statutes encompasses conduct beyond the common-law definition of battery, and thus does not necessarily establish a misdemeanor crime of domestic violence under the Lautenberg Amendment. This conclusion mandates reversal here and is further supported by Footnote Eight of <u>Castleman</u> and the circuit court cases cited therein, as explained below.

### 2. <u>Castleman</u>'s Footnote Eight

In <u>Castleman</u>, the Supreme Court opined that the "merely reckless causation of bodily injury under the [Tennessee assault statute] may not be a 'use' of force." <u>Castleman</u>, 134 S. Ct. at 1414. The Court explained this statement in Footnote Eight, noting that <u>Leocal</u> held that "'"use" requires active employment.'" <u>Id.</u> at

1414 n.8 (quoting <u>Leocal</u>, 543 U.S. at 9).  The Court then stated that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient," contrasting decisions from ten other circuit courts of appeals against our opinion in <u>Booker</u>, which the Supreme Court listed as the only outlier.[14]  Together, as explained in more detail below, these cases establish that a predicate "crime of violence" under 18 U.S.C. § 16 and analogous provisions must be committed with a degree of intentionality greater than recklessness.  Although § 16 is a different federal statute, its language is substantially similar to the definition of a misdemeanor crime of domestic violence for purposes of the Lautenberg Amendment.  In particular, the definition in § 16(a) is nearly identical to the equivalent definition for § 922(g)(9).  <u>Compare</u> 18 U.S.C. § 16(a) (defining the term "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of

---

[14] <u>Id.</u>  To illustrate contrast with our holding in <u>United States</u> v. <u>Booker</u>, 644 F.3d 12, 19–20 (1st Cir. 2011), the Supreme Court cited the following circuit court decisions in <u>Castleman</u>'s Footnote Eight: <u>United States</u> v. <u>Palomino García</u>, 606 F.3d 1317, 1335–36 (11th Cir. 2010); <u>Jiménez–González</u> v. <u>Mukasey</u>, 548 F.3d 557, 560 (7th Cir. 2008); <u>United States</u> v. <u>Zúñiga–Soto</u>, 527 F.3d 1110, 1124 (10th Cir. 2008); <u>United States</u> v. <u>Torres–Villalobos</u>, 487 F.3d 607, 615–16 (8th Cir. 2007); <u>United States</u> v. <u>Portela</u>, 469 F.3d 496, 499 (6th Cir. 2006); <u>Fernández–Ruiz</u> v. <u>Gonzales</u>, 466 F.3d 1121, 1127–32 (9th Cir. 2006) (en banc); <u>García</u> v. <u>Gonzales</u>, 455 F.3d 465, 468–69 (4th Cir. 2006); <u>Oyebanji</u> v. <u>Gonzales</u>, 418 F.3d 260, 263–65 (3d Cir. 2005); <u>Jobson</u> v. <u>Ashcroft</u>, 326 F.3d 367, 373 (2d Cir. 2003); <u>United States</u> v. <u>Chapa–Garza</u>, 243 F.3d 921, 926 (5th Cir. 2001).

another"), with 18 U.S.C. § 921(a)(33)(A) (defining a "misdemeanor crime of domestic violence" as an misdemeanor offense that "has, as an element, the use or attempted use of physical force").  Keeping the similarity of the analogous statutes in mind, I review below each case cited by the Supreme Court in Castleman's Footnote Eight.

### a.  Second Circuit

The Second Circuit considered the issue in Jobson v. Ashcroft, 326 F.3d 367, 369 (2d Cir. 2003), which examined whether second-degree manslaughter in New York constituted a crime of violence under 18 U.S.C. § 16(b).  A "crime of violence" is defined in § 16(b) as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 16(b).[15]  The Second Circuit

