Nos. 12-1213 and 12-1216

―――――――――――――

UNITED STATES COURT OF APPEALS
For The First Circuit

―――――――――――――

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN VOISINE AND WILLIAM ARMSTRONG III,

Appellants.

―――――――――――――

On Appeal from the United States District Court for the
District of Maine

―――――――――――――

PETITION FOR REHEARING BY THE PANEL AND
SUGGESTION FOR REHEARING EN BANC

―――――――――――――

VIRGINIA G. VILLA, # 124070
Attorney for Appellants

2689 230th Avenue
St. Croix Falls, WI 54024
(207) 745-6156
Villa_Virginia@hotmail.com

# RULE 35(b)(1) STATEMENT

In compliance with Rule 35(b)(1) of the Federal Rules of Appellate Procedure, this suggestion for rehearing en banc is submitted so that the Court may determine, as a whole, the following questions:

1. Whether the panel's opinion should be revisited in that it is in conflict with the following decisions of the United States Supreme Court:

*Johnson v. United States*, 559 U.S. 133 (2010);

*United States v. Castleman*, 134 S.Ct. 1405 (2014);

*Descamps v. United States*, 133 S.Ct. 2276 (2013).

3. Whether the panel majority's opinion should be revisited in that, by including the *mens rea* of recklessness within the definition of "use ... of force," thus making all forms of assault in Maine a predicate offense, it conflicts with the interpretation of these same words, whether used in 921(a)(33)(A) or elsewhere in the criminal code, in the following decisions of this and its sister circuits:

*United States v. Carter*, 752 F.3d 8 (1ˢᵗ Cir. 2014);

*United States v. Fish*, 758 F.3d 1 (1ˢᵗ Cir. 2014);

*Jobson v. Ashcroft*, 326 F.3d 367 (2ⁿᵈ Cir. 2003);

*Oyebanji v. Gonzales*, 418 F.3d 260 (3ʳᵈ Cir. 2005);

*Garcia v. Gonzales*, 455 F.3d 465 (4ᵗʰ Cir. 2006);

*United States v. White*, 258 F.3d 374 (5th Cir. 2001);

*United States v. Portela*, 469 F.3d 496 (6th Cir. 2006);

*Jimenez-Gonzalez v. Mukasey*, 548 F.3d 557 (7th Cir. 2008);

*United States v. Howell*,  531 F.3d 621 (8th Cir. 2008);

*Fernandez Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006)(en banc);

*United States v. Zuñiga-Soto*, 527 F.3d 1110 (10th Cir. 2008);

*United States v. Palomino-Garcia*, 606 F.3d 1317 (11th Cir. 2010).

4.  Whether the panel's decision should be reviewed because it erroneously decides the following questions of exceptional importance:

Whether 18 U.S.C. 922(g)(9), which depends on having a prior *conviction* of a "misdemeanor crime of domestic violence" to create a new crime of firearm possession, violates the Fifth and Sixth Amendments of the United States Constitution as it allows a necessary element of such a *prior* conviction, namely the domestic relationship, to be proven after the fact of the original conviction?

Whether a misdemeanor conviction for a non-violent or reckless offensive physical contact misdemeanor allows Congress the ability to deprive the person so convicted of the fundamental right to keep and bear firearms protected by the Second Amendment without a sufficiently close nexus to the underlying purpose of the statute?

# TABLE OF CONTENTS

**Page**

RULE 35(b)(1) STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

REASON FOR GRANTING REHEARING OR REHEARING <u>EN BANC</u>:

      Rehearing by the panel or rehearing en banc is merited as the majority's opinion violates the doctrine of constitutional doubt and provides a reading of the operative statutes that conflicts with Supreme Court and circuit precedent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The panel majority opinion conflicts with Supreme Court precedent and prior opinions of this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The panel majority opinion conflicts with that of every other circuit to consider the scope of the phrase "use of force". . . . . . . . . . . . . . . . 5

    C.    The panel majority opinion calls into question whether § 922(g)(9) violates the Second, Fifth and Sixth Amendments of the United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**CASES:**                                                                                          **Page**

*Armstrong v. United States*, 134 S.Ct. 1759 (2014). . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Descamps v. United States*, 133 S.Ct. 2276 (2013). . . . . . . . . . . . . . . . . . . . 12, 14

*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . 11

*Jobson v. Ashcroft*, 326 F.3d 367 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Johnson v. United States*, 559 U.S. 133 (2010). . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