---

[15] Given that § 16(b)'s definition includes offenses that merely "involve[] a substantial risk that physical force . . . may be used," id. (emphasis added), its language is far more susceptible to a reading that it encompasses reckless conduct than is the equivalent language for § 16(a) and § 922(g)(9), which both require the "use" or "attempted use" of "physical force."  See supra n.2; see also 18 U.S.C. § 16(a); id. § 922(g)(9); id. § 921(a)(33)(A); Me. Rev. Stat. tit. 17-A, § 35(3) ("A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result. . . ."); Model Penal Code § 2.02(2)(c) ("A person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct.").  Therefore, the cases holding that reckless conduct is insufficient to support a subsequent § 16(b) conviction provide even stronger support for the defendants' position than do the cases involving § 16(a).  Cf. García, 455 F.3d at 468 (reasoning that the "use" of "physical force" requires the intentional employment of physical force, and

reiterated its previous holding that "the verb 'use' in section 16(b), particularly when modified by the phrase 'in the course of committing the offense,' suggests that section 16(b) 'contemplates only <u>intentional</u> conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will <u>intentionally</u> employ physical force.'" <u>Jobson</u>, 326 F.3d at 373 (internal quotation marks omitted) (quoting <u>Dalton</u> v. <u>Ashcroft</u>, 257 F.3d 200, 208 (2d Cir. 2001)).

　　　　To satisfy § 16(b)'s definition of "crime of violence," therefore, a defendant must have risked having to <u>intentionally</u> use force to commit the offense. <u>Id.</u> at 374; <u>see also</u> <u>id.</u> at 373 ("[T]he risk in section 16(b) concerns the defendant's likely use of violent force as a means to an end."). "By contrast, a defendant who is convicted of second-degree manslaughter, like other offenses of <u>pure</u> recklessness, may lack any 'intent, desire or willingness to use force or cause harm at all.'" <u>Id.</u> at 374 (quoting <u>United States</u> v. <u>Parson</u>, 955 F.2d 858, 866 (3d Cir. 1992), <u>abrogated on other grounds by</u> Begay v. <u>United States</u>, 553 U.S. 137 (2008)). Accordingly, the Second Circuit concluded that second-degree manslaughter in New York is not a crime a violence under

---

therefore holding that a New York second-degree reckless assault conviction "does not contain an element that there be the <u>intentional</u> employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a)").

§ 16(b) and thus is not an aggravated felony justifying removal under the immigration laws. Id. at 376.

### b. Third Circuit

The Third Circuit reached a similar result in Oyebanji v. Gonzales, 418 F.3d 260, 263 (3d Cir. 2005), which also involved immigration removal proceedings premised upon the definition of "crime of violence" under § 16(b). The petitioner's underlying conviction was for vehicular homicide under New Jersey law, which requires proof of recklessness. Id. The Third Circuit thus stated that it was "required to decide the very question that the Leocal Court did not reach" -- "'whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16.'" Id. (quoting Leocal, 543 U.S. at 13).

Citing the Leocal Court's distinction between "violent" crime and merely "accidental" conduct, the Third Circuit explained that "[t]he quintessential violent crimes -- murder, assault, battery, rape, etc. -- involve the intentional use of actual or threatened force against another's person, and the term 'accidental' is most often used to describe events that did not 'occur [ ] as a result of anyone's purposeful act.'" Id. at 264 (second alteration in original) (citing Black's Law Dictionary 16 (8th ed. 1999)). The Third Circuit reasoned that "accidental" conduct "is not enough to qualify as a crime of violence" under

-85-

Leocal, and it decided that such "accidental" conduct "would seem
to include reckless conduct." Id. The panel further stated that
the Third Circuit ought to follow the Supreme Court's "'considered
dicta"' in Leocal, id. at 265 (quoting McCoy, 950 F.2d at 19), and
that while the panel "appreciate[d]" the government's arguments, it
"believe[d] that those arguments must be directed to the Supreme
Court or Congress." Id.