*Johnson v. United States*, 135 S.Ct. __, 2015 WL 132524 (Jan. 9, 2015). . . . . . . 12

*United States v. Apfelbaum*, 445 U.S. 115 (1980). . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Carter*, 752 F.3d 8 (1st Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Castleman*, 134 S.Ct. 1405 (2014). . . . . . . . . . . . . . . . . . . *passim*

*United States v. Cornelio-Pena*, 435 F.3d 1279 (10th Cir. 2006). . . . . . . . . . . . . . 3

*United States v. Fish*, 758 F.3d 1 (1st Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*United States v. Freed*, 401 U.S. 601 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Hayes*, 555 U.S. 415 (2009). . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Howell*, 531 F.3d 621 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Voisine*, First Cir. No. 12-1213 (Jan. 30, 2015). . . . . . . . . . *passim*

*United States v. White*, 258 F.3d 374 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Zhen Shou Wu*, 711 F.3d 1 (1st Cir. 2013). . . . . . . . . . . . . . . . . . 3

**FEDERAL STATUTES:**

18 U.S.C. § 16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 16(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

18 U.S.C. § 921(a)(33)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 13

18 U.S.C. § 922(g)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 924(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 924(e)(2)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

**STATE STATUTES:**

17-A M.R.S.A. § § 35(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**MISCELLANEOUS:**

BJS, Patterns & Trends: Homicide Trends in the United States, 1980-2008 Annual Rates for 2009 and 2010 at 17 and figure 25a (Nov. 2011). . . . . . . . . . . . . . . . . . . 9

BJS, Patterns & Trends: Homicide in the U.S. Known to Law Enforcement, 2011, Figure 1 (Dec. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Death Penalty Resource Center, *Future Dangerousness Predictions Wrong 95% of the Time: New Study on Capital Trials Exposes Widespread Unreliable Testimony, available online at* http://www.deathpenaltyinfo.org/node/1099 (accessed February 8, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gertner, Nancy, "Sex, Lies and Justice: Can we reconcile the belated attention to rape on campus with due process?" The American Prospect (Jan. 19, 2015). . 1, 14

Norko and Baranoski*, Prediction of Violence*; *Detection of Dangerousness*, 8:1 Brief Treatment and Crisis Intervention 73 (Feb. 2008). . . . . . . . . . . . . . . . . . . . 11

**REASONS FOR REHEARING OR REHEARING <u>EN BANC</u>**

**REHEARING BY THE PANEL OR REHEARING EN BANC IS MERITED AS THE MAJORITY'S OPINION VIOLATES THE DOCTRINE OF CONSTITUTIONAL DOUBT AND PROVIDES A READING OF THE OPERATIVE STATUTES THAT CONFLICTS WITH SUPREME COURT AND CIRCUIT PRECEDENT**

The panel's decision reflects a disturbing practice of sacrificing core constitutional rights and protections in order to "promote" certain important policy considerations[1] (in this case, domestic violence), regardless as to whether the action at issue (here the prohibition of non-violent and unintentional misdemeanants to possess firearms) has any demonstrable ability to address the target problem.[2] The majority "decline[s] the parties' invitation to define the *mens rea* of a common law battery independent of the interpretation Maine gives its own statute..." because two of the three panel members "see no reasoned argument that offensive physical contact does not similarly entail the use of force simply

---

[1]*See* Gertner, Nancy, "Sex, Lies and Justice: Can we reconcile the belated attention to rape on campus with due process?" The American Prospect (Jan. 19, 2015) available online at http://prospect.org/article/sex-lies-and-justice.

[2]As noted in *United States v. Castleman*, 134 S.Ct. 1405 (2014), "This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year." *Id.*, at 1408. A million to a hundred is a ratio of 10,000:1. As will be shown below, using a non-predictive element in creating a prohibition to otherwise lawful and constitutionally protected behavior creates serious constitutional doubt as to the legitimacy of the statute.

1

because it is inflicted recklessly as opposed to intentionally." *United States v. Voisine*, First Cir. No. 12-1213, slip op. at 16-17 (Jan. 30, 2015). There are two concepts in this statement. First is that recklessly causing and intentionally causing offensive physical contact are substantially the same crimes. As shown below, so saying conflicts with binding Supreme Court precedent. The second concept is that Maine has created a definition of recklessness that is intentional conduct in disguise. This reading is not supported by Maine's definition of recklessness, which is couched in terms of consciousness of a risk of a result. It also conflicts with this and other circuits which have held that a risk of harm is insufficient to constitute "use of force." Finally, the panel majority's insistence on reading the statute in a manner that conflicts with both Supreme Court and circuit precedent renders the statute constitutionally infirm.