### c. Fourth Circuit

The Fourth Circuit considered these issues in García v.
Gonzales, 455 F.3d 465 (4th Cir. 2006). García also involved
removal proceedings and whether a certain predicate offense
qualified as an aggravated felony by virtue of being "a crime of
violence" under 18 U.S.C. § 16. Id. at 468. The predicate offense
considered in García was reckless assault in the second degree
under New York law, which provides that "'[a] person is guilty of
assault in the second degree when . . . (4) He recklessly causes
serious physical injury to another person by means of a deadly
weapon or a dangerous instrument.'" Id. (alterations in original)
(quoting N.Y. Penal Law § 120.05). The Fourth Circuit summarily
determined that the first definition of "a crime of violence" under
§ 16(a) -- "an offense that has as an element the use, attempted
use, or threatened use of physical force against the person or
property of another" -- did not apply to the New York second-degree
reckless assault conviction. Id. at 468 (quoting 18 U.S.C.

§ 16(a)).  The court reasoned that the definition of the New York offense "does not contain an element that there be the <u>intentional</u> employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a)."  <u>Id.</u> (emphasis added). Therefore, according to the Fourth Circuit, "the use . . . of physical force" requires the <u>intentional</u> employment of physical force.  <u>See id.</u>

Turning to the definition in § 16(b), the Fourth Circuit held that "recklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'"  <u>Id.</u> at 469.  In making this determination, the Fourth Circuit held that in order to satisfy § 16(b)'s requirement that the predicate offense "involve a substantial risk that physical force against the person or property of another may be used," the force must "be applied as a means to an end."  <u>Id.</u> (quoting <u>Bejarano-Urrutia</u> v. <u>Gonzales</u>, 413 F.3d 444, 447 (4th Cir. 2005)) (internal quotation marks omitted); <u>see also</u> <u>id.</u> ("[W]e are of opinion that 18 U.S.C. § 16(b) requires that the substantial risk involved be a substantial risk that force will be employed as a means to an end in the commission of the crime, not merely that reckless conduct could result in injury.").

### d.  Fifth Circuit

The Fifth Circuit considered the definition of "crime of violence" under 18 U.S.C. § 16(b) in <u>United States</u> v. <u>Chapa-Garza</u>, 243 F.3d 921 (5th Cir. 2001).  In that case, the Fifth Circuit

reasoned that § 16(b) requires that "the offender <u>intentionally</u> use the force against the person or property of another." <u>Id.</u> at 927. Because "<u>[i]ntentional</u> force against another's person or property is virtually never employed to commit" the offense of felony driving while intoxicated ("DWI") in Texas, the court held that "felony DWI is not a crime of violence as defined by 18 U.S.C. § 16(b)." <u>Id.</u>

### e. Sixth Circuit

In <u>United States</u> v. <u>Portela</u>, 469 F.3d 496, 499 (6th Cir. 2006), the Sixth Circuit followed the "'considered dicta'" of <u>Leocal</u> and the reasoning of the Third and Fourth Circuits to hold that "a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16," nor, because it "uses identical language," under <u>U.S. Sentencing Guidelines Manual</u> (U.S.S.G.) § 2L1.2(b)(1).

### f. Seventh Circuit

Similarly, the Seventh Circuit followed its sister circuits in holding that "reckless crimes are not crimes of violence under Section 16(b)." <u>Jiménez-González</u> v. <u>Mukasey</u>, 548 F.3d 557, 560 (7th Cir. 2008). The Seventh Circuit found persuasive the Third Circuit's reasoning in <u>Oyebanji</u> that the use of physical force requires active employment and not merely negligent or accidental conduct. <u>Id.</u> (citing <u>Oyebanji</u>, 418 F.3d at 263). The Seventh Circuit further reasoned that "accidental and

reckless crimes are not the type of 'violent' crimes Congress intended to distinguish as worthy of removal." <u>Id.</u> To support its holding, the Seventh Circuit emphasized the "primary distinction" that crimes of violence involve <u>intentional</u> conduct whereas most crimes of recklessness involve non-purposeful conduct. <u>See</u> <u>id.</u> at 561-62.