> **A.** **The panel majority opinion conflicts with Supreme Court precedent and prior opinions of this Court:**

The instant appeals were remanded to this Court to be reconsidered in light of the decision in *United States v. Castleman*, 134 S.Ct. 1405 (2014). *See Armstrong v. United States*, 134 S.Ct. 1759 (2014). In *Castleman*, the Supreme Court held "that Congress incorporated the common-law meaning of 'force'—namely, offensive touching—in § 921(a)(33)(A)'s definition of a

2

'misdemeanor crime of domestic violence.'" 134 S.Ct. at 1410. The opinion itself did not restrict this holding to the word "force." Rather, the Supreme Court stated that *Castleman* concerned "the meaning of one *phrase* ... 'the use ... of physical force.'" *Id.* at 1408 (emphasis added). *Castleman's* decision to adopt the common-law definition of battery necessarily means that *all* of the common-law elements were adopted.

> Nothing in *Castleman* suggests that the phrase "type of conduct" refers only to the *actus reus* for battery and not also the accompanying *mens rea*. Indeed, the contrary conclusion makes far more sense. If Congress meant to incorporate the common-law crime of battery, it most likely meant to incorporate both the *actus reus* and its accompanying *mens rea. See, e.g., United states v. Zhen Shou Wu*, 711 F.3d 1, 18 (1st Cir. 2013)("'In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur.'" (quoting *United States v. Apfelbaum*, 445 U.S. 115, 131 (1980))); *United States v. Cornelio-Pena*, 435 F.3d 1279, 1286 (10th Cir. 2006)(stating that "most crimes ... require[] both *mens rea* and *actus reus*"); *cf. United States v. Freed*, 401 U.S. 601, 607-08 (1971)(explaining that when "Congress borrows terms of art" from the common law, "it presumably knows and adopts the cluster of ideas that were attached to each borrowed word" (internal quotation marks and citation omitted.)).

*Voisine*, slip op. at 36 n. 11 (Torruella, J., dissenting). These cases mean that a battery must be intentional in order to meet the statutory definition of §922(g)(9).

That a battery is an intentional crime was settled in *Johnson v. United States*, 559 U.S. 133 (2010). *Johnson* held that it was "unlikely" that Congress meant to incorporate into the definition of a "'violent felony' a phrase that the

common law gave peculiar meaning only in its definition of a misdemeanor," *Johnson*, 559 U.S., at 141. However, because Section 922(g)(9), unlike Section 924(e), was meant to target misdemeanants rather than felons, *Castleman* held that "it makes sense for Congress to have classified as a 'misdemeanor crime of domestic violence' *the type of conduct that supports a common-law battery conviction*." *Castleman*, 134 S.Ct., at 1411 (emphasis added). The Supreme Court held that "the common-law crime of battery ... consisted of the *intentional* application of unlawful force against the person of another." *Johnson*, 559 U.S., at 139 (emphasis added).

The combination of these rulings indicates that a recklessly committed offensive physical contact conviction, which is one of the six possible means of committing an assault in Maine, *see Voisine*, slip op. at 38-39 (Torruella, J., dissenting), does not fall within the *conduct* that constituted the common-law definition of a battery offense, and therefore also does not fall within the phrase "use ... of force" as contained in Section 921(a)(33)(A). That is the import of the remand order in *United States v. Carter*, 752 F.3d 8 (1st Cir. 2014). Rehearing or rehearing en banc is merited because the panel's decision conflicts with the holdings of both *Castleman* and *Johnson*, the remand order in *Armstrong,* as well as this Court's decision in *Carter*.