### g.  Eighth Circuit

Likewise, the Eighth Circuit stated that the <u>Leocal</u> "Court's reasoning suggests that crimes requiring only reckless disregard for the risk of physical injury to another are not crimes of violence under § 16." <u>United States</u> v. <u>Torres-Villalobos</u>, 487 F.3d 607, 615 (8th Cir. 2007). Examining Minnesota law, the Eighth Circuit determined that "a person can commit second-degree manslaughter without using force or risking the intentional use of force," because the crime can be committed recklessly. <u>Id.</u> at 616. Giving examples, the court explained that:

> A person can commit this crime by recklessly leaving a child alone with lit candles that later start a fire, by allowing a child to die of dehydration while in the person's care, by leaving explosives and blasting caps stored in an automobile where they are later ignited by the use of jumper cables, and, indeed, by driving drunk with 'culpable negligence' in a manner that causes the death of a passenger.

<u>Id.</u> (internal citations omitted). Therefore, the court held, "the 'use of force,' as <u>Leocal</u> interpreted that phrase, is not an element of a second-degree manslaughter conviction," meaning that

the Minnesota second-degree manslaughter offense is not a crime of violence under § 16(a). Id. Turning to § 16(b), the court also held that second-degree manslaughter under Minnesota law does not "involve a risk that the perpetrator will intentionally use physical force in the course of committing the offense." Id. at 616-17. Because Minnesota second-degree manslaughter can be committed recklessly without the intentional use of force or risking the intentional use of force, the Eighth Circuit held that it is not a crime of violence under § 16. Id. at 617.

### h.  Ninth Circuit

In Fernández-Ruiz v. Gonzales, 466 F.3d 1121, 1123 (9th Cir. 2006) (en banc), the Ninth Circuit held that a prior Arizona assault conviction did not constitute a crime of violence under § 16(a) because that federal statute "covers only those crimes involving intentional conduct," and thus the merely reckless use of force (as covered by the Arizona statute) was insufficient to establish a violation. See also id. ("Because the relevant Arizona statute permits conviction when a defendant recklessly but unintentionally causes physical injury to another, and because the petitioner's documents of conviction do not prove he intentionally used force against another, we conclude the federal statute does not apply."). In so holding, the court "agree[d] with [its] sister circuits that the reasoning of Leocal -- which merely holds that using force negligently or less is not a crime of violence --

extends to crimes involving the reckless use of force." Id. at
1129. The Ninth Circuit reasoned that Leocal emphasized that
crimes of violence cannot be "'accidental.'" Id. (quoting Leocal,
543 U.S. at 9). The court defined "accidental" as "'[n]ot having
occurred as a result of anyone's purposeful act,'" and it defined
"purposeful" as "'[d]one with a specific purpose in mind.'" Id. at
1129-30 (alterations in original) (citing Black's Law Dictionary
16, 1298 (8th ed. 2004)). The Ninth Circuit further concluded that
"[r]eckless conduct, as generally defined, is not purposeful." Id.
at 1130.

       "Even more clearly, reckless conduct as defined by
Arizona law is not purposeful." Id. As support for this
statement, the Ninth Circuit cited the Arizona criminal statute
defining recklessness. Id. Under that statute, "'[r]ecklessly'
means . . . that a person is aware of and consciously disregards a
substantial and unjustifiable risk that the result will occur or
that the circumstance exists." Ariz. Rev. Stat. Ann. § 13-105
(10)(c). That "risk must be of such nature and degree that
disregard of such risk constitutes a gross deviation from the
standard of conduct that a reasonable person would observe in the
situation." Id. This definition of recklessness is substantially
similar to the equivalent Maine definition, as well as the other
definitions outlined in the chart in Part II(A)(1), supra. For
purposes of § 16, the Ninth Circuit saw no important differences

between negligence and recklessness, considering each mens rea to constitute the type of non-purposeful conduct that Leocal held was insufficient to establish a crime of violence involving the "use" of force. Fernández-Ruiz, 466 F.3d at 1129-30. The court reasoned that the "plain meaning" of the word "use" denotes that "physical force is instrumental to carrying out the crime." Id. By contrast, the "subjective awareness" of risk that characterizes a reckless act "is not the same as the intentional use of physical force against the person of another." Id. The court further explained that "[t]he bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." Id. at 1132. Therefore, the Ninth Circuit concluded that recklessness is not "a sufficient mens rea to establish that a conviction is for a crime of violence under § 16." Id. at 1130.