4

**B.** **The panel majority opinion conflicts with *Fish* and every other circuit to consider the scope of the phrase "use of force"**

The panel majority also conflicts with that in *United States v. Fish*, 758 F.3d 1 (1st Cir. 2014) and every other circuit to have considered the matter of whether "use of force" can be committed recklessly. *See Fish*, 758 F.3d at 9-10 and n. 4 (construing 18 U.S.C. § 16; *Voisine*, slip op. at 83-94 (Torruella, J., dissenting)(discussing cases from other circuits). It does so by dissecting the fact that the Maine definition of "reckless" means a person "consciously disregards a risk that the person's conduct will cause" the result. 17-A M.R.S.A. § 35(3)(A). *See Voisine*, slip op. at 18-19. Maine does not define "recklessness" by reference to "intentional" conduct. Rather, the panel majority performs a legal legerdemain by comparing Maine statutes defining the elements of recklessness to the elements of knowing action, which it then equates with intentional action. *See Voisine*, slip op. at 18-19. But in Maine, reckless conduct is *not* knowing conduct, nor intentional conduct. *See Voisine*, slip op. at 65-71 (Torruella, J., dissenting).

By relying on a definition of "intentional" conduct that depends on the conscious disregard of a *risk* of a result, the panel majority's conflicts with the decisions in *Fish*, 758 F.3d at 11, *United States v. White*, 258 F.3d 374 (5th Cir. 2001), and *United States v. Howell*, 531 F.3d 621 (8th Cir. 2008) that a *risk* of

harm is insufficient to constitute "use ... of force." *Cf. Voisine*, slip op. at 14-15

(differentiating underlying statutes involved but not comparing elements to

definition of reckless conduct).

> [T]he Maine statutes at issue here permit[] conviction for far less culpable conduct: merely *reckless* conduct that is also reckless as to the result of offensive physical contact.  In so doing, the majority conflates *mens rea* as to the result with *mens rea* as to the underlying conduct that causes the result.  It is this distinction that explains why common-law battery permits conviction for (1) intentional conduct that is reckless as to the result of bodily injury and (2) intentional conduct that is intentional as to the result of bodily injury or offensive touching, but does *not* permit conviction for (3) reckless conduct that is merely reckless as to the result of an offensive touching.

*Voisine*, slip op. at 34, n.9 (Torruella, J., dissenting)(alterations added).

Nor is the Maine definition of recklessness unusual or out of step with most

other jurisdictions' definition.  As noted in Judge Torruella's thorough dissent, ""the

Maine definition is in fact a textbook definition of recklessness, falling squarely

within the standard definitions of recklessness in various jurisdictions and as defined

by multiple authorities. Indeed, the Maine definition is materially indistinguishable

from the definition of recklessness in the Model Penal Code." *Voisine*, slip op. at 64.

Hence the Supreme Court's reference to *Jobson v. Ashcroft*, 326 F.3d 367 (2nd Cir.

2003), which interpreted whether reckless conduct could form a crime of violence

pursuant to 18 U.S.C. §16(b), *supports* excluding "reckless" conduct (as defined by

6

Maine) because it depends on the *risk* of an event occurring, rather than the event itself having occurred. *See Voisine*, slip op. at 83-85 and n. 15 (indicating that the *Jobson* analysis of § 16(b) provides strong support for appellants' position that reckless conduct is excluded from the phrase "use of force"). Justice Sotomayor's selection of cases was far from accidental.

### C. The panel majority opinion calls into question whether § 922(g)(9) violates the Second, Fifth and Sixth Amendments of the United States Constitution

The panel majority's opinion depends on a policy choice: "to ensure that domestic abusers convicted of misdemeanors, in addition to felonies, are barred from possessing firearms. 134 S.Ct. at 1408-12." *Voisine*, slip op. at 17. The reasoning behind creating the broadest possible reach of the statute because "[a] victim of domestic violence often encounters the perpetrator again, and a broader reading of § 922(g)(9)'s mens rea requirement better ensures that a perpetrator convicted of domestic assault is unable to use a gun in a subsequent domestic assault." *Id.* The problem with adopting this policy position over a narrow interpretation excluding offenses predicated on recklessness is that it requires a court to consider whether such policy is consistent with the United States Constitution.

The allure of the panel majority's position lies in the notion that once the *Castleman* court included non-violent conduct within the definition of "domestic

violence," broadening the statutory scope to include recklessly committed non-violent conduct is such a short step that no reasonable argument stands in the way of taking that step. Because "[m]inor uses of force may not constitute 'violence' in the generic sense," but over time "can subject one intimate partner to the other's control," the Court held they are appropriately considered to be "domestic violence." *Id.*, 134 S.Ct. at 1412.