### i. Tenth Circuit

In United States v. Zúñiga-Soto, 527 F.3d 1110, 1113 (10th Cir. 2008), the Tenth Circuit considered whether the "crime of violence" enhancement provision under U.S.S.G. § 2L1.2 applied to the appellant's prior Texas state conviction for assaulting a public servant. Applying the commentary to this U.S.S.G. provision, the Tenth Circuit's "sole task" was to whether the appellant's "prior felony conviction qualifies as a crime of violence because the offense had as an element the use of physical

force." Id. at 1115.  Under the appellant's offense of conviction,
a person commits an assault if he or she "intentionally, knowingly,
or recklessly causes bodily injury to another."  Tex. Penal Code
Ann. § 22.01(a)(1).  On appeal to the Tenth Circuit, the appellant
argued that "his prior conviction did not have as an element the
use of physical force because the Texas assault statute's mens rea
component could be satisfied by recklessness."  Zúñiga-Soto, 527
F.3d at 1115.  The Tenth Circuit agreed, citing Leocal, its own
precedent, and "the persuasive reasoning of [its] sister circuits."
Id. at 1113, 1123.

### j.  Eleventh Circuit

Finally, applying similar reasoning, the Eleventh Circuit
also relied on Leocal and the decisions of the other circuit courts
to hold that "a conviction predicated on a mens rea of recklessness
does not satisfy the 'use of physical force' requirement under
[U.S.S.G.] § 2L1.2's definition of 'crime of violence.'"  United
States v. Palomino García, 606 F.3d 1317, 1336 (11th Cir. 2010).
Citing "the near unanimity of the circuit courts on this issue,"
the Eleventh Circuit concluded that Leocal "plainly suggests that
crimes requiring only a reckless[] disregard for the risk of
physical injury to others are not crimes of violence."  Id. at 1336
n.16.  The Eleventh Circuit further explained that "[b]ecause
Arizona law defines recklessness as nothing more than the conscious
disregard of a substantial and unjustifiable risk, this is more

akin to negligence and cannot be said to require the <u>intentional</u> use of force." <u>Id.</u> at 1336 (internal citation omitted). Therefore, the court held that an Arizona conviction "predicated on the reckless causation of physical injury does not qualify as a crime of violence under [U.S.S.G.] § 2L1.2." <u>Id.</u>

## C.  Comparison of Analogous Statutory Language

As is evident from the discussion above, most of our sister circuits have held that the "use . . . of physical force" requires the type of intentional conduct for which mere recklessness cannot suffice.  Although these cases involved different provisions than the Lautenberg Amendment, the statutory texts involved are not materially different, and in many cases, are virtually identical.  As referenced herein, analogous provisions to the definition of "misdemeanor crime of domestic violence" for purposes of the Lautenberg Amendment are compared in the following chart:

| Statute | Relevant Language |
|---|---|
| "misdemeanor crime of domestic violence," Lautenberg Amendment, 18 U.S.C. § 922(g)(9) | "has, as an element, the use or attempted use of physical force"<br>    18 U.S.C. § 921(a)(33)(A) |
| "crime of violence," 18 U.S.C. § 16(a) | "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"<br>    18 U.S.C. § 16(a) |

| "crime of violence," 18 U.S.C. § 16(b) | "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" 18 U.S.C. § 16(b) |
|---|---|
| "[c]rime of violence," U.S.S.G. § 2L1.2 | "[an] offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another" U.S.S.G. § 2L1.2, cmt. 1(B)(iii). |
| "violent felony" under the ACCA, 18 U.S.C. § 924(e)(1) | "has as an element the use, attempted use, or threatened use of physical force against the person of another" 18 U.S.C. § 924(e)(2)(B)(I) |

It is readily apparent that the language involved in most of the preceding provisions is nearly identical, and for present purposes is materially indistinguishable.[16]   Moreover, I do not