Excluding reckless conduct from this line of reasoning is equally consistent with the basis of the analysis, which may be why both the majority and dissent call this a "close" case. *See Voisine*, slip op. at 3, 31. "Control" bespeaks intentional conduct. "Recklessness" does not. *See Fish*, 758 F.3d at 11. If the question is one of control of one intimate partner over another, as this line of reasoning states, then such acts must be the result of an intention of one partner to control the other partner. A single act that is recklessly committed (which is all that it takes to obtain a conviction in Maine) does not implicate the type of "control" by which non-violent acts seemingly can blossom into using a firearm to commit murder.

The lack of a connection between statutory provisions such as § 922(g)(9) and the target policy, preventing firearm deaths, is that we have no idea what does and does not drive homicide statistics. "In 2011, an estimated 14,610 persons were victims of homicide in the United States, according to FBI data on homicides known

to state and local law enforcement (figure 1). This is the lowest number of homicide victims since 1968, and marks the fifth consecutive year of decline." BJS, Patterns & Trends: Homicide in the U.S. Known to Law Enforcement, 2011, Figure 1 (Dec. 2013) *available online at* http://www.bjs.gov/content/pub/pdf/hus11.pdf. The overall rate of homicides has steadily decreased over time, with the exception of a "bulge" from approximately 1973 to 1993. *See id.* Although the *rate* at which homicides occur has decreased almost by half between 1992 and 2011, the percentage of homicides committed with firearms has remained approximately the same at 67 percent. *See id.* (highlights section). This means that the number of homicides per 100,000 persons has decreased, although the percentage of those homicides committed with firearms has remained static.

Section 922(g)(9) took effect in 1996. According to records maintained by two different organizations, the rate of homicides committed by intimate partners with firearms decreased as much between 1980 and 1996 as it did from 1996 to 2008 (decreasing 13 percent before 1996 and 13 percent after 1996). *See* BJS, Patterns & Trends: Homicide Trends in the United States, 1980-2008 Annual Rates for 2009 and 2010 at 17 and figure 25a (Nov. 2011). This statistic implies that the cause of a decrease in intimate partner homicide with firearms was decreasing prior to any

9

prohibition created by § 922(g)(9), and that the rate of decrease has not been materially affected since its enactment.

Including non-violent and unintentional misdemeanor offenses within the ambit of defining a "misdemeanor crime of domestic violence" broadens the disconnect between such crimes and preventing the use of firearms in domestic violence. Predicting the future dangerousness of individuals based on individual assessments has been studied in relation to imposing the death penalty in Texas and found to be unreliable as to individuals. *See e.g.* Death Penalty Resource Center, *Future Dangerousness Predictions Wrong 95% of the Time: New Study on Capital Trials Exposes Widespread Unreliable Testimony, available online at* http://www.deathpenaltyinfo.org/node/1099 (last accessed February 8, 2015). Widely accepted indicators of future dangerousness have also been criticized as not creating a very good "fit" between past conduct and possible future conduct: "The best clinical markers or actuarial markers occur at a much higher rate than the measured violence. For example, there are many more patients with suicidal thoughts, even with plans, than there are suicides. Using actuarial indicators, there are many more young men addicted to substances than there are violent attacks of others. Both the clinical and the actuarial indicators sort too many into the 'violent' category. At times, the markers lack sensitivity instead and miss persons who are violent because of major

psychiatric disorders."  Norko and Baranoski, *Prediction of Violence*; *Detection of Dangerousness*, 8:1 Brief Treatment and Crisis Intervention 73, 85 (Feb. 2008), *available online at* http://btci.edina.clockss.org/cgi/reprint/8/1/73.

The lack of any evidence that § 922(g)(9) has any quantifiable effect on the target policy objective creates a grave constitutional problem that bears revisiting the panel majority's opinion.  In *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court found that the Second Amendment to the United States Constitution secured to people, individually, a right to keep and bear arms.  It did not determine which level of scrutiny applied to this right and left many other questions open.  What the majority did state was that, despite being "aware of the problem of handgun violence in this country," there are some policy choices that the "enshrinement of constitutional rights necessarily takes ... off the table." *Id.*, at 636.  The constitutional infirmity arises in depriving an identifiable group of citizens (those convicted of non-violent recklessly committed misdemeanor offenses) from a core constitutional right based on the chance that a firearm will be used at some future point in a violent manner.

It very well may be that the Supreme Court is not ready to address the ambit of the Second Amendment in a criminal case. However, after struggling with the definition of "violent felony" for nonenumerated offenses, the Supreme Court has

affirmatively reached out to determine whether 18 U.S.C. §924(e)(2)(B)(ii) violates the Fifth Amendment. *See Johnson v. United States*, 135 S.Ct. __, 2015 WL 132524 (Jan. 9, 2015)(directing the parties to file briefs addressing "[w]hether the residual clause in the [ACCA], 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague"). The Court may be equally ready to review § 922(g)(9) in light of the Fifth and Sixth Amendments.

If it were to grant such review, the Court cannot square its decision in *United States v. Hayes*, 555 U.S. 415 (2009) with its subsequent decision in *Descamps v. United States*, 133 S.Ct. 2276 (2013). Although the panel majority dismisses this anomaly with the summary statement: "Whether the predicate conviction involved a domestic relation is not a fact about the predicate conviction discerned through application of the modified categorical approach. It is an element proved anew in the § 922(g)(9) proceeding", *Voisine*, slip op. at 27, this formulation does not find support in the structure of the statute.

Section 922(g)(9) makes it "unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence ... [to] possess in or affecting commerce, any firearm or ammunition." This section does not define a "misdemeanor crime of domestic violence," but predicates a firearm prohibition on such a prior conviction. Pursuant to the structure of the statute, the "prior conviction"

must meet the definition of Section 921(a)(33)(A) which defines "misdemeanor crime of domestic violence" as follows:

> "[T]he term 'misdemeanor crime of domestic violence' means an offense that—
> (I) is a misdemeanor under Federal, State, or Tribal law; and
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim" (footnotes omitted).

The definition of a "misdemeanor crime of domestic violence" is where the requirement for the domestic relationship exists. The official records in both appellants' cases fail to establish the domestic relationship element.

The Supreme Court in *Hayes*, *supra*, decided a statutory interpretation issue. *See id.*, 455 U.S., at 418. The Court held that the element of the domestic relationship (which the Court recognized as a required element) could be proven at the federal level rather than during the proceeding from which the misdemeanor conviction originated based on a grammatical reading of § 921(a)(33)(A). It did not address the constitutional problems that flow from reading the statute in this manner.

Having a necessary fact about a prior conviction proven in a subsequent proceeding creates a timing conundrum. The defendant in a 922(g)(9) prosecution cannot have been "convicted" of a "misdemeanor crime of domestic violence" until

13

all elements of such crime have been established beyond a reasonable doubt by a neutral fact-finder.  By having the domestic relationship element determined at a later date, the defendant *cannot* have been convicted of the requisite crime until the latter federal jury makes the determination as to the prior crime.  Yet, this means that the defendant has engaged in lawful conduct up until the time he is reconvicted of the misdemeanor offense in the subsequent federal proceeding.

It is this exact reformulation of facts underlying prior convictions the Supreme Court held constitutionally impermissible in *Descamps v. United States*, *supra*.  It is also a procedure that makes an act (possession of a firearm) subsequently illegal (by way of a federal jury determination) which was legal (due to the absence of a qualifying misdemeanor conviction) at the time the act occurred.  It suffers from all of the ills the Supreme Court foresaw when it established the categorical approach to determining when a prior conviction constitutes a predicate.  "It isn't necessary to jettison every modicum of a fair process to redress decades-long inattention to these issues. It never is. ... [W]e should not substitute a regime in which women are treated without dignity for one in which those they are accusing are similarly demeaned. Indeed, feminists should be concerned about fair process, not just because it makes fact-findings more reliable and more credible, but for its own sake." *Sex, Lies and Justice*, *supra*.

## CONCLUSION

Given the prior decisions of the Supreme Court in *Castleman* and *Johnson*, the lack of indication that prosecution of § 922(g)(9) offenses have been hampered by excluding reckless conduct convictions in other jurisdictions, as well as the underlying constitutional issues involved, it is respectfully requested that the panel reconsider its decision or that the Court entertain a rehearing en banc.

Dated: February 13, 2015

Respectfully submitted,

/s/ Virginia G. Villa

VIRGINIA G. VILLA # 124070
Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, I electronically filed Petition for Rehearing and Rehearing En Banc with the Clerk of Court using the CM/ECF system with will send notification of such filing to **Renée Bunker**, Assistant United States Attorney, Office of the United States Attorney, 100 Middle St., East Tower, 6th Floor, Portland, ME 04101.

/s/ Virginia G. Villa

VIRGINIA G. VILLA
Attorney for Appellants