_____

[16] The majority claims that § 16(a) is "not analogous" to § 922(g)(9). Ante, at 12. I disagree, given that these two provisions contain nearly identical language. Section 16(a) defines a "crime of violence," whereas § 922(g)(9) involves a "misdemeanor crime of domestic violence." The relevant definition for § 922(g)(9) is an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A). The definition under § 16(a) is materially indistinguishable: an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id. § 16(a). This definition differs only in the addition of the "threatened use" of physical force as an alternative, and the explanation that the force be used "against the person or property of another." The former difference (the inclusion of "threatened use") is neither implicated in the current case nor in any of the analogous precedents referenced herein. The latter change appears to be largely a distinction without a difference, as it is difficult to contemplate how or why the "use of physical force" for purposes of § 922(g)(9) would mean force used in any way other than "against the person or property of another."

doubt that the Supreme Court was well aware that the cases it cited in Castleman's Footnote Eight involved different provisions, yet the Court nonetheless contrasted the holdings of our sister circuits in those cases with our holding in Booker before remanding the instant cases to us for reconsideration in light of Castleman. See Castleman, 134 S. Ct. at 1414 n.8. Thus, to the Supreme Court, these cases and provisions were sufficiently analogous to justify the instant remand. Cf. Smith, 544 U.S. at 233 ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); Northcross v. Bd. of Educ. of Memphis City Sch., 412 U.S. 427, 428 (1973) (per curiam) (stating that "[t]he similarity of language" in two statutory provisions sharing "a common raison d'etre" constitutes "a strong indication that the two statutes should be interpreted pari passu"). The government and the majority fail to persuasively establish that the meaning of "the use . . . of physical force" in these various federal definitions of a "crime of violence" should be so similar in every other context, yet so different as to be outcome-determinative in the instant context. For those reasons, I find the foregoing precedent more persuasive than the majority opinion here. I thus agree with our sister circuits that the "use . . . of physical force" for a "crime of violence" requires the intentional,

-96-

and not merely reckless, employment of physical force. I find this conclusion to be particularly true for the subsumed offense at issue in the instant case: the combination of a <u>mens rea</u> of "recklessness" with an <u>actus reus</u> of "offensive physical contact." <u>Cf.</u> <u>Nason</u>, 269 F.3d at 19 (stating that the <u>mens rea</u> requirement is one of two factors that "distinguish mere touchings from offensive physical contacts").

### III.  <u>Conclusion</u>

Despite the foregoing precedent from the Supreme Court and our sister circuits, the majority opinion nonetheless seeks to hew to our prior decision in <u>Booker</u> and to resolve these cases, yet again, exactly as we did in <u>Armstrong I</u> and <u>Voisine I</u>.  With due respect, for the reasons explained above, I believe that the majority is wrong.

The Lautenberg Amendment is premised upon grave concerns and laudable purposes, as articulated both by the Supreme Court in <u>Castleman</u> and by the majority in this case.  I share those concerns and strongly agree with those purposes.  However, a general agreement with those goals need not dictate the result here.  This case does not present a litmus test for judges, asking whether we oppose domestic violence and gun violence.  Were our job so simple, it would be an easy matter to decide in favor of the government. But that is not our role.  Our judicial obligations preclude us from such results-oriented decisionmaking.

Rather than deciding on the basis of personal beliefs and policy preferences, or seeking to ensure that the Lautenberg Amendment encompass the broadest possible swath of conduct within its ambit, this case requires us to engage in statutory interpretation. This legal task implicates the difference between Congress's broad policy goals versus the precise statutory language employed to achieve those ends. That is, does the language chosen by Congress -- the "use or attempted use of physical force" -- necessarily apply to all Maine misdemeanor assault convictions for recklessly causing offensive physical contact? Applying the relevant precedent to this question of statutory interpretation counsels that we answer this inquiry in the negative and resolve this appeal in favor of the defendants. I conclude that the particular subsumed Maine offense at issue here, the reckless causation of offensive physical contact, does not necessarily require the "use . . . of physical force" and thus does not categorically constitute a misdemeanor crime of domestic violence under the Lautenberg Amendment.

For the reasons stated herein, I would reverse the defendants' convictions. Indeed, I believe that the Supreme Court has obligated us to do so. Therefore, I respectfully dissent